# E

# X

# H

# I

# B

# I

# T

# B

```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI DIVISION
                       CASE NUMBER 12-22700-CIV-MORENO
 3
     CHERYL HALL, et al.,                     Courtroom 13-3
 4              Plaintiffs,
        vs.                                   Miami, Florida
 5   BANK OF AMERICA, N.A., et al.,
                Defendants.                   May 16, 2013
 6   _____/
     JAVIER LOPEZ,                   CASE NO.:  13-21104
 7              Plaintiff,
        vs.
 8   HSBC BANK USA, N.A., et al.,
                Defendant.
 9   _____/
     ALFRED HERRICK, et al.,         CASE NO.:  13-21107
10              Plaintiffs,
        vs.
11
     JP MORGAN CHASE BANK, N.A.,
12   et al.,
                Defendant.
13   _____/
     IRA MARC FLADELL, et al.,       CASE NO.:  13-60721
14              Plaintiffs,
        vs.
15
     WELLS FARGO BANK, N.A.,
16   et al.,
                Defendants.
17   _____/
     MATTHEW POPKIN, et al.,         CASE NO.:  13-60722
18              Plaintiffs,
        vs.
19
     CITIBANK, N.A., et al.,
20              Defendants.
     _____/
21

22

23

                        ORAL ARGUMENT PROCEEDINGS
24            BEFORE THE HONORABLE FEDERICO A. MORENO
                 CHIEF UNITED STATES DISTRICT JUDGE
25
```

```
 1  APPEARANCES:
    FOR THE PLAINTIFFS:        AARON S. PODHURST, ESQ.
 2                             PETER PRIETO, ESQ.
                               MATTHEW WEINSHALL, ESQ.
 3                             JOHN GRAVANTE, III
                               Podhurst Orseck, P.A.
 4                             25 West Flagler Street - Suite 800
                               Miami, Florida 33130
 5                                                305.358.2800
                                            Fax:  305.358.2382
 6
                               ADAM M. MOSKOWITZ, ESQ.
 7                             ROBERT J. NEARY, ESQ.
                               Kozyak Tropin & Throckmorton, P.A.
 8                             2525 Ponce de Leon Boulevard
                               Suite 900
 9                             Coral Gables, Florida 33134
                                                 305.372.1800
10                                          Fax:  305.372.3508
11                             LANCE A. HARKE, ESQ.
                               HOWARD M. BUSHMAN, ESQ.
12                             Harke Clasby & Bushman, LLP
                               9699 NE Second Avenue
13                             Miami Shores, Florida 33138
                                                 305.536.8222
14                                          Fax:  305.536.8229
15  FOR BANK OF AMERICA:       NINA S. MANDEL, ESQ.
                               Mandel & Mandel, LLP
16                             Alfred I. Dupont Building
                               169 E. Flagler Street - Suite 1200
17                             Miami, Florida 33131
                                                 305.374.7771
18                                          Fax:  305.374.7776
19                             JOHN C. ENGLANDER, ESQ.
                               Goodwin Procter, LLP
20                             53 State Street
                               Exchange Place
21                             Boston, Massachusetts 02109
                                                 617.570.1000
22                                          Fax:  617.523.1231
23                             KATHERINE J. SHINNERS, ESQ.
                               Goodwin Procter, LLP
24                             901 New York Avenue, NW
                               Washington, DC 20001
25                                               202.306.4000
```

```
 1   FOR BALBOA INSURANCE CO.
     and QBE INSURANCE GROUP:   AMANDA M. RAINES, ESQ.
 2                              KATHERINE L. HALLIDAY, ESQ.
                                Buckley Sandler, LLP
 3                              1250 24th Street, NW
                                Suite 700
 4                              Washington, DC 20037
                                              202.349.8035
 5
     FOR ASSURANT, INC.,
 6   et al.:                    FRANK BURT, ESQ.
                                1025 Thomas Jefferson Street, N.W.
 7                              Suite 400 East
                                Washington, DC 20007
 8                                            202.965.8100
                                        Fax:  202.965.8104
 9
                                FARROKH JHABVALA, ESQ.
10                              Jorden Burt, LLP
                                777 Brickell Avenue
11                              Suite 500
                                Miami, Florida 33131
12                                            305.347.6845
                                        Fax:  305.372.9928
13
     FOR CHASE INSURANCE
14   AGENCY, INC., et al.:       ROBERT M. BROCHIN, ESQ.
                                Morgan Lewis & Bockius, P.A.
15                              200 South Biscayne Boulevard
                                Suite 5300 Wachovia Financial Center
16                              Miami, Florida 33131
                                              305.414.3456
17                                      Fax:  305.415.3001
18   FOR HSBC BANK USA:          BRIAN C. FRONTINO, ESQ.
                                Stroock & Stroock & Lavan, LLP
19                              200 S. Biscayne Boulevard
                                31st Floor
20                              Miami, Florida 33131
                                              305.789.9900
21                                      Fax:  305.789.9302
22   FOR WELLS FARGO BANK:       DAVID B. ESAU, ESQ.
                                Carlton Fields, P.A.
23                              CityPlace Tower - Suite 1200
                                525 Okeechobee Boulevard
24                              West Palm Beach, Florida 33401
                                              561.659.7070
25                                      Fax:  561.659.7368
```

```
 1   FOR CITIMORTGAGE, INC.,
     et al.:                    GUY E. QUATTLEBAUM, ESQ.
 2                              Akerman Senterfitt, LLP
                                222 Lakeview Avenue
 3                              4th Floor
                                West Palm Beach, Florida 33401
 4                                              561.671.3678
                                    Fax:   561.659.6313
 5
                                CHRISTOPHER J. WILLIS, ESQ.
 6                              Ballard Spahr, LLP
                                999 Peachtree Street
 7                              Suite 1000
                                Atlanta, Georgia 30309
 8                                              678.420.9436
                                    Fax:   678.420.9301
 9
     REPORTED BY:               GILDA PASTOR-HERNANDEZ, RPR, FPR
10                              Official United States Court Reporter
                                Wilkie D. Ferguson Jr. US Courthouse
11                              400 North Miami Avenue - Suite 13-3
                                Miami, Florida  33128    305.523.5118
12                              gphofficialreporter@gmail.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

5

1                          **TABLE OF CONTENTS**

2                                                                    Page

3

4
Reporter's Certificate ................................... 94
5

6

7

8

9                          **EXHIBITS**

10   Exhibits                      Marked for              Received
                                   Identification         in Evidence
11
     Description                   Page     Line     Page      Line
12

13

14

15

16

17

18

19

20

21

22

23

24

25

Oral Argument

1    (The following proceedings were held at 2:45 p.m.)

2    THE COURT:  All right.  Let me call five cases.  The

3    five cases are, while you all are fighting for chairs and seats,

4    12-22700-Civil, Hall versus Bank of America, Balboa Insurance

5    Company, QBE Insurance; 13-21107-Civil, Alfred Herrick versus JP

6    Morgan Chase and also Assurant Company and American Insurance;

7    13-60721-Civil, Ira Marc Fladell versus Wells Fargo and Assurant

8    and American Insurance Company; Javier Lopez versus HSBC Bank

9    and Assurant and American Insurance Company.  That case number

10   is 13-21104-Civil, and also Matthew Popkin versus Citibank and

11   Assurant, Inc. and American Insurance Company.

12        Before you all announce your appearances, let me tell

13   you how we're going to proceed, so you know the order.  What I'm

14   going to do first is Hall versus Bank of America and the way I'm

15   going to do it is I'm going to ask the plaintiff certain

16   questions about that and also about Balboa Insurance Company and

17   QBE.  I have questions to ask of the plaintiff regarding that.

18   And then I am going to also ask at the same time the plaintiff

19   questions regarding Matthew Popkin versus Assurant, American

20   Insurance; Assurant, Inc. and American Insurance, and in fact,

21   I'll ask the plaintiff questions about those defendants in the

22   other cases as well, 13-60721, 13-21107, 13-21104.  That way,

23   once the plaintiff answers certain questions about that when I

24   call the first case and the other cases as it deals with those

25   two defendants -- they're represented by the same lawyer -- I'll

Oral Argument

1  hear from that particular defendant.

2          After we do that, then we'll move on to the other cases

3  in the same order, in this order:  Popkin versus Citibank and

4  then we'll do Lopez versus HSBC Bank, then we'll do Fladell

5  versus Wells Fargo and the last case will be Herrick versus JP

6  Morgan Chase Bank.

7          Let me correct something that I did in error in the

8  Herrick case.  In doing things sometimes too hurriedly as I

9  sometimes do, I issued a scheduling order and set it for trial

10  automatically.  In that case I'm vacating that scheduling order.

11  Obviously, I want to deal with these issues with all five cases.

12  So you don't have to worry about that.

13          After the plaintiff, the way I'll do it is, I have

14  questions of plaintiffs' counsel on this and then the defendant

15  who made the arguments will go.  That's how we'll do it and then

16  there won't be any rebuttal, because I've asked questions unless

17  I think something should be answered on a particular point.

18          The last issues will be the general motions to stay the

19  discovery, pending rulings on the motions to dismiss.  I can do

20  that at the end.  I know all defendants want that.

21          I'm more interested in finding out the uniqueness of

22  the Herrick versus Morgan Chase Bank case.  So we'll deal with

23  that when we come to it, to that motion to stay.  So that's

24  going to be the order.

25          So rather than rattling off 20 names now, since that's

1  the order of things, I'll let you rattle off two, three, four,

2  five names on each case as needed.  Okay?  That's how we'll do

3  it and I think we'll get through hopefully in time for the

4  interpreter in that other guilty plea, but if not, we'll just

5  recess and we'll keep you here.

6         You're welcome to leave after you've done the argument

7  on a particular matter if it doesn't involve your case, but

8  you're, of course, welcome to stay if you think it matters

9  especially since I leave until the end certain issues such as

10  the request for stay of the discovery.

11        All right.  Now, let me start then with Hall versus

12  Bank of America, and the other two defendants as well, Balboa

13  Insurance Company and QBE Insurance.

14        On behalf of the plaintiffs, who do we have?

15        MR. PODHURST:  Your Honor, let me just --

16        THE COURT:  I just want to know who we have.

17        MR. PODHURST:  We have three.  We have divided --

18        THE COURT:  Tell me the names.  That's all I want.

19        MR. PODHURST:  Aaron Podhurst, Adam Moskowitz and Peter

20  Prieto have divided up the various matters.

21        THE COURT:  Well, how long do you think three of you

22  are going to talk for?

23        MR. PODHURST:  Your Honor, it's going to be very short,

24  because mine applies to every --

25        THE COURT:  How long is that?

Oral Argument

1        MR. PODHURST:  Five minutes.

2        THE COURT:  Five minutes, all of you.

3        How do you divide, all three of you, your five minutes?

4        MR. PODHURST:  No, no.  Mine is five minutes.

5        THE COURT:  I know.

6        MR. PODHURST:  And there are various motions, and I

7  don't know what your questions are.  They'll handle it as you

8  raise it.

9        THE COURT:  Fair enough.

10        MR. PODHURST:  But mine goes to everything.

11        THE COURT:  Okay.

12        MR. PODHURST:  So I don't know whether you want me to

13  do that or --

14        THE COURT:  Oh, no.  I probably have specific

15  questions.  You're probably going to defer to Mr. Moskowitz

16  there on your left.

17        MR. PODHURST:  On specific questions, but all I'm

18  advising Your Honor is that mine applies to everything.  Our

19  intent was to make my statement first and then whatever you

20  ask --

21        THE COURT:  Well, I'm going to ask questions.  That's

22  how I'm going to do it, because I read everything.

23        MR. PODHURST:  Okay.

24        THE COURT:  Okay.  On behalf of the bank.

25        MS. MANDEL:  Yes, Your Honor.  Nina Mandel on behalf of

Oral Argument

1    Bank of America, also John Englander and Katherine Shinners.

2              We filed a motion to appear pro hac vice earlier today.

3    I don't know if the Court has already seen that.

4              THE COURT:  No, I haven't.

5              MS. MANDEL:  I have a copy of the order if I could pass

6    it up.

7              THE COURT:  When did you file it?  Are they going to

8    talk?

9              MS. MANDEL:  Yes, she will.  Ms. Shinners will --

10             THE COURT:  Miss who?

11             Give me the list, Pablo.  I didn't see it.  Where is

12   the list?  Where is the list?

13             Why didn't you do it before?

14             MS. MANDEL:  I apologize, Your Honor.  We did it --

15             THE COURT:  Pardon?

16             MS. MANDEL:  -- earlier today.  I have a copy.  We did

17   file it with the clerk.

18             THE COURT:  I know, but I haven't granted it.

19             MS. MANDEL:  I know you haven't, Your Honor, and I'm

20   bringing it here to your attention at this time.

21             THE COURT:  Well, let me see it.  I haven't seen

22   anything, but it should have been filed before I think.

23             How long do you think you're talking for?  Who's going

24   to talk?

25             MR. ENGLANDER:  Your Honor --

Oral Argument

11

1          THE COURT:  I'm sorry.  I was addressing it to her --

2          MR. ENGLANDER:  Oh.

3          THE COURT:  -- not to you, because she was doing the

4    talking.

5          So who's going to do the talking?

6          MS. MANDEL:  Mr. Englander and Ms. Shinners will be

7    presenting argument.  It kind of depends on what the questions

8    of the Court are and which motion you're going to address.

9          THE COURT:  Okay.  Okay.  How long do you think they're

10   going to be?

11         MR. ENGLANDER:  Your Honor, may I answer?

12         THE COURT:  Okay.

13         MR. ENGLANDER:  It really depends -- I'm not sure if

14   Your Honor is going to take up the motion to transfer and the

15   motions to dismiss.  If so, it could be 10 minutes, maybe

16   slightly over.

17         Ms. Shinners would be addressing the motion to abstain

18   if Your Honor wants to take that up.

19         THE COURT:  S-h-i-n-n-e-r-s.

20         When you filed this motion, did you pay the $75 fee?

21         MS. MANDEL:  Yes, Your Honor.

22         THE COURT:  All right.  I'll grant it.

23         MS. MANDEL:  Thank you, Your Honor.

24         THE COURT:  Did you pay separately for each one, or did

25   it all together?

Oral Argument

```
1              MS. MANDEL:  We only had one that was filed today,
2    Judge.  We paid separately --
3              THE COURT:  Shinners'?
4              MS. MANDEL:  Yes, that's correct.  Mr. Englander's was
5    filed and granted by Your Honor previously.
6              THE COURT:  Oh, okay.
7              On behalf of Balboa and QBE, who do we have?
8              MS. RAINES:  Amanda Raines and Katherine Halliday on
9    behalf of Balboa and the QBE defendants.
10             THE COURT:  Who's going to do the talking?
11             MS. RAINES:  We both will, Your Honor.
12             THE COURT:  Both of you?
13             MS. RAINES:  Yes.
14             THE COURT:  For how long do you think?
15             MS. RAINES:  Again, it depends on what your questions
16   are, but I would suspect no more than 10 minutes.
17             THE COURT:  Oh, wow.  You keep adding these 10 minutes,
18   looks like you're making late dinner reservations.  Okay.  All
19   right.
20             These are the questions I have:  First of all, I want
21   to know, I want the plaintiffs to tell me about the motion --
22   let me see what order did I want to do this?
23             I'm told that Balboa Insurance Company did insure
24   Novells and Torturas, but that the claims of Novells and
25   Torturas are barred by the Filed Rate Doctrine.  Who's going to
```

Oral Argument

```
 1  talk about that?
 2          MR. MOSKOWITZ:  I will, Your Honor.
 3          THE COURT:  Go ahead.
 4          MR. MOSKOWITZ:  Good afternoon, Your Honor.  Adam
 5  Moskowitz.
 6          This issue of the Filed Rate Doctrine has been
 7  litigated for about two years.  It's the same issue that was
 8  brought up before Judge Altonaga in the Williams case that Judge
 9  Scola eventually took over and the same issue --
10          THE COURT:  Should I send this to him?  What do you
11  think?
12          MR. MOSKOWITZ:  No.
13          THE COURT:  We've been through that already.
14          MR. MOSKOWITZ:  I think we've been through that from
15  the last hearing.  We did settle the Williams case and we filed
16  our papers on Monday for preliminary approval.
17          The issue of the Filed Rate Doctrine was addressed
18  specifically by Judge Altonaga in the motion to dismiss the
19  Williams case and then specifically addressed with Judge
20  Middlebrooks in a motion to dismiss based on the Filed Rate
21  Doctrine in the Kunzelmann case and then previously addressed by
22  Judge King in the Abels case.  In all three cases, the Filed
23  Rate Doctrine was raised as a complete bar, and they were denied
24  on the motion to dismiss.
25          THE COURT:  Okay.  That's basically the argument.
```

1        How about as to Hall, Lugo, Gallagher, Vidrine,

2   Soileau?  They were serviced by nonparty third parties.  Balboa

3   was not responsible for the placement cost or any other aspects.

4   What do you say about them?

5        MR. MOSKOWITZ:  The same argument, Your Honor.  The

6   papers set out how we have liability against --

7        THE COURT:  But they're in a different situation,

8   aren't they?

9        MR. MOSKOWITZ:  Yes, Your Honor.

10       THE COURT:  So your case is weaker as to them?

11       MR. MOSKOWITZ:  There are different claims for

12   plaintiffs.

13       THE COURT:  Is it weaker or stronger?

14       MR. MOSKOWITZ:  It's different, Your Honor.  It would

15   be weaker against certain defendants that were not alleging

16   against certain plaintiffs, and that's what the papers try to

17   set out exactly who the claim is against for each plaintiff.

18       THE COURT:  Well, tell me what Balboa did for these

19   fellows?

20       MR. MOSKOWITZ:  Balboa was the insurer.  We sued QBE as

21   its successor of Balboa.  So there are two different types of

22   liability.  The one for QBE is just as successor because they

23   bought Balboa.  So those are the two different types of claims

24   here.

25       THE COURT:  And what are the facts that your

1   Complaint -- this talks about the purchasing of Balboa's assets.

2   That's enough.  You purchase the assets and you say that's

3   enough.  They're liable for everything Balboa did.

4          MR. MOSKOWITZ:  Yes, Your Honor.

5          THE COURT:  Once you purchase the assets, you're

6   responsible for everything.

7          MR. MOSKOWITZ:  For successor liability, for those that

8   Balboa directly issued, and then subsequently it's QBE who now

9   is doing the insurance.

10         THE COURT:  How about with QBE?  So QBE is responsible

11  for all injuries that predate QBE's involvement?

12         MR. MOSKOWITZ:  Yes, Your Honor.  And we briefed that

13  in our papers as successor liability.

14         THE COURT:  What do you want to say about the Colorado

15  River Doctrine?

16         MR. MOSKOWITZ:  The Colorado River Doctrine was

17  actually directly addressed in a recent New Jersey District case

18  that we cite where Bank of America was specifically involved and

19  that's in our papers.  The Court there had --

20         THE COURT:  Which case is that?

21         MR. MOSKOWITZ:  It's the Beals versus Bank of America

22  case, District of New Jersey, 10-5427.  The Westlaw site is

23  2011, WL5415174, and it's exactly the same facts.  In that case,

24  the two plaintiffs were being sued in State court for

25  foreclosure action by Bank of America, and at the same time,

1  they brought a very extensive class action about these mortgage

2  foreclosure practices and Bank of America raised the exact same

3  argument, Colorado Doctrine.  And the Court said to the first

4  point, it definitely does not preclude this action because it's

5  not "parallel" actions and the Court found, in fact, much --

6         THE COURT:  Shouldn't I at least wait and maybe stay it

7  until the State court resolves the foreclosure proceedings for

8  Novells and Gallagher?  Doesn't that make sense?  What's

9  happening over there?

10        MR. MOSKOWITZ:  Your Honor, these foreclosure actions

11  take years and years and years.

12        THE COURT:  Why?  They're lucky I'm not there.  Why

13  does it take so long?

14        MR. MOSKOWITZ:  Courts around the country are --

15        THE COURT:  No, but I'm not worried about the "around

16  the country."

17        Gallagher and Novells' claims are before whom, the

18  foreclosure proceedings?

19        MR. MOSKOWITZ:  Yes, Your Honor.

20        THE COURT:  Where are they?

21        MR. MOSKOWITZ:  I don't remember exactly what court

22  they're pending in.

23        THE COURT:  Shouldn't we know?

24        MR. MOSKOWITZ:  They're in the papers, Your Honor, but

25  they're not parallel.

Oral Argument

1     THE COURT:  No, I understand the legal issues, but the

2  practical issues, sometimes I have the tendency to be overly

3  practical.

4     How long have they been in foreclosure?

5     MR. MOSKOWITZ:  Your Honor, I just don't remember.

6     THE COURT:  Let's say they've been in foreclosure for

7  two years and they're ready.  They're ripe.  They're not ripe,

8  they're rotten.  Everything is ready to be done.  Should I even

9  do anything until that's done?

10     MR. MOSKOWITZ:  I think you should, Your Honor.

11     THE COURT:  Why?

12     MR. MOSKOWITZ:  This case is a massive class action.

13     THE COURT:  I know, but as to those two, Gallagher and

14  Novells, why should I do it as to them?  See, you've picked --

15     MR. MOSKOWITZ:  Because they have decided to bring this

16  action as class representatives on behalf of a proposed class of

17  all similar customers.

18     THE COURT:  Should they resolve their foreclosure

19  problems in State court first?  Your argument is, I don't have

20  to, but why shouldn't I?

21     MR. MOSKOWITZ:  Because they're bringing a larger

22  action that affects hundreds of thousands of people across the

23  country and it's Bank of America that decided to start these

24  State foreclosure actions and the Colorado Doctrine is very

25  clear; are the cases parallel.  Here we have --

1          THE COURT:  I would like to know in whose division

2   Gallagher and Novells' claims are pending in State court.  I

3   would like to know when they were filed.  What have been their

4   responses to their foreclosure, whether they asked for delays,

5   who the lawyers are and what's going on.  Is that fair?  Do you

6   have that information already?

7          MR. MOSKOWITZ:  I can try to find out, Your Honor, and

8   possibly Bank of America may have it.

9          THE COURT:  Yeah, okay.  Then I'll ask them, but that's

10  what I would like to know about that.  Okay?

11          Now, as far as transferring the case, you agree that

12  three of the claims were filed in Louisiana, New York and North

13  Carolina, right?  We're talking about Vidrine, V-i-d-r-i-n-e;

14  Soileau, Lugo and the Torturas, in different states.  Why here?

15          MR. MOSKOWITZ:  Because, Your Honor, after the MDL

16  hearing, the order said we suggest the parties coordinate their

17  activities, and we were called by plaintiffs' law firms  all

18  around the country who said we want to comply with the MDL

19  order.  We'd like to try to coordinate our activities.  Because

20  what was happening was -- I think there was 82 individual class

21  actions pending throughout the country in different courts.

22          THE COURT:  But look at this:  We've got Louisiana,

23  North Carolina.  We have New York.  And Hall, the property is in

24  Arkansas, right?

25          MR. MOSKOWITZ:  Yes, Your Honor.

1          THE COURT:  Which ones are in Florida?

2          MR. MOSKOWITZ:  We have in the Complaint exactly where

3   the properties are located and where the plaintiff resides.

4          THE COURT:  But none of these individuals whose names

5   I've mentioned are in Florida, right?

6          MR. MOSKOWITZ:  Correct, Your Honor.

7          THE COURT:  That doesn't give you any pause?

8          MR. MOSKOWITZ:  It does, Your Honor, but we tried to

9   coordinate the actions with the cases that we had already here

10  in Florida.

11         The large majority of all the clients are Florida

12  residents.  We were called by other firms who said, does it make

13  sense to litigate the exact same case with the exact same claims

14  with the exact same lawyers in three different courts, or in

15  some instances, four different courts around the country?  Do

16  you think it makes sense to transfer the cases to your court, so

17  we can all consolidate them and litigate them together because

18  we're seeking a nationwide class?  There may be subclasses and

19  we need class representatives for subclasses.

20         So we thought it made sense and that's what we brought

21  up at the last hearing.  Because each defendant at the last

22  hearing got up and said, Judge, you should send all of these

23  cases to each of the home judges, and we thought it made sense

24  to have one case, against each bank, and just the five largest

25  banks, and the one insurer.  And in four of the five cases, it's

Oral Argument

1   just the bank and Assurant, but against Bank of America, it's

2   Balboa and the successor QBE, and we think it's very manageable.

3   We think we can do this in three months.  We can finish

4   discovery in three months.  We're going to file our motion for

5   class cert, and we can get this done, instead of doing it in

6   seven different courts with seven different judges around the

7   country.

8           These cases have been going on for almost three years.

9   So all of these claims have already been adjudicated except

10  possibly some of the RICO claims.  There have been millions of

11  pages of discovery produced, especially Bank of America.

12          Bank of America said nine months ago to the MDL it

13  already produced 2 million documents.  They've already

14  adjudicated most of the claims, so these cases weren't starting

15  from day one and we believe that we have a very reasonable,

16  focused approach.  You know, we have five separate cases now

17  against one bank and one insurer, and the fact that a couple of

18  these plaintiffs reside outside of Florida is routinely done in

19  class actions.  It may even be necessary when they demand that

20  we need a class rep for subclasses.

21          THE COURT:  Okay.  Now, let me shift gears for a little

22  bit.

23          Can you respond to any questions regarding Assurant, I

24  don't know if I said that right, Assurant and American Security

25  Insurance Companies, their motions in the various cases which

Oral Argument

1   include 13-60722, the Popkin case, and also the Lopez case in

2   13-21104, and the Fladell case, 13-60721, and the Herrick case,

3   13-21107?

4           MR. MOSKOWITZ:  I can do my best, Your Honor, and then

5   Mr. Prieto and I --

6           THE COURT:  I don't know.  You decide who is going to

7   answer the question regarding Assurant and --

8           MR. MOSKOWITZ:  I can try my best based on the

9   question, and if I can't, Your Honor --

10          THE COURT:  Oh, no.  You've got to decide ahead of

11  time.  Otherwise, I get double-teamed.

12          MR. MOSKOWITZ:  I will try my best and I will do it.

13          THE COURT:  I'm not LeBron.  Okay?  I don't need to be

14  double-teamed.  I'm on the bench, remember?  Okay?

15          So who's going to do it?  Are you?

16          MR. MOSKOWITZ:  I will do it.

17          THE COURT:  Okay.  I'm told by them that you sued the

18  wrong party, that they're just the holding company, and then, of

19  course, the same argument on the Filed Rate Doctrine.  How do I

20  decide that?  Do I wait for summary judgment?  Do I do it on the

21  motion to dismiss?  What do I do?

22          MR. MOSKOWITZ:  I think you should wait till summary

23  judgment to rule on that issue for a few reasons.  First, our

24  papers have the judge who recently was faced with the same

25  issue, and I'm sorry, Your Honor, I just have it on the table.

Oral Argument

1   That judge said --

2           THE COURT:  Go ahead and get it.  It's not that far.

3           MR. MOSKOWITZ:  What the judge said, and Mr. Prieto is

4   going to get it, is, you're giving me an affidavit from somebody

5   telling me the difference between ASIC and Assurant.  I don't

6   know if it's true or not.  In fact --

7           THE COURT:  So wait until later?

8           MR. MOSKOWITZ:  I've asked them for discovery.  We've

9   asked to depose that gentleman.  So far we've been given

10  nothing.  So I would say to be safe, wait.  Let's see the real

11  relationship between Assurant and ASIC for two other reasons,

12  Your Honor.

13          First, two weeks after our last hearing, Assurant

14  settled with the state of New York, the financial services.

15  They have a 22-page settlement agreement.  Throughout the whole

16  agreement, it says Assurant, Assurant, Assurant; Assurant does

17  this, Assurant does that.  So it really is contrary evidence to

18  what they're saying, and second, we don't know what they do.  We

19  have claims of unjust enrichment, that the money goes up to the

20  parent company.  We know that the parent company has direct

21  control over an intermediary company that has direct control

22  over ASIC.  So at least what we've put in the record that there

23  are allegations that they have unjustly been enriched, and they

24  have taken direct action.

25          We would request, Your Honor, that you do wait until

```
 1   summary judgment, and if the evidence shows that they shouldn't
 2   be sued, then they'll be properly excluded from the case.
 3             THE COURT:  Okay.  Who's here on behalf of -- thank
 4   you.
 5             MR. MOSKOWITZ:  You're welcome.
 6             THE COURT:  Who's here on behalf of Assurant and
 7   American Security?
 8             MR. BURT:  Frank Burt, Your Honor, on behalf of
 9   Assurant, Inc. and American Security.
10             THE COURT:  On all of these cases?
11             MR. BURT:  Yes.
12             THE COURT:  Okay.  How do you respond to that?
13   Shouldn't I wait?  Doesn't that make sense?
14        You don't want me to rule on a motion to dismiss with
15   all of these uncertainties and then the Court of Appeals
16   reverses me and we're back here.
17             MR. BURT:  No reversal is going to happen, Your Honor,
18   because the claims against --
19             THE COURT:  And the affidavit, do I look at an
20   affidavit?
21             MR. BURT:  You certainly can.
22             THE COURT:  I can, on a motion to dismiss?
23             MR. BURT:  On a 12(b)(1), yes, you can, Your Honor,
24   subject matter jurisdiction, and let me explain why.  Assurant,
25   Inc. is not an insurance company, doesn't issue insurance
```

Oral Argument

```
1   policies.  It doesn't contract with any banks.  It doesn't
2   provide any lender placed --
3           THE COURT:  How do I know that?
4           MR. BURT:  Because the affidavits and declarations say
5   so, Your Honor.
6           THE COURT:  Okay.  Sometimes plaintiffs disagree with
7   defendants, that's why we have trials.  So what do I do?
8           MR. BURT:  Well, just last month, Judge Edenfield in
9   the Roberts case, Southern District of Georgia, made a full
10  analysis of this relationship, Assurant's relationship to --
11          THE COURT:  And he did it on a motion to dismiss?
12          MR. BURT:  He did.  He did.  And he found, and I'll
13  quote him -- he said there was no standing to sue Assurant, Inc.
14          He said, "Assurant's wholly owned subsidiaries, most
15      importantly, ASIC," that's American Security, "do sell
16      insurance products that Roberts challenges in this suit."
17          THE COURT:  And that was done through affidavits in
18  that case?
19          MR. BURT:  That is correct.
20          THE COURT:  And were there affidavits to the contrary
21  or how was it done?
22          MR. BURT:  Well, there weren't any affidavits, because
23  these facts are not disputed.  Assurant doesn't sell insurance
24  policies.  It doesn't contract with the banks to provide lender
25  placed insurance policies and services.  It doesn't pay
```

1    commissions that are being challenged in these cases to agency

2    affiliates who are licensed agents.  Assurant is nothing but an

3    indirect public holding company that doesn't engage in any sort

4    of insurance operations.  Those are undisputed, Your Honor.

5              THE COURT:  And American Security Insurance Company is

6    what?

7              MR. BURT:  American Security Insurance Company is one

8    of the underwriters that are mentioned in these Complaints.

9    That's completely different.  It's an indirect subsidiary, and

10   as Judge Edenfield said:

11             "Assurant itself does not," meaning it doesn't sell any

12        of these products, "it's a mere holding company, a

13        corporation designed only to own other corporations and

14        profit from that ownership."

15             And then he dismissed Assurant, Inc.

16             It's a lengthy opinion, Your Honor.  I urge the Court

17   to read it.  It's very detailed and explains exactly why the

18   arguments that are being advanced in response to these

19   affidavits make no sense.  They argue about the 10-K and Judge

20   Edenfield rejects all of those arguments, and of course, counsel

21   just stood up and talked about the DFS settlement in New York.

22             Well, of course, that settlement specifically describes

23   Assurant as a holding company, and it states that the

24   underwriter that made the sales in New York are American

25   Security and American Bankers.  And frankly, the terms of the

 1    consent order, Your Honor, expressly only apply to the

 2    subsidiaries.

 3              THE COURT:  I can consider that, that settlement,

 4    right?

 5              MR. BURT:  You can consider it, Your Honor.  It's a

 6    public record.

 7              THE COURT:  I can consider the settlement.  I can

 8    consider the affidavits --

 9              MR. BURT:  Yes.

10              THE COURT:  -- because it's 12(b)(1) motion.  I can

11    consider it.

12              MR. BURT:  That is correct.  It's a factual attack on

13    the Court's subject matter jurisdiction, and I respectfully

14    suggest there is no subject matter jurisdiction, because there

15    is simply no possible redressability as to Assurant, Inc. or any

16    causal connection, what Lujan calls traceability between the

17    plaintiffs' purported injuries here and any conduct of Assurant,

18    Inc.  There simply is no Article III standing, and this Court

19    lacks subject matter jurisdiction as to Assurant, Inc.

20              THE COURT:  Okay.  Thank you.

21              Bank of America, who's going to speak for Bank of

22    America?

23              MR. ENGLANDER:  I am, Your Honor.  John Englander.

24    I'll go first and then Ms. Shinners --

25              THE COURT:  Okay.  Just go to the lectern, and that way

Oral Argument

1    the court reporter will be happy.

2         MR. ENGLANDER:  Sorry, Your Honor.  John Englander.

3         Ms. Shinners is going to address the questions about

4    extension, Your Honor.  I'm going to address the transfer.

5         On the transfer issue, Your Honor, I think your

6    questions show that you're pretty steeped in it.  There are

7    five --

8         THE COURT:  I should transfer it to what, to half a

9    dozen states?

10        MR. ENGLANDER:  Four different states, Your Honor.

11        THE COURT:  Does that make sense?

12        MR. ENGLANDER:  It does, Your Honor.

13        THE COURT:  Because you want to be defending in four

14   different states.

15        MR. ENGLANDER:  It does, Your Honor.  The reason is,

16   first of all, fundamentally with respect to the Louisiana, New

17   York, Arkansas and in the Torturas claims, which are originally

18   filed in North Carolina, those cases are not the exact same

19   cases, and I think Your Honor has seen some of this in the

20   papers themselves.  And there is this real tendency to lump up

21   these cases together when they are, in many ways, fundamentally

22   different.

23        THE COURT:  So if I send those cases, we still have

24   cases here?

25        MR. ENGLANDER:  In the case of Bank of America, the

1  only plaintiffs who are Florida plaintiffs are Gallagher and

2  Novells, Your Honor.

3          THE COURT:  But you're still here fighting that, the

4  same issues?

5          MR. ENGLANDER:  Not the same issues.

6          THE COURT:  Tell me how they're different.

7          MR. ENGLANDER:  Okay.  I'll give you an example, Your

8  Honor, but there are many of them and so it becomes --

9          THE COURT:  Give me the most salient differences.

10          MR. ENGLANDER:  These plaintiffs, this group of

11  plaintiffs' fundamental claim is based on commissions.  I think

12  everyone would agree that's the theme that plays throughout

13  their Complaint.

14          In the case of many of these plaintiffs, no commissions

15  were paid whatsoever.  That's one of the most fundamental --

16          THE COURT:  So which ones had commissions?

17          MR. ENGLANDER:  Your Honor, it's not that easy to

18  answer, but it's basically this:  No commissions for hazard.

19          THE COURT:  By the way, you can raise that lectern, so

20  you don't have to bend down.  There's a button.  You're taller.

21  See the button in the middle?

22          MR. ENGLANDER:  Yes, I do.

23          THE COURT:  Otherwise, you're going to hurt your back.

24          MR. ENGLANDER:  Basic differences for hazard insurance,

25  and about three or four of these plaintiffs are hazard insurance

1   plaintiffs, and commissions were not paid.

2        THE COURT:  Which ones?

3        MR. ENGLANDER:  I have to be careful representing

4   because I'm not certain of this, but the plaintiffs who are

5   hazard insurance plaintiffs are --

6        THE COURT:  Find out from the people who know.

7        MR. ENGLANDER:  Your Honor, I'm not sure we know the

8   answer here, because discovery has not gone through with these

9   particular --

10       THE COURT:  You want discovery.

11       MR. ENGLANDER:  I know this:

12       THE COURT:  You do want discovery.

13       MR. ENGLANDER:  What?  No, no, Your Honor, I don't.

14  What I'm trying to say to you is the cases are different, and

15  they are fundamentally different because the practice of the

16  bank was not to have commissions on hazard cases.  The hazard

17  cases here are Lugo --

18       THE COURT:  Okay.

19       MR. ENGLANDER:  -- Torturas, Novells.  Those are the

20  three.

21       THE COURT:  With no commissions.

22       MR. ENGLANDER:  It's my belief, Your Honor, yes.

23            Now, with respect to flood insurance, there were

24  commissions paid, and my belief is there were commissions paid

25  with respect to the flood.  And with respect to wind, there

Oral Argument

1   likely was a commission paid, but that's just one difference,

2   Your Honor.

3       I mean, fundamentally, flood and hazard cases are

4   different because there's a different regulatory scheme.  The

5   flood insurance is governed by specific Federal statutes.

6   There's no such thing with respect to hazard insurance, and so

7   the legal issues had to be very different.

8       THE COURT:  So what you're suggesting is instead of

9   five cases, I should have three more, dividing them up based

10  upon the type of insurance.

11      MR. ENGLANDER:  No, Your Honor.

12      THE COURT:  Why doesn't that make sense?

13      MR. ENGLANDER:  What make sense I think, and that is

14  what we've suggested, is these cases should be taken out based

15  on the facts of the individual plaintiffs, because those are

16  going to define the class, and without looking at the facts of

17  the individual plaintiffs, you're going to get classes.  You're

18  going to get plaintiffs representing people who they should not

19  be representing.  There are just so many different -- There are

20  differences in the contracts, in the contract language.  There

21  are differences in the particular bank practice that apply to a

22  particular --

23      THE COURT:  You have different cases with different

24  classes assuming a class were to be certified.

25      MR. ENGLANDER:  Exactly, Your Honor.

1    THE COURT:  But that would resolve the issue just by

2  having either subclasses or just different Complaints based upon

3  that.  Then what would be the argument?

4    MR. ENGLANDER:  Well, Your Honor, the transfer

5  argument, to back up, is right now there are no classes.  The

6  last two cases that have been decided, class action cases in

7  this district have denied class certification.

8    The plaintiffs don't have an answer to these

9  fundamental questions:  Why should plaintiff Hall, who lives in

10  Arkansas and whose property is in Arkansas have her claim, her

11  individual claim, which is all it is right now, adjudicated in

12  the Southern District of Florida?  The same questions goes for

13  plaintiff Vidrine, plaintiff Soileau, plaintiff Lugo and

14  plaintiff Torturas.

15    THE COURT:  So all they have to do is substitute

16  plaintiffs.  If they do that, then you have no argument.

17    MR. ENGLANDER:  If they can find substitute plaintiffs

18  and those plaintiffs have claims and desire to bring those

19  claims in the Southern District of Florida, Your Honor --

20    THE COURT:  If they can't find substitute claimants, it

21  looks like it's not going to be a very big class even in their

22  eyes, right?  If there are only five, six people here, we

23  wouldn't have -- the ratio of lawyer to class member is usually

24  not the way it is here, right?  So surely, they could find

25  others, right?

1        MR. ENGLANDER:  Your Honor, I can't answer that
2   question.
3        THE COURT:  So if I allow them to do that, then you'd
4   say, well, you got me, no problem.
5        MR. ENGLANDER:  If they have other plaintiffs who are
6   in the Southern District of Florida bring their claims, then
7   we'll defend those claims, Your Honor.  We'll defend them here.
8        THE COURT:  Okay.  What else do you want to say?
9        MR. ENGLANDER:  I mean, these case, and you know the
10  history, I won't belabor it, but these cases were all originally
11  filed and they're here in front of you because of an abuse of
12  Rule 41.
13       The argument that what they were trying to do was
14  coordinate is not consistent with the record.  The record is
15  they initially filed all those suits in individual places and
16  then brought them here.  That's the record.  It's not consistent
17  with what's being represented to you.  So we believe those cases
18  should go back, Your Honor.
19       Does Your Honor want to take up the motion to dismiss
20  issues, the more general overarching motion to dismiss issues
21  that we raised?
22       THE COURT:  You can, but do you want me to do this on
23  a -- you're talking about the issue about the contract and all
24  of that?
25       MR. ENGLANDER:  Well, and I would start with, there are

Oral Argument

1    10 counts here.  There are several statutory counts; RICO, Bank

2    Holding Company Act, where I think Your Honor can clear out the

3    underbrush and make the Complaint much more like it should be.

4    But Your Honor --

5              THE COURT:  I'm sorry.  It would be granting the motion

6    to dismiss with leave to refile it in another way.  That's what

7    you want me to do?

8              MR. ENGLANDER:  Certainly would like to see it pared

9    back and made sensible.

10             THE COURT:  Like what?

11             MR. ENGLANDER:  But of course, Your Honor, what we want

12   is for you to transfer the cases.

13             THE COURT:  I got it.

14             MR. ENGLANDER:  Should I address the motion to dismiss

15   issues?

16             THE COURT:  If you want to.

17             MR. ENGLANDER:  I'll address some of them then quickly,

18   if I could.

19             Your Honor, there's a RICO claim that has now been

20   added to this Complaint.  This is not a RICO case.

21             Obviously, the most fundamental part of a RICO claim

22   would be that a misrepresentation was made, and the claims are

23   based on form letters that are sent out to borrowers who

24   breached their contracts by not having the proper insurance.

25   And these form letter -- and Your Honor, I have an example of

1   one, if you'd like me to pass it up.

2          THE COURT:  Sure.

3          MR. ENGLANDER:  So Your Honor, this is one example of

4   actually three form letters that are sent to borrowers before

5   their insurance is forced placed, and I've bracketed and

6   highlighted the key language here, but there's a good decision

7   called Weinberger, which is a district court decision addressing

8   the same letters and exactly the same RICO claim and dismissing

9   it.  And the Court there I think aptly described these letters

10  as saying to a borrower, this is a bad deal that's coming.

11         THE COURT:  The Court in that motion to dismiss did

12  that with this exhibit attached to it?  Did the judge do it at

13  the motion to dismiss stage --

14         MR. ENGLANDER:  I believe it was at the motion to

15  dismiss.

16         THE COURT:  -- or after discovery?

17         MR. BURT:  It's Gustafson, yes.

18         MR. ENGLANDER:  Well, okay.  So the Gustafson case was

19  at the motion to dismiss stage.

20         THE COURT:  And the Weinberger case?

21         MR. ENGLANDER:  The Weinberger case -- Gustafson relied

22  entirely on Weinberger.

23         Was it also a motion to dismiss, Frank?

24         MR. BURT:  I don't know.

25         MS. MANDEL:  Yeah, it was.

Oral Argument

1           MR. ENGLANDER:   It was a motion to dismiss.

2           THE COURT:   So those judges ruled on the motion to

3    dismiss through the attachments?

4           MR. ENGLANDER:   Exactly, Your Honor.   Because there's

5    no dispute that these are the documents that were received by

6    the borrowers, and the Weinberger court aptly described this

7    letter as saying, you're about to receive an imminent bad deal,

8    don't take it.   Go get your own insurance, and if the forced

9    placement occurs, it will cost more and there will be or may be

10   a commission paid to the lending institution or an affiliate.

11   All those things are explicitly in this letter, Your Honor.   And

12   what the Weinberger court said is, I can't see how there can be

13   any basis for a fraud claim here where you have a letter that is

14   so explicitly identifying that the borrower should not do what

15   the borrower wound up doing.   How can there be an intent to

16   defraud or to deceive from such a letter?

17          And Your Honor, why I wanted to bring this to your

18   attention specifically was just to show, we have a 13-count

19   Complaint here, and to the extent these cases proceed in your

20   courtroom against Bank of America, there are counts that can be

21   cleared out for sure and will make things more streamlined, more

22   efficient and easier for all the parties to deal with.   That's

23   the RICO count, Your Honor.

24          There's also an anti-tie-in count under the Bank

25   Holding Company Act.   There are a series of decisions, one

1   specifically addressing lender placed insurance from the Fourth

2   Circuit that also dismissed those claims as a matter of law, and

3   I would commend the Court to those decisions and to our briefs

4   on that.  There's no tie-in because there's only one service

5   that's provided by the bank, and that is, the borrower breaches

6   and the bank procures insurance on behalf of the borrower.  So

7   there can't be any tie-in because the bank only does one thing.

8   It goes out and it procures insurance from someone else.

9          The only way the plaintiffs have been able to try to

10  structure a tie-in case is to suggest that the bank is in the

11  business of providing insurance and then separately in the

12  business of I guess procuring the insurance.  And so they try to

13  suggest there two services, providing insurance and then

14  procuring the insurance.  But that's not what's going on at all.

15  That's just a mischaracterization of the basic agreed upon and

16  alleged facts which are borrower breaches, bank under the

17  contract has to go and procures insurance, bank procures

18  insurance.  One service only.  No tie-in, no Bank Holding

19  Company Act claim, another claim that the Court should dismiss.

20         Your Honor, I'm probably over my time, and perhaps over

21  of the Court's patience.  I don't necessarily want to go through

22  each and every count, but there are a number of these that

23  deserve I think pretty careful review.  I would say the same

24  about the Truth in Lending Act counts where there are very

25  specific elements that can't be satisfied and law that indicates

1   same.

2          THE COURT:  Thank you.

3          MR. ENGLANDER:  Thank you, Your Honor.

4          THE COURT:  In the Popkin case, 13-60722, the defendant

5   Citibank, what do you wish to say?

6          MR. ENGLANDER:  May Ms. Shinners address the abstention

7   issue very quickly?

8          THE COURT:  No, that's all right.

9          On Citibank, what does Citibank want to say?

10         MR. QUATTLEBAUM:  Good afternoon, Judge.  Guy

11  Quattlebaum on behalf of the Citi group, and this is Christopher

12  Willis.

13         MR. WILLIS:  Right, Your Honor.

14         THE COURT:  I'm sorry.  I couldn't hear you.  I

15  apologize.

16         MR. QUATTLEBAUM:  Sure.  It's Guy Quattlebaum.

17         THE COURT:  No, I heard him.  I didn't hear you.

18         MR. WILLIS:  Sorry.  I'm Chris Willis, and we represent

19  Citibank and CitiMortgage.  Let me start by asking --

20         THE COURT:  It almost seems like a sitcom or something.

21         Are you going to do it together, or how are you going

22  to do it?

23         MR. QUATTLEBAUM:  I will sit down and let him argue.

24         THE COURT:  Okay.  That makes it easier.  See, you make

25  the court reporter nervous if she sees two lawyers at the same

1   lectern.

2        MR. QUATTLEBAUM:  Absolutely.

3        MR. WILLIS:  Your Honor, I wanted to start by asking

4   you a question regarding my pro hac vice admission.

5        THE COURT:  Oh, you filed a motion and I haven't

6   granted it?

7        MR. WILLIS:  Your Honor, you did grant it.  You granted

8   it when the Hall case was all put together.  Now you separated

9   us up into the second case.  So my question --

10       THE COURT:  That's fine.

11       MR. WILLIS:  -- is from the Court's standpoint --

12       THE COURT:  We don't need the $75 that badly.

13       MR. WILLIS:  Okay.  Your Honor, that was the question

14   that I wanted to ask.

15       Your Honor, from our standpoint, we have three issues,

16   and I'll address any of them the Court wishes.  We filed a

17   motion to dismiss on the merits in which we raised a number of

18   the same arguments that you heard Mr. Englander --

19       THE COURT:  That's why I called you, so you won't

20   repeat it.

21       Do you disagree with anything he has said?

22       MR. WILLIS:  I do not and I'm also quite satisfied --

23       THE COURT:  He said it pretty well?

24       MR. WILLIS:  I always think he does.

25       THE COURT:  Then don't repeat it.

1           MR. WILLIS:  I won't, and I wanted to tell Your Honor

2    that we're satisfied with the briefing we've done on that

3    motion, in particular also the reply brief that was filed this

4    morning.  So if there are not any specific questions with regard

5    to the motion to dismiss on the merits, I think I'll rest with

6    that.

7           The only other two issues that are on our minds for

8    today -- one of them is the general motion to stay discovery

9    which I think I heard Your Honor say you'd like to take up at

10   the end of the hearing.  We have filed such a motion as did

11   Assurant and American Security in our case, as well as in the

12   other cases, and then there was the --

13          THE COURT:  Every defendant wants to stay it --

14          MR. WILLIS:  Correct.

15          THE COURT:  -- until I rule on the motion to dismiss.

16          MR. WILLIS:  Correct.

17          And so you indicated you wanted to talk about it at the

18   end of the hearing, so I won't --

19          THE COURT:  Well, since you're mentioning it, just like

20   in any other case, you want me to stay it.

21          MR. WILLIS:  I do, yes, Your Honor.

22          THE COURT:  Have you ever not moved for that in any

23   case?

24          MR. WILLIS:  I certainly can probably produce some

25   examples of instances in which I have not made such a motion.  I

Oral Argument

1   believe so, Your Honor.

2       THE COURT:  Who was the lucky judge in that case?  It

3   was probably a case that was settled through a lot of

4   negotiations before the Complaint was even filed.

5       MR. WILLIS:  I don't believe it's restricted to those,

6   Your Honor.

7       THE COURT:  Okay.

8       MR. WILLIS:  The only other issue that's on our minds

9   for today, if the Court wishes to address it, is that you saw

10  probably the parties submit a Rule 16 Conference Report in which

11  the parties disagree on the schedule for various deadlines in

12  the case.

13      THE COURT:  You know, that's why I do my scheduling

14  orders.  I did it too quickly in this case, but I'm going to do

15  it all together on all the cases.  So I'm not as strict with the

16  scheduling report.  I should probably not require you all to do

17  that, but I kind of forced you to meet.  If you don't agree, I

18  set it.  And sometimes even when you agree, I set it, and I

19  usually make you friends because both sides then kind of join

20  and say, hold on, Judge, you're moving too fast.  So that's

21  probably what's going to happen here.

22      What's your pace?

23      MR. WILLIS:  Essentially, the pace that we had

24  suggested based off of the Court's ruling on the motion to

25  dismiss.

1    THE COURT:  So if I rule within a couple of weeks, you

2  want me to set this for trial when?

3    MR. WILLIS:  I would have to go back and look at the

4  Rule 16 Report, but I think I recall it being next year

5  sometime.

6    THE COURT:  Oh, no.  I don't think I have anything set

7  for next year.  I mean, I'd have to look it up, but I'd be

8  shocked.

9    MR. WILLIS:  There is a reason for that.  Because of

10  the amount of --

11    THE COURT:  You want me to set it for next year?  I

12  don't even know if my computer will open up for that.  So I

13  can't set something.  That's too far.

14    MR. WILLIS:  Your Honor, I think actually if I go back

15  and look at the report that we submitted, we didn't suggest a

16  trial date.  We left it up to the Court's discretion if I

17  recall.

18    THE COURT:  That's a smart thing.  There's nothing.  So

19  December would be -- and I hate doing things that take so long,

20  you know, next year.

21    MR. WILLIS:  But Your Honor, the reason for that is

22  because this is a case in which we expect that the discovery

23  will be fairly complicated.

24    THE COURT:  That's why I don't like to stay discovery,

25  see?  The problem with that is -- see, I kind of cornered you

Oral Argument

1  intentionally.  If it's going to take so long, we might as well

2  get started early.

3        If the discovery is short, if there were four or five

4  witnesses and the issues were clear-cut and I was thinking very

5  seriously -- and I might -- of dismissing a case, it seems

6  unfair to spend all that time and money.  But if it's not a

7  clear-cut case and it's going to take so long, we might as well

8  get on that track.  Don't you think?

9        MR. WILLIS:  Well, Your Honor, the reason that we

10  believe, and I probably would suspect the other defendants would

11  believe that --

12        THE COURT:  Oh, I'm sure they would agree with you, no

13  question.

14        MR. WILLIS:  -- that a stay would be appropriate, is

15  because of the concern that Mr. Englander articulated, which is,

16  these are cases that we think may be pared down substantially

17  and simplified from the standpoint of discovery, from the

18  Court's ruling on the motions to dismiss.

19        THE COURT:  You think discovery is different if I

20  simplify the Complaint?

21        MR. WILLIS:  It may be, Your Honor, depends on --

22        THE COURT:  I've never seen that, you know.  I've

23  always seen discovery just as expansive, but you have faith that

24  these plaintiffs will absolutely limit their discovery requests

25  a lot if I pare down the Complaint.  You think the discovery

Oral Argument

43

1   request will be totally different, and it will be to your

2   satisfaction.  You really believe that?  Do you?

3        MR. WILLIS:  I don't.

4        THE COURT:  That is why it's not worth even talking

5   about it then, right?

6        MR. WILLIS:  It may, however, make the process of the

7   parties' good faith discussions on discovery come out in a

8   different direction.

9        THE COURT:  "Good faith discussion on discovery."  See,

10  I never participate in those, so I don't know.  Okay.  I got it.

11       MR. WILLIS:  Anyway, those are the issues that I wanted

12  to present to Your Honor.  Those are the things that were on our

13  minds for today.

14       So if you don't have any further questions, I'll let

15  the next person get up.

16       THE COURT:  Thank you.  Okay.

17       MS. RAINES:  Your Honor, Amanda Raines on behalf of the

18  BIC and the QBE defendants.

19       I know you had some questions for plaintiffs in the

20  Hall case about the BIC and QBE.  I didn't know if you wanted us

21  to address them now or --

22       THE COURT:  If I did, I probably would have called you.

23       MS. RAINES:  Okay.

24       THE COURT:  Don't you think?

25       MS. RAINES:  I just wanted to make sure.

1          THE COURT:  I haven't forgotten.  I'm just trying to do

2     it in an order that I think would find it helpful, but you

3     disagree.  You want to talk about it now.

4          MS. RAINES:  Well, that's up to Your Honor.  I just

5     wanted to make sure we got a chance to respond to your question.

6          THE COURT:  Go ahead.  You're not forgotten.  What do

7     you want to say?  Get up.  You want to say something?  Oh, you

8     don't want to?

9          MS. RAINES:  I'll going to let Ms. Halliday --

10         THE COURT:  Oh, both of you.

11         MS. RAINES:  Ms. Halliday is going to address the

12    questions regarding the non-Balboa Insurance Company plaintiffs

13    and I'll address the QBE successor.

14         THE COURT:  Well, why don't you start since you're the

15    one who wanted to.

16         MS. RAINES:  All right.  I will.

17         THE COURT:  Help the court reporter and tell her your

18    name and who you represent.

19         MS. RAINES:  Sure.  My name is Amanda Raines.  I

20    represent QBE Insurance Company, QBE First and Balboa Insurance

21    Company.

22         Your Honor, I just wanted to address your questions

23    about QBE being the successor-in-interest to Balboa Insurance

24    Company.  We've cited in our --

25         THE COURT:  Is that undisputed?

```
 1            MS. RAINES:  Yes, that is disputed.

 2            THE COURT:  It is disputed.

 3            MS. RAINES:  It is disputed that we're the successor.

 4            THE COURT:  How do I grant a motion to dismiss if it's

 5   disputed?

 6            MS. RAINES:  Well, because they haven't adequately pled

 7   successor liability.

 8            THE COURT:  Okay.  How do they adequately plead that?

 9            MS. RAINES:  How do they adequately plead it?  Well,

10   they have to plead more than what they have here which is just

11   that QBE Insurance purchased which it wasn't QBE --

12            THE COURT:  Okay.  What do they have to say?

13            MS. RAINES:  They have to say more.  They have to show

14   that this was somehow -- the successor expressly -- excuse me --

15   the successor expressly or impliedly assumed the obligations of

16   the predecessor.

17            THE COURT:  Mr. Moskowitz says when you purchase it,

18   you get everything.

19            MS. RAINES:  And that's not enough.  I mean, there's

20   case law that we've cited in our brief that purchasing the

21   assets is not enough, Your Honor.

22            THE COURT:  Which Eleventh Circuit case says that?

23            MS. RAINES:  We've cited Southern District of Florida

24   which is the Enfante case.

25            THE COURT:  No, no.  I first like Eleventh Circuit
```

Oral Argument

1   case.

2        MS. RAINES:  I'm sure you do.  I'm sorry, Your Honor.

3   We have --

4        THE COURT:  I've go to be respectful.

5        MS. RAINES:  -- Southern District of Florida cases.  We

6   can try to find an Eleventh Circuit case.

7        THE COURT:  So there is no Eleventh Circuit case.

8        MS. RAINES:  I don't know if there is not, Your Honor.

9   I know it was cited --

10       THE COURT:  If there is, you would have found it, no?

11       MS. RAINES:  I think so, Your Honor, but that doesn't

12  mean it's not there, and it doesn't mean it won't be in our

13  reply brief.

14       THE COURT:  Oh, sure it is.  I have full faith in you.

15       You mean with computers today, there's an Eleventh

16  Circuit case on this that you haven't found, and you found a

17  district court case.

18       MS. RAINES:  Yes, Your Honor.  We found a district

19  court case in Florida.  We found one in California.  We found

20  numerous ones.

21       THE COURT:  But no Eleventh Circuit case?

22       MS. RAINES:  It's not cited in our brief, you're right.

23       THE COURT:  Well, that means you haven't found it.

24       MS. RAINES:  You're right.  We have our reply brief due

25  next week.  If we find it, we will put it in there for you.

1      THE COURT:  Oh, if you haven't found it by now, you

2  won't find it.  You found a California District Court case, and

3  you can't find an Eleventh Circuit case?

4      MS. RAINES:  Well, stranger things have happened, Your

5  Honor.  We may be able to find it by next week.

6      THE COURT:  Okay.

7      MS. RAINES:  But there is a four-factor test that seems

8  to be the test that all the courts have been applying saying

9  that QBE purchased the assets of Balboa --

10      THE COURT:  How come it's never been to the Eleventh

11  Circuit if it's so plain?

12      MS. RAINES:  Your Honor, I don't know.

13      THE COURT:  So I would be the first one if it went up

14  to the Eleventh Circuit.

15      MS. RAINES:  Again, Your Honor --

16      THE COURT:  Since there's no Eleventh Circuit case, if

17  I grant the motion, they appeal, there it goes.  And then you

18  would have an Eleventh Circuit case.

19      MS. RAINES:  We could have an Eleventh Circuit case,

20  and I have no doubt that Your Honor will be affirmed on appeal.

21      THE COURT:  You have no doubt.  Jeez, okay.

22      MS. RAINES:  The point is, they have bare-bone

23  allegations essentially saying that because QBE purchased the

24  assets of Balboa, that's enough.

25      THE COURT:  So what do they have to say?

Oral Argument

1       MS. RAINES:  There are four exceptions to this general

2   rule that purchasing the assets is not enough to assume

3   successor liability.

4       The first one is, the successor expressly or impliedly

5   assumes the obligation of the predecessor.  They haven't alleged

6   that sufficiently.

7       THE COURT:  So if they add, "they impliedly assumed the

8   obligations," you're satisfied.

9       MS. RAINES:  I think it's more than that.  I think

10  there are further tests to satisfy what those mean.  There's

11  also that the transaction has to be a de facto merger.

12      The third one is that the successor is the mere

13  continuation of a predecessor, and in many jurisdictions, if the

14  predecessor entity still exists, as it does for Balboa Insurance

15  Company, that is a company that still exists, then you can't

16  meet that criteria.  And then the last one is the transaction is

17  the fraudulent effort to avoid the liabilities of the

18  predecessor.  They haven't pled sufficient allegations here for

19  successor liability for QBE.

20      THE COURT:  But Balboa should stay.

21      MS. RAINES:  Balboa should be dismissed for the

22  independent reasons that Ms. Halliday will tell you more about,

23  but I will say Balboa Insurance Company is not the insurer for

24  five of the seven named plaintiffs.  They don't insure or they

25  don't issue flood insurance.  They don't issue wind insurance or

 1   they don't issue hazard insurance in New York.  They only

 2   issue -- with respect to the plaintiffs at issue, they only

 3   issue hazard insurance in Florida, and those are based on filed

 4   rates.

 5           THE COURT:  Okay.  Thank you.

 6           Ms. Halliday, you wanted to add something?

 7           MS. HALLIDAY:  Thank you, Your Honor.

 8           One of the things is, as my colleague, Ms. Raines, has

 9   pointed out, just to reiterate that Balboa Insurance Company is

10   not the proper defendant for five of the seven sets of

11   plaintiffs in the Hall case.

12           THE COURT:  And I can rule on that on a motion to

13   dismiss just because you say so.

14           MS. HALLIDAY:  Well, Your Honor, you know, we prefaced

15   that as part of our motion under 12(b)(1) as an issue of

16   standing and under that it's a factual attack on jurisdiction,

17   and so the Court can consider the affidavit that was submitted

18   by Mr. Petersen.

19           THE COURT:  Okay.

20           MS. HALLIDAY:  And in addition, the information as to

21   the insurer would be shared with the individual plaintiffs.

22   They receive as part of their notice letters a page that

23   indicates the name of their insurance.

24           In fact, Ms. Hall, the original plaintiff, attached

25   that page to her original Complaint and it identified Illinois

1   Union Insurance Company as the insurer, not Balboa Insurance

2   Company.  And the Complaint also alleges that Lexington

3   Insurance Company, again not Balboa, was the insurer for

4   plaintiff Gallagher, and similarly for Soileau, Vidrine and

5   Lugo.  None of those five had Balboa Insurance Company

6   insurance.

7           I also wanted to clarify a few points about the Filed

8   Rate Doctrine that Mr. Moskowitz made.

9           First to begin with, the Williams case, Judge Altonaga

10  did not issue a new decision on the filed rate in that case.

11          THE COURT:  Did not, I'm sorry?

12          MS. HALLIDAY:  She did not make any decisions about the

13  filed rate in that case.  That case did not involve filed rates.

14  It involved surplus line rates which are not subject to the same

15  regulatory process and doesn't create any of the issues with

16  judicial intervention and bringing causes of action that the

17  filed rates here do.

18          Also, the second case that Mr. Moskowitz mentioned, the

19  Kunzelmann case, although initially Judge Middlebrooks did deny

20  a motion to dismiss based on Filed Rate Doctrine, he later, as

21  part of his decision denying class cert, acknowledged that the

22  Filed Rate Doctrine was implicated.  And his order, in fact,

23  noted that plaintiff's counsel had conceded at the class cert

24  hearing that the unearned commissions that they were arguing

25  about, which are the same commissions that are at issue here,

1    are part of the rates that are filed and approved, and as a

2    result, the doctrine was implicated.

3              So we believe that, you know, that second decision from

4    Judge Middlebrooks should be read in conjunction with the first

5    one and supports our argument that the Filed Rate Doctrine is at

6    play here and should prevent the two claims from the only

7    plaintiffs that actually do have Balboa Insurance Company

8    insurance.

9              THE COURT:  Okay.  Thank you.

10             MS. HALLIDAY:  Thank you.

11             THE COURT:  Ms. Shinners, did you want to say

12   something?

13             MS. SHINNERS:  I do, Your Honor.

14             THE COURT:  Go ahead.

15             MS. SHINNERS:  As Your Honor recognized, we have a

16   motion to abstain with respect to Gallagher and Novells because

17   not only are they parties to pending State court foreclosure

18   proceedings --

19             THE COURT:  Do you know anything about those State

20   proceedings?

21             MS. SHINNERS:  I can tell you a little about them.  The

22   first thing I want to tell you is that both of them involve

23   challenges to the propriety of the lender placed insurance

24   charges that are at issue here.

25             THE COURT:  How long have they been around in State

Oral Argument

1   court?

2          MS. SHINNERS:  The Gallagher foreclosure action was

3   filed in May 2010.

4          THE COURT:  May 2010?

5          MS. SHINNERS:  Correct.

6          THE COURT:  Three years ago.

7          MS. SHINNERS:  Filed by Bank of America or BAC Home

8   Loan Servicing.

9          THE COURT:  Three years ago?

10         MS. SHINNERS:  Correct.

11         THE COURT:  Okay.

12         MS. SHINNERS:  But is procedurally advanced in that

13  there --

14         THE COURT:  Procedurally advanced?  I hope so.  It's

15  ready to get Social Security.

16         MS. SHINNERS:  -- in that there have been motion

17  practice regarding the pleadings, and discovery, importantly,

18  has been served and is proceeding.

19         THE COURT:  It's not set for trial or anything --

20         MS. SHINNERS:  Not to my knowledge.

21         THE COURT:  -- or summary judgment or anything like

22  that?

23         MS. SHINNERS:  Not to my knowledge, Your Honor, but

24  Your Honor, the dockets for each of the foreclosure actions are

25  attached to Bank of America's motion to abstain, to the

1    declaration of --

2          THE COURT:  And Novells is the same age?

3          MS. SHINNERS:  Novells is actually filed earlier in

4    October of 2009.

5          THE COURT:  2009?

6          MS. SHINNERS:  Yes, they both are pending in Palm

7    Beach.

8          THE COURT:  Wow.  Okay.

9          MS. SHINNERS:  And a particular note is that in the

10   Gallagher action, as I said, in both actions, the claims and

11   legal issues pending in the State court are identical or

12   substantially similar to the claims filed in this court, in that

13   they challenge the propriety of the lender placed insurance

14   charges and they challenge, in particular, arrangements between,

15   alleged arrangements between Bank of America and the insurers

16   and insurance agents.  They seek discovery regarding commissions

17   or allegedly improper --

18         THE COURT:  They haven't done that discovery yet?

19         MS. SHINNERS:  Discovery has been served in both of the

20   foreclosure actions.  I believe that responses have been served

21   in both as well.

22         THE COURT:  Responses?  That's three, four years, in a

23   regular foreclosure, and that's not even a class action.  Wow.

24         Okay.  I mean, you're not involved in the State

25   proceedings, right?

1          MS. SHINNERS:  My law firm is not involved in the State

2    court proceedings.

3          THE COURT:  So you'll be able to brag about how fast

4    we're going to move here.  So it will be great.

5          MS. SHINNERS:  Your Honor, I think that there are other

6    issues though in that this is a foreclosure, that a foreclosure

7    proceeding is --

8          THE COURT:  No, but the thing is, if you wanted me to--

9    If we don't get into the doctrine of Colorado River and we just

10   want to be differential, I mean, we have so many things to do in

11   court, and I say, you know, I'm just going to wait, okay, I'm

12   just going to stay it for a little bit, so that something

13   happens in State court out of deference -- I mean, usually that

14   makes sense, but if it's been going on for four and three years,

15   there's nothing to -- to stay it for what?  It seems like it's

16   just sitting there with the thousands of foreclosures that they

17   have in Palm Beach, Broward and Dade County and I sympathize for

18   those judges and I'm glad I'm not there anymore.  It's been a

19   long time, but it doesn't make sense to stay it.  For what?

20   Nothing is happening anyway except requests for production have

21   been propounded.

22         MS. SHINNERS:  And responses and documents produced

23   but --

24         THE COURT:  And responses have been given in a

25   presidential term because that's what four years is.

1        MS. SHINNERS:  Well, Your Honor, a foreclosure, and

2   more importantly in this case, the amount due under the mortgage

3   is a classic example of a legal issue that is proper for the

4   State court to decide.  And if these plaintiffs could have

5   brought -- they have some different causes of action in this

6   case.  There's nothing that prevented them from bringing those

7   causes of action in the foreclosure proceeding.

8        In fact, Gallagher did assert a counterclaim for

9   Florida Deceptive and Unfair Trade Practices Act.  There's

10  nothing to prevent them from joining any additional parties, if

11  they feel necessary, to adjudicate their counterclaims in their

12  foreclosure action.

13       THE COURT:  So that's where you want to be?  You are

14  there already, so you want more defendants in State court.

15       MS. SHINNERS:  In this case the first filed State court

16  action is the appropriate venue to decide the issues relating to

17  the lender placed insurance charges.

18       THE COURT:  Okay.  "Okay" means I've heard you, not

19  necessarily that I agree with you.  Okay?

20       MS. SHINNERS:  Okay.

21       THE COURT:  Thank you.

22       HSBC Bank, in the Lopez case, 13-21104.  Who's going to

23  speak for that bank?

24       MR. FRONTINO:  Good afternoon, Your Honor.  Brian

25  Frontino for defendants HSBC.

1           THE COURT:  Everything has been said already.

2           MR. FRONTINO:  A lot has been said.  Like Citibank, we

3    have the same three issues, the motion to dismiss, motion to

4    stay discovery and scheduling report.

5           The only difference on the motion to dismiss is we

6    actually have not yet filed our reply brief.  We will be filing

7    that today.  In fact, it's waiting for me back in my office to

8    file it.

9           THE COURT:  What's your reply going to say?

10          MR. FRONTINO:  You know, I just actually asked somebody

11   to paste the contents of it into an email for me and I was

12   looking --

13          THE COURT:  So you can just read it to me.

14          MR. FRONTINO:  Unfortunately, that was not done quickly

15   enough so --

16          THE COURT:  That's all right.

17          MR. FRONTINO:  In any event -- but we are comfortable

18   with those papers once they're filed.

19          As far as the motion to stay, we, of course, agree with

20   the defendants.  And just to your point about we should get

21   started on discovery now, the whole point of the body of law

22   governing staying discovery while a motion to dismiss is

23   pending, particularly one that challenges the entirety of the

24   Complaint, is to avoid the burden and expense of discovery until

25   the motion to dismiss is decided, because if we are successful--

1      THE COURT:  Which case said that?

2      MR. FRONTINO:  The cases that are cited in the motion

3  which are not with me unfortunately, but they are in there.

4      (There was a brief discussion off the record.)

5      THE COURT:  Go ahead.

6      MR. FRONTINO:  That was the only thing I wanted to add.

7      THE COURT:  Okay.  Thank you.

8      MR. FRONTINO:  You're welcome.  Thank you.

9      THE COURT:  All right.  And Wells Fargo in 13-60721,

10  who's going to speak for them?

11     MR. ESAU:  Good afternoon, Your Honor.  David Esau for

12  Wells Fargo Bank and Wells Fargo Insurance.

13     THE COURT:  E-s-a-u, right?

14     MR. ESAU:  Right.

15     THE COURT:  Go ahead.  That's for the court reporter.

16     MR. ESAU:  I'm sorry?

17     THE COURT:  That was for the court reporter.  She likes

18  correct spelling.

19     MR. ESAU:  That's right.

20     THE COURT:  Because I don't pronounce things as

21  perfectly as I should.

22     What do you want to say that hasn't been said?

23     MR. ESAU:  Your Honor, I have nothing else to say that

24  hasn't been said.  We agree with the defendant's position on all

25  these issues.

1    THE COURT:  Now, we have a couple of properties in

2  Florida though.  So you don't want me to send them anyplace,

3  right?

4    MR. ESAU:  I'm sorry?

5    THE COURT:  A couple of properties are here in Florida,

6  right?

7    MR. ESAU:  In Florida, there are two in Florida.

8    THE COURT:  And one in Louisiana.

9    MR. ESAU:  That's right.  That's right.

10    THE COURT:  So we might as well keep them here, right?

11    MR. ESAU:  We have not moved to transfer that Louisiana

12  case.

13    THE COURT:  And the reason for that is you think it

14  makes sense for one judge to do that.  It saves your client

15  money.

16    MR. ESAU:  No, not necessarily.  We just didn't see it

17  as an appropriate avenue of pursuing at this point.

18    THE COURT:  Okay.  Thank you.

19    MR. ESAU:  Thank you.

20    THE COURT:  Herrick versus JP Morgan Chase Bank.  Who's

21  here on behalf of the JP Morgan Chase?

22    MR. BROCHIN:  I am, Your Honor.

23    THE COURT:  Okay.  Mr. Brochin, what do you want to

24  say?

25    MR. BROCHIN:  We have two claims.  The Herrick

Oral Argument

1    Complaint contains three wind LPI claims and one hazard.

2         With regard to the three wind claims that are pending

3    before you, we've asked you to stay that pending the settlement

4    in the case that's also pending in the Southern District of

5    Florida before Judge Cohn identified as Pulley.  There are two

6    Florida claimants in the Pulley case.  That case was filed a

7    year ago tomorrow.

8         THE COURT:  Who represents the plaintiffs in that case?

9         MR. BROCHIN:  The plaintiffs are represented by Joel --

10   the firm is called Meredith & Narine.

11        THE COURT:  Okay.  And that would preempt the claims as

12   far as the wind cases here in your view.

13        MR. BROCHIN:  We believe so and the Court there --

14        THE COURT:  Who's going to answer that on behalf of the

15   plaintiff?

16        Mr. Moskowitz, grab the other microphone, the one right

17   there.

18        You don't have to yield.  No, this stand-up.  See the

19   tall one there?

20        Mr. Brochin, you don't have to yield your microphone.

21   It's not like the Senate where everybody yields.  It's like the

22   House where everybody yells.  Okay?  That was the intent of the

23   founders, and I guess they're getting what they wanted.

24        Why shouldn't I wait until Pulley, P-u-l-l-e-y?

25   Doesn't that make sense?  Tell me about Pulley versus JP Morgan.

1          MR. MOSKOWITZ:  Your Honor, we were familiar with the

2   Pulley case, and on April 1st, the plaintiffs in Pulley filed --

3          THE COURT:  April 1st of which year?

4          MR. MOSKOWITZ:  This year.

5          THE COURT:  Okay.

6          MR. MOSKOWITZ:  They filed a motion for class

7   certification, right off the bat, right when the case was

8   unstayed by Judge Cohn.

9          The defendants, who are standing here, filed a

10  responsive pleading saying that's ridiculous, nothing has been

11  done in this case, no discovery has been produced.  In fact, you

12  just added three defendants yesterday.  How can you move for

13  class certification?

14         Two days later on April 3rd, the defendants filed an

15  extensive motion to dismiss the case, and a day later, they

16  filed a notice with the Court, we've settled the case.

17         THE COURT:  Maybe they were persuaded by plaintiffs'

18  lawyers who are almost as smart as you are.  Should the judge

19  reject that settlement because it's too fast?

20         MR. MOSKOWITZ:  We are certainly not making judgment on

21  the settlement.  We would like to consider it.  It's our

22  clients.  We have wind clients and we've been doing for this

23  over a --

24         THE COURT:  Which one is your client, Pulley?

25         MR. MOSKOWITZ:  No, no.  We have wind clients --

Oral Argument

1         THE COURT:  Okay.

2         MR. MOSKOWITZ:  -- which this settlement with them --

3         THE COURT:  So you're members of that class?

4         MR. MOSKOWITZ:  We are.

5         THE COURT:  You're going to object?

6         MR. MOSKOWITZ:  We have no intention right now.  We've

7 asked Mr. Brochin, can you tell us about the deal, can you tell

8 us about the terms?

9         THE COURT:  Why don't we wait?  All he's saying is --

10 he's not saying dismiss it yet for that reason.  He's saying,

11 wait, until the wiser judge decides that, and then to see

12 whether you're in or out.

13         MR. MOSKOWITZ:  The problem, Your Honor, is with this

14 mediation that Chase had in New York, the cases were stayed for

15 nine months.  Nothing has gone on.

16         THE COURT:  Who's the judge?

17         MR. MOSKOWITZ:  Judge Cohn.

18         THE COURT:  Here?

19         MR. MOSKOWITZ:  Here in the Southern District of

20 Florida.

21         THE COURT:  Well, I can guarantee to you he's not going

22 to stay anything for nine months, 100 percent.

23         MR. BROCHIN:  Nor did he, and not only did he not --

24         THE COURT:  He's faster than I am.

25         MR. BROCHIN:  He is, and he entered an order, a

Oral Argument

1  scheduling order that required that discovery was to be cut off

2  this month with a calendar call in August.  When we settled the

3  case, he then stayed that scheduling order, and then entered

4  another order for us to comply with the schedule.  So we're on a

5  strict scheduling order.

6         So May 31st or May 30th --

7         THE COURT:  So my scheduling order that I just vacated

8  wasn't so bad after all, was it, Mr. Brochin?

9         MR. BROCHIN:  It was comparable.

10        THE COURT:  And yet, you still wanted me to need vacate

11 it.  See?

12        MR. BROCHIN:  Well, we ask for that to be changed as

13 well with Judge Cohn, because it was a little quick.

14        THE COURT:  But he denied it.

15        MR. BROCHIN:  He refused.

16        THE COURT:  So maybe I should vacate my order vacating

17 the scheduling order.

18        MR. BROCHIN:   Well, I would not suggest that.

19        THE COURT:  Okay.

20        MR. MOSKOWITZ:  Your Honor, our point is for practical

21 purposes --

22        THE COURT:  We should wait, shouldn't we?

23        MR. MOSKOWITZ:  We shouldn't, Your Honor, because --

24        THE COURT:  We shouldn't wait?  I should be in a race

25 with Judge Cohn.

Oral Argument

```
 1              MR. MOSKOWITZ:  There's no race, Your Honor.  It's just

 2    impractical to say, let's carve out wind claims, because we're

 3    going to work with Mr. Brochin, and we've had five or six calls

 4    already.

 5              THE COURT:  Why isn't it practical to carve out these

 6    different hazard, wind claims?  It seems to me that it makes

 7    sense to carve them out somehow, subclasses, different

 8    Complaints.

 9              Doesn't it make sense to you?

10              MR. MOSKOWITZ:  It does, Your Honor.  When we move for

11    class certification, we are going to have a flood group, a wind

12    group and a hazard group.

13              THE COURT:  And the wind group may not even be in here.

14    It may be in Fort Lauderdale, or is it Palm Beach, Fort

15    Lauderdale, wherever, because he has cases in both places.

16              MR. BROCHIN:  Fort Lauderdale, Your Honor.

17              MR. MOSKOWITZ:  Your Honor, that may be the result, but

18    what we suggested under your order that we were proceeding

19    under, was all we needed was some brief discovery, one corporate

20    rep deposition and there's no burdensome --

21              THE COURT:  But they've already settled.

22              MR. MOSKOWITZ:  No, they didn't settle yet.  They said

23    they settled, but they're going to need a couple of weeks or

24    months to do discovery to try to confirm what they supposedly

25    came up with.
```

1   THE COURT:  A couple of months?

2   MR. BROCHIN:  No, that's incorrect.

3   We've signed a Memorandum of Understanding.  It's been

4 filed with the Court.  The Court now has this order to file the

5 settlement agreement.

6   THE COURT:  Is this a public record?

7   MR. BROCHIN:  Yes.  Yes, the memorandum --

8   THE COURT:  All you've got to do is you get on the

9 computer and you find it.

10   MR. MOSKOWITZ:  No, no, it hasn't been filed.  We've

11 asked Mr. Brochin.

12   MR. BROCHIN:  No, I'm sorry.  I misspoke, Your Honor.

13   THE COURT:  Hold on.

14   MR. BROCHIN:  We did not file the memorandum --

15   THE COURT:  That's why we have oral argument.

16   MR. BROCHIN:  I'm sorry.

17   THE COURT:  We learn everything here.

18   MR. BROCHIN:  I'm sorry.  I misspoke.  We told the

19 Court and represented -- the Court said to us, Judge Cohn, that

20 you have to have your Memorandum of Understanding executed

21 between you by May 10.

22   THE COURT:  Okay.

23   MR. BROCHIN:  Tell me if you do.  We did.  We told the

24 Court we did.

25   Now, the next deadline is 10 days, 13 days, May 30th,

1  we have to file with the Court our settlement agreement which

2  will be a matter of public record, and then the Court said June

3  14th is the date to seek preliminary approval.  So we're on a

4  very tight schedule to pursue this settlement under Judge Cohn's

5  order.

6          THE COURT:  What's wrong with waiting until the end of

7  June?

8          MR. MOSKOWITZ:  Your Honor, we've already now waited

9  five weeks since our last hearing to start this discovery

10 against Chase --

11         THE COURT:  Goodness, we should have a transcript of

12 this and send it to my colleagues and friends in the Southern

13 District of New York and Eastern District of New York, Northern

14 District of Illinois, Central District of California, to hear

15 you all arguing about five weeks, seven weeks, six weeks.

16         I mean, we're moving so fast as it is, what's another

17 month?

18         MR. MOSKOWITZ:  Because we don't see, Your Honor, with

19 all due respect, the burdensome on --

20         THE COURT:  When you say "with all due respect," it

21 means, come on, Judge, you're not getting it.  Listen carefully.

22 That's what it means, "with all due respect."  It really does

23 mean that.  I don't take offense, but other judges might.

24         MR. MOSKOWITZ:  We'd asked some reasonable discovery.

25 We don't see and I'm willing to --

1          THE COURT:  But if this case gets settled, you like the

2    settlement, you don't object, it's for not, all this discovery.

3    You've got plenty of work to do in other claims, don't you

4    think?

5          MR. MOSKOWITZ:  Yeah, the only thing, Your Honor, we've

6    been doing this for three years and we've yet to see how --

7          THE COURT:  Not with me you haven't.

8          MR. MOSKOWITZ:  No, Your Honor, understanding the

9    documents, and it doesn't seem like there's a clear wind set of

10   discovery, wind depositions, wind representatives.  So when we

11   deal with Mr. Brochin, we say what does that mean?  Stay the

12   wind case, what does that mean?

13         THE COURT:  Okay.

14         MR. MOSKOWITZ:  Does that mean certain discovery

15   requests you're not going to give us?  Maybe we can work that

16   out, and if a settlement is a good settlement, we're happy to

17   approve --

18         THE COURT:  So maybe a stay until the middle of June,

19   end of June would resolve that.

20         MR. MOSKOWITZ:  If there's a way to stay the wind

21   discovery and proceed with the hazard discovery, sure, but we've

22   yet to get a proposal from them.

23         THE COURT:  Okay.  What do we do with hazard?

24         MR. BROCHIN:  Okay.  So with hazard there's one

25   claim --

Oral Argument

1          THE COURT:  Okay.

2          MR. BROCHIN:  -- only one, and we've asked that to be

3    transferred to the Northern District of California where there

4    is literally a case filed In Re: JP Morgan Chase Hazard

5    Litigation that's pending from claims brought by all sorts of

6    plaintiffs around the country.  I think there are some 14 named

7    plaintiffs there.  So we're asking that --

8          THE COURT:  And that's been going on for two years.

9          MR. BROCHIN:  That one was filed in June of 2011.

10          THE COURT:  For almost two years it's been there.

11          MR. BROCHIN:  Filed.

12          THE COURT:  It's not a multidistrict case though.

13          MR. BROCHIN:  No, it's not.  It's a consolidated -- now

14    it's a consolidated Complaint by various plaintiffs from around

15    the country.

16          THE COURT:  Is it a class action?

17          MR. BROCHIN:  It is, of course, a class action.

18          THE COURT:  And it has been certified?

19          MR. BROCHIN:  No, it has not been certified.

20          THE COURT:  In two years?

21          MR. BROCHIN:  Well, what happened was, there were

22    motions to dismiss filed.  They were granted in part, denied in

23    part.  Amended pleadings were filed and then they came back and

24    filed this consolidated Complaint and the judge out there

25    consolidated it into the In Re:  JP Morgan Hazard -- they broke

```
 1    it down by the product -- Hazard Litigation.
 2          Indeed, two Florida cases filed here in the Southern
 3    District of Florida for hazard were filed before Judge Altonaga
 4    and I think Judge Cooke, in Yogev and Knox.  They were dismissed
 5    voluntarily here, and they, too, joined as Florida plaintiffs in
 6    the Northern District of California.
 7          THE COURT:  Who are those lawyers in those plaintiffs'
 8    cases?  Not you, right?
 9          MR. BROCHIN:  No.  We had other people --
10          THE COURT:  How are we going to resolve those
11    conflicts?
12          MR. MOSKOWITZ:  We're going to proceed with the case
13    that we've brought, which are grouping other plaintiffs
14    together, here in the Southern District of Florida.
15          Mr. Podhurst is going to address this, but this is the
16    group that did the mediation, and it's in our papers, in New
17    York where we're not going to comment on the specifics of the
18    mediation, but we attended and then we left and nothing has gone
19    on.  That case is at the inception.
20          THE COURT:  The case in California?
21          MR. MOSKOWITZ:  It's at the inception.
22          THE COURT:  It's been two years.
23          MR. MOSKOWITZ:  It's been going on for two years.  Most
24    of it has been negotiated settlements that went nowhere, and our
25    concerned is that they're trying to settle these cases, certain
```

1  plaintiffs around the country quickly and not in a valid,

2  verified way like we've been doing with the Williams case for

3  three years.  And we do fear that.

4       These are the people who told us, we can't go to the

5  mediation unless we agree to drop the MDL request.  This is the

6  group out in California.  They've written to Federal judges in

7  the Southern District of Florida letters that we allege is

8  unethical.  They're not in pro hac vice.  They just write to

9  Judge Middlebrooks.  They write him letters, you shouldn't do

10  this, you shouldn't do that.  We've kept that from the Court.

11       THE COURT:  Who writes letters?

12       MR. BROCHIN:  He's not talking about us.

13       MR. MOSKOWITZ:  No, no, the plaintiffs' lawyers out

14  there.  So there have been issues there.  We've tried to work

15  with them, and I'm going to let Mr. Podhurst --

16       THE COURT:  No, no, hold on.  I've got to do things in

17  order here.

18       So this is the case in California that's been going on

19  two years.  So you want me to wait for how long, to do what?  To

20  transfer it over there into limbo?

21       MR. BROCHIN:  Well, to transfer it over there.  I don't

22  know about limbo, but transfer it over there under, which is

23  what our papers have said --

24       THE COURT:  Yeah, I know.

25       MR. BROCHIN:  -- under the first-filed rule, because

1    you basically have the same case going on.

2         THE COURT:  The first filed means last decided now

3    depending on where you do it.  We are geographically diverse in

4    America, aren't we?

5         MR. BROCHIN:  It brings complexity in that they've got

6    claimants from all over, but I did want to note that they're

7    also from Florida.

8         THE COURT:  It is a mess though.  It's almost like a

9    race though.

10        MR. MOSKOWITZ:  It is what --

11        THE COURT:  Hold on.  Hold on.  You guys relax.

12        MR. BROCHIN:  The thing to keep in mind is all everyone

13   seeks is a national class.  These aren't State classes.  So

14   everyone is seeking a national class, as they are here with

15   their Florida plaintiffs seeking a national class.  It seems

16   more appropriate if there's going to be a certification on a

17   national basis, it'd be with many more claimants from many more

18   diverse areas to seek it because hazard, unlike wind, the center

19   of gravity is not necessarily Florida.  Hazard is where the

20   centers of the population are.

21        MR. MOSKOWITZ:  Your Honor, our point is, and in the

22   papers -- they don't want to be before this Court.  They don't

23   want to be in the Southern District of Florida.

24        THE COURT:  Because we move too fast.

25        MR. MOSKOWITZ:  Because we move too fast and that we,

1  the plaintiffs' counsel, have done these cases the correct way

2  as in Williams, and in their MDL papers, they said, the cases

3  should not go to the Southern District of Florida.

4       So the reason we're so adamant about the wind is this

5  is part of their strategy.  Let's get the wind out, so the only

6  thing left is one hazard.  Let's send them to California.  We

7  leave Judge Moreno.

8       THE COURT:  Well, you know, if it's the strategy, you

9  can't blame them for that.

10      MR. MOSKOWITZ:  That's their strategy, but our clients

11 decided to file here.  Our clients filed our case here and we

12 had a hearing last --

13      THE COURT:  There's a strategy reason for that, too,

14 right?  You wouldn't want all those lawyers to get the

15 attorneys' fees in California.

16      MR. MOSKOWITZ:  We have invited them to work with us

17 from day one.  In fact, during the mediation in New York, we let

18 them run it.  We let them -- everything.  So it wasn't about

19 control, and we'd like to work together with everybody.  In

20 fact, after the MDL --

21      THE COURT:  I thought you said they're doing unethical

22 things.

23      MR. MOSKOWITZ:  There's alleged that there were things

24 that were going on, that one lawyer did that we didn't think was

25 appropriate.  I mean, I want to be careful.  That one lawyer did

1  two incidents, in writing a letter to a Federal judge which I

2  couldn't imagine how --

3        THE COURT:  Well, in New York they do that all the

4  time, because they can't file motions, but so it doesn't count

5  against them for motions but it's perfectly legitimate.  It's

6  part of the culture, and every area is different.  Okay.

7        Anything else?

8        MR. BROCHIN:  No.  I mean, you know, settlement quick

9  or not, it's going to be vetted --

10        THE COURT:  So why don't you settle this one quicker?

11        MR. BROCHIN:  It's going to be vetted through the

12  court.  We will.  We are trying.  Part of this --

13        THE COURT:  You know, it can't be that hard to beat out

14  San Francisco, can it?

15        MR. BROCHIN:  Well --

16        THE COURT:  I mean, I hate to be blunt about it.

17        MR. BROCHIN:  I think Chase is facing all of the exact

18  same --

19        THE COURT:  All over.

20        And once you have one class certification, it's over,

21  right?

22        MR. BROCHIN:  Right.

23        THE COURT:  And that's what you want, assuming a class

24  is certified.  Obviously, you don't want a class to be

25  certified, but maybe you do.

1         MR. BROCHIN:  No.  Well, for example, in wind, we

2    settled, and we're going to go get it certified for settlement

3    purposes.  The hazards, that's certainly obviously a

4    possibility.

5         THE COURT:  So why don't you settle it here instead of

6    there?

7         MR. BROCHIN:  The claims are pending there.  There are

8    a lot more of them pending there, and we prefer for this Court

9    to transfer.

10        THE COURT:  I got it.

11        MR. BROCHIN:  It's only one case here.  There are 14 of

12   them out there in California from all over, and like I said,

13   it's a national class.

14        THE COURT:  They seem to have so much work there.

15   Should I really burden them that much?

16        MR. BROCHIN:  Yes.

17        THE COURT:  All right.  Anything else?  That's it?

18        MR. BROCHIN:  No.  Your Honor addressed our concern

19   over the scheduling order so --

20        THE COURT:  Okay.  Any other defendant who wishes to

21   say anything, who hasn't had the opportunity, who forgot, who

22   wants to add something?

23        MR. BURT:  Your Honor, if you'd like to hear any

24   argument on the Filed Rate Doctrine, Mr. Moskowitz made some

25   comments about it, I think he was incorrect on some things.  I

Oral Argument

1   could inform the Court but --

2           THE COURT:  It's up to you.  Someone already mentioned.

3           MR. BURT:  Well --

4           THE COURT:  Is Judge Altonaga's case a Filed Rate

5   Doctrine case?

6           MR. BURT:  I'll just make it very brief, Your Honor.

7   The plaintiffs --

8           THE COURT:  Is her case a Filed Rate Doctrine, the case

9   that she ruled on?

10          MR. BURT:  No, Your Honor, it wasn't.  It was a State

11  case involving surplus lines carriers.

12          Anyway, the plaintiffs' completely misstate the scope

13  and the application of the Filed Rate Doctrine.  It's not the

14  factual claim being made that counts for application of the

15  doctrine.

16          The Tenth Circuit in the Cole case made it clear, and

17  I'll just quote:

18          "The underlying conduct does not control whether the

19      Filed Rate Doctrine applies.  Rather, the focus for

20      determining whether the Filed Rate Doctrine applies is the

21      impact the Court's decision will have on agency procedures

22      and rate determinations."

23          And you know, they mentioned the Kunzelmann case.

24          In fact, Judge Middlebrooks when he entered his first

25  dismissal order, it was based entirely on Mr. Moskowitz'

1  representations to him that the claims at issue did not involve

2  LPI rates.

3        THE COURT:  Yeah, but then there's an order denying

4  class cert.  He clarified.

5        MR. BURT:  He clarified that.

6        THE COURT:  I heard that already.

7        MR. BURT:  Yeah, and there just isn't any question,

8  Your Honor, that the relief sought in these cases, which is the

9  key for application of the doctrine, would subvert the authority

10  of the insurance regulators to set the rates, because only by

11  finding a reasonable rate could a Court or a jury decide on the

12  amount of damages to award here.  And of course, any damages

13  relief to one servicer's borrowers in these cases would mean

14  that the underwriter's other policyholders in other programs --

15  and of course, there are 50 programs here, these only involve

16  five of them -- they would be paying a different rate in clear

17  violation of the antidiscrimination strand of the doctrine.  So

18  there's just no question that the Filed Rate Doctrine applies to

19  these claims.

20        Judge Edenfield just in March in the Roberts case, on

21  identical LPI claims, he said, quote:

22        "Regardless of the spin put on the Roberts allegations

23      and the claims, at bottom, this case calls for relief," and

24      that's the key issue.  "It self-triggers application of the

25      Filed Rate Doctrine."

1          So I urge the Court to look carefully at the underlying

2     rationale for the application of the doctrine, not what some

3     judge decided on an earlier motion to dismiss when he didn't

4     look at that issue carefully.

5          Thank you.

6          THE COURT:  Thank you.  Any other plaintiff wish to say

7     anything?  Mr. Podhurst.

8          MR. PODHURST:  Judge Moreno, you started off the

9     hearing saying sometimes you like to take a practical approach

10    as a judge.  I hope you'll afford me the opportunity as a lawyer

11    to be very practical here, because it's what's not been said in

12    this courtroom that I need to say to you.

13         These cases are about finding the weakest plaintiff to

14    have a sweetheart settlement with.  That's what this is all

15    about, because there's no MDL in which you have a centralized

16    MDL judge who has assert more powers.

17         At the hearing several weeks ago, we pointed out to

18    Your Honor that the biggest interest of these cases, and in

19    hazard, it's the very biggest, are the people of Florida.  They

20    have over 35 percent of the alleged damages in this case, the

21    second is California with 10 percent, and then it gets into 1

22    percent and 1 percent.

23         And so the opportunity of the defendants -- and these

24    are very bright lawyers, I respect every one of them -- is to

25    get these cases to the weakest link, have a sweetheart

1  settlement and then what is Judge Moreno going to do when we

2  object and when there's another judge out there and an end run

3  is being made?

4        THE COURT:  There's a judge out there though.

5        MR. PODHURST:  Excuse me, Your Honor.

6        THE COURT:  No, excuse me.  The Judge, however, over

7  there can say, it's not a good deal.  I'm not accepting it.

8  This is not fair.  Couldn't that judge do that in California or

9  wherever?

10        MR. PODHURST:  Of course, but my point, which I was

11  about to say, Your Honor, why would Your Honor stay a case, not

12  have it go forward when the people of Florida have every right?

13        I heard today several things I've never heard in my 50

14  years of practice; that on a motion to dismiss, picking one

15  judge in Georgia, who I'm sure is a fine judge, on a motion to

16  dismiss could file an affidavit because it's a 12(b)(1); because

17  it's subject matter, there's no discovery.

18        I've had 30 aviation cases where somebody said on the

19  Montreal and Warsaw Convention, et cetera, et cetera, there's no

20  subject matter jurisdiction and we took discovery and there is

21  subject matter jurisdiction.  So to do it on a motion like that,

22  Your Honor, respectfully, is wrong.

23        Why are all the judges in this country, scores of them

24  who denied motions to dismiss wrong in the forced placed

25  insurance?  I suggest to Your Honor that these absolutely are

1    cases of liability.  I suggest to Your Honor that the statement

2    made by my good friend, Mr. Brochin, that we can send Florida

3    plaintiffs to California, but Mr. Englander said, we can't have

4    Louisiana plaintiffs here, is an inconsistency.  So what is this

5    about, Your Honor?

6            This is about the plaintiffs asking you that the rules

7    of this court ought to be enforced.  You've never, up until

8    today, stayed discovery.  My young friend, Mr. Moskowitz said --

9            THE COURT:  Oh, I've done it a couple of times.  I've

10   done it.

11           MR. PODHURST:  Well, you haven't is what I've said.

12           THE COURT:  I follow Chudasama, but every case is

13   different.

14           MR. PODHURST:  What I'm saying is, we send out a

15   corporate representative deposition the day before, and they

16   don't show.  That's not the way it works.

17           In my opinion, as a lawyer I wouldn't do that.  I filed

18   a motion to quash the deposition.  I would do the things that

19   have to be done.

20           Now, in my view, Your Honor, respectfully to the court

21   process, if you would stay with your September trial date -- you

22   could have 400 hearings on a motion to dismiss.  That's up to

23   Your Honor.  I think Judge Kehoe -- may he rest in peace --

24   sought out a better idea but that's up to you.  You can get as

25   much oral argument as you want and do that.

1      As long as this case is set for trial in September, and

2  I think all of the defendants ought to be set, not just one, for

3  trial, and as long as we get 90 days for discovery because we

4  need some discovery on damages -- and I don't know how Bank of

5  America can produce 2 million pages and tell the MDL they could

6  do it on a disk and then deny to Mr. Moskowitz in good faith, I

7  think people have to act in good faith -- we will be ready to

8  try this case.  I want to make you a bet.  These cases won't be

9  tried in front of you.

10      And saying it another way, Your Honor, Judge Scola

11  settled the Williams versus Wells Fargo because he set it for

12  trial, and I believe only until then, will these cases go away.

13      This is not rocket science, and if they want to file

14  affidavits on a motion to dismiss, they certainly would have to

15  give us the right to file other affidavits and testimony.

16      You will deny, I respectfully believe, these motions to

17  dismiss as every other judge has in the country with very few

18  exceptions.

19      So here's our request:  The people of Florida have the

20  biggest interest in this case.  They have the most damages, and

21  this case is now set.  It's been filed.  Mr. Moskowitz -- and by

22  the way, Mr. Tropin asked me to tell you that it's no disrespect

23  that he's not here.  A child is graduating.  We didn't want to

24  put off the hearing, so he apologizes for not being here but --

25      THE COURT:  Say that again.  Who?

Oral Argument

1        MR. PODHURST:  Mr. Tropin has a child who's graduating

2  in New York and didn't want to put off this hearing with that,

3  so he apologizes to the Court.  I forgot to say that.

4        THE COURT:  I think the interests are well represented.

5        MR. PODHURST:  Have been represented as far as what I

6  know about Mr. Tropin, but that's a different issue.

7        THE COURT:  I didn't say that, but you said it.

8        MR. PODHURST:  Your Honor, this is about preventing the

9  defendants from picking who they want to settle with.  I can't

10  say it any other way.  That's what it's all about, and if they

11  can get a settlement --

12        THE COURT:  But what's wrong with that?  What's wrong

13  with picking --

14        MR. PODHURST:  Because the plaintiffs have a right to

15  pick where they want to go.  The MDL said to divide this in a

16  very efficient manner.  We've put together five cases that are

17  exactly alike.

18        My distinguished member, Mr. Burt, who I love and is a

19  better lawyer than I'll ever be, told you two weeks ago that the

20  four banks that Assurant is, are so different that you shouldn't

21  consolidate it and they shouldn't be together, and the same

22  judge reads a 22-page order, whether an insurance company or

23  not, in New York -- and you'll see that these cases are not

24  rocket science.

25        So what we're asking -- the plaintiff has a right to

1    file them.  I understand Your Honor you have the discretion to

2    bump anything out of your court, but we have the biggest

3    interest in Florida.

4          We do not want to go around the country objecting to

5    what we deem to be sweetheart settlements, and Mr. Moskowitz is

6    too young and too nice to say what I'm going to say.

7          THE COURT:  Oh, watch out then.

8          MR. PODHURST:  The judge who just has in this district

9    the wind thing that you discussed with him is a great judge, but

10   the reality is there's no discovery.  None.  So he's going to

11   have to see why suddenly they made a deal.  Maybe it's a great

12   deal.  I don't know what it is, et cetera.

13         All I'm simply saying is, I handled a number of class

14   actions.  Usually, you do some discovery and then you find out

15   whether you can settle it and what is involved.

16         Now, maybe you can do it the other way.  Maybe suddenly

17   the defendants find religion, and they offer enough money so

18   that we can settle it without discovery.  I don't know.  I don't

19   know anything about that case.  I have a lot of faith in Judge

20   Cohn, and I'm sure it will come out.

21         However, I do know that the people of Florida in the

22   hazard case, if we could keep the September date, and I don't

23   know why it's only one bank, it ought to be five banks that

24   ought to be set for trial --

25         THE COURT:  Well, I actually issued that order probably

1   as the Supreme Court says improvidently granted.  You know, I

2   was probably too quick on the trigger.

3          MR. PODHURST:  Well, I don't think you were

4   improvident, but that's up to you.

5          Your Honor, here's our request:  If you never ask, you

6   can't possibly get it as a trial lawyer.

7          THE COURT:  All right.

8          MR. PODHURST:  Our "ask" is that you had set these

9   cases in September and then after as quickly as you can.  We

10  need 90 days of discovery.  We've been at this -- Adam has been

11  at this for three years.

12         We know exactly what we need.  We need some corporate

13  deposition and some damage information.  In my view, my view, as

14  far as motions to dismiss and how much oral argument you want to

15  give, that's within the province of the judge.

16         However, we would ask you not to let this go for three,

17  four, five months and then say, we don't have any discovery

18  because it's been stayed and we need to have discovery and then

19  we're going to start getting what I would call sweetheart

20  settlements in Oregon where 1 percent of the damages are, or

21  wherever, that's just a hypothetical and then we're going to

22  have all kinds of problems.

23         I believe sincerely, Your Honor, for whatever reason,

24  these cases are now in front of you.  They should be set for

25  trial.  There should be no discovery stay of any kind.

1          I really thought you in effect had denied motions to

2    transfer if you really want to know what I thought the last

3    argument was.  Maybe it wasn't on a motion to transfer, but that

4    was the gist of what we were talking about but that we had to be

5    together.  But if you want to have an oral argument on a motion

6    to transfer, fine, but please, Your Honor, don't stay discovery.

7    Set the cases for trial.  Let's see what happens.

8          I would think that if we had a relatively certain trial

9    date, these cases will go away.  I'm predicting that, but if

10   they don't go away, Judge, that's why you're here.  We'll try

11   them.  So I believe that's what should happen.  I don't look

12   forward, Your Honor, to objecting to settlements around the

13   country.

14         I don't want to get into why the case in California is

15   two years and nothing has occurred.

16         I do want to tell you one thing:  You asked some

17   specific questions, and I think I'm off the point here, but it's

18   a direct answer to your question.  You asked Novells and

19   Gallagher, why it's been so long.  Nothing has been done since

20   March of 2012.  Nothing has even been filed.

21         THE COURT:  Why?

22         MR. PODHURST:  I don't know.  I can suspect why, but if

23   I said it, you'd say, well, you're just guessing.  Because they

24   were filed for the reason that we're here today.  These are

25   things to make -- as long as we can't go forward, they win.

Oral Argument

1          THE COURT:  But they're your plaintiffs.

2          MR. PODHURST:  Your Honor, these actions are brought by

3     the bank.

4          THE COURT:  I thought you were talking about other

5     plaintiffs.

6          MR. PODHURST:  No, no, these are the banks.  It's five

7     defendant banks in one of these cases.  That has got nothing to

8     do with us.

9          THE COURT:  But they're your plaintiffs.  You can't

10    find other plaintiffs who don't have issues?

11         MR. PODHURST:  Can we?  Sure but --

12         THE COURT:  Well, I would prefer that.

13         MR. PODHURST:  All right.  But Judge, that's a specific

14    issue -- Your Honor, that's a specific issue which we could

15    address.  The overall issue here is a trial date, fairness to go

16    forward with some discovery of 90 days.

17         I believe that banks or any party shouldn't be allowed

18    to just not give you discovery until they can keep the last

19    motion to dismiss, reply brief going, so we get further down the

20    line without a trial date, and then we're going to get into all

21    of this, what I call sweetheart discovery.

22         I think that that's what this case is about.  I think

23    Your Honor, and I'm not blowing smoke in anybody's ear, can

24    separate what's important and what's not.  I'm not asking you to

25    take away any hours of arguing on motion to dismiss, if that's

Oral Argument

1    what Your Honor wants to do, and I believe that motions to

2    dismiss can be denied without prejudice and we can go forward.

3    But if you want to hear argument, we're prepared to hear

4    arguments.

5            The essential point, Your Honor, is you were correct,

6    not inadvertent or improvident or impulsive when you set, in my

7    view anyway, when you set this case for trial.

8            Do not let, respectfully, discovery be stayed.  Do not

9    transfer these cases.  Set them for trial and justice will be

10   served.

11           Thank you.

12           THE COURT:  Anybody else who wants to say anything?

13           MR. PRIETO:  Your Honor, it's getting late.  May I have

14   five minutes?

15           THE COURT:  It's not late.  It's 4:20.  What time do I

16   usually leave, Gilda?  You don't want to know, but it's always

17   when the sun is down.

18           So that's around 7:30, 8:00.

19           MR. PRIETO:  I'm not going to take that long.

20           THE COURT:  But you're going to have to use the big

21   microphone --

22           MR. PRIETO:  Yes, sir.

23           THE COURT:  -- Mr. Prieto.

24           MR. PRIETO:  I simply, Your Honor, want to respond to a

25   couple of issues that came up during the defendants'

 1  presentation.

 2        Let me just first address the Federal claims, the RICO

 3  claim and the Bank Holding Act claim.  You heard from Bank of

 4  America that they want to pare down this Complaint.  Well,

 5  there's a reason why they want to pare it down, and that is

 6  because Federal claims are easier to certify than State court

 7  law claims.  So the paring down really has nothing to do with

 8  our allegations of valid RICO claims and valid Bank Holding Act

 9  claims and valid TILA claims.

10        If you look at our allegations, in the RICO

11  allegations, they clearly state a RICO substantive violation and

12  RICO conspiracy violation.  We set out the enterprise.  We set

13  out the pattern of racketeering activity.  We allege that it

14  goes over one or two years.  We state the omissions and

15  misrepresentations that were made.

16        This whole argument that this letter somehow doesn't

17  form the basis of a RICO claim is just not consistent with the

18  law.  In fact, the law in the Eleventh Circuit says that a

19  letter can have absolutely no false information or omission as

20  long as the underlying scheme to defraud has misrepresentations

21  and omissions.  The actual mailing or wire doesn't need to

22  contain any false information or omissions.  It's the scheme to

23  defraud that needs to have omissions and material

24  misrepresentations.  So this argument that there's no valid RICO

25  claim, it just isn't there.

Oral Argument

1          Every defendant that I know that gets sued in a

2   commercial case involving long-term wrongful conduct says this

3   is not a RICO case.  Well, this is a RICO case, at least at this

4   stage, because we've alleged a RICO case and we believe we can

5   prove it.  That's as to the RICO claim.

6          As to the Bank Holding Act claim, clearly we've alleged

7   a Bank Holding Act claim violation.  We alleged a tied product

8   which is the banks' forced placing of insurance, and excuse me,

9   we've alleged a tie-in product which is the forced placement of

10  insurance and then the tied product which is the commissions

11  earned by the bank affiliate.

12         So we've alleged a Bank Holding Act claim.  It's clear.

13  It's in our Complaint and we have alleged everything that we

14  need to allege both factually and legally on a Bank Holding Act

15  claim.

16         The argument about successor liability, Your Honor,

17  we've alleged that -- I mean, if you look at our allegations, we

18  allege that they purchased the assets and liabilities of the

19  predecessor.  That, under district court case law here is valid

20  and it's appropriate.

21         I would submit to Your Honor that any argument about

22  exceptions, that we didn't allege much, those are actually

23  factual issues that can't be disposed of in a motion to dismiss

24  or maybe even affirmative defenses that the banks or the

25  insurance company should be raising and not attacking in a

1   motion to dismiss.

2       I want to say a couple of other issues concerning the

3   argument that I believe Assurant made that this should be

4   dismissed with prejudice, because they're not an insurer.  They

5   don't write insurance policies.

6       This same issue was presented to a judge I believe in

7   Texas and the same affidavit apparently was presented to this

8   judge in Texas.  His name is the Honorable Judge Ramos.

9       Judge Ramos said the following in determining the same

10  issue before Your Honor.  He said, quote:

11      "I think if I'm going to consider the information in

12      the affidavits provided by the defense, I do think it's fair

13      that the plaintiffs be allowed to at least question those

14      witnesses.  They're self-serving.  So I do think that

15      plaintiff should at least have an opportunity to question

16      those people regarding other information they may have.  I

17      just don't think it's necessarily fair for the defense to be

18      allowed to present affidavits or some testimony from

19      witnesses and the other side not be allowed in this case --

20      because they have raised some information they would like to

21      get from those very people -- not be allowed to question

22      those.  I'm going to allow them to take the deposition, and

23      I'm going to allow them to do the discovery requested."

24      This is from a transcript of a motion hearing before

25  the Honorable Nelva Gonzales Ramos which we have cited in our

Oral Argument

1   response.

2         So to the extent that any issues regarding Balboa,

3   whether they're a proper party or not, or the successor

4   liability as it relates to QBE, those are issues of fact that

5   can be developed and borne out in discovery.  In fact, when you

6   asked counsel for I believe QBE and you said, is this disputed

7   or undisputed, she said it's disputed.  Well, if it's disputed,

8   it should be disposed of in a motion to dismiss.

9         Two more comments, Your Honor:

10        One is this whole issue about transferring plaintiffs

11   from this court to another court.  I've never seen that done in

12   a class action.  I mean, this is a class action.

13        THE COURT:  I haven't certified a class action.

14        MR. PRIETO:  That's correct.  It's a putative class

15   action, but even before the class action is certified, I mean,

16   this is a nationwide class action where we have various class

17   representatives from various states and if Your Honor --

18        THE COURT:  But they have the same thing in California

19   and in Fort Lauderdale.  That's the problem I see.

20        MR. PRIETO:  And you know, when you said, this is a

21   race, it is a race but it is a consequence --

22        THE COURT:  It seems like a race by turtles though.

23        MR. PRIETO:  Well, turtles in the west coast.

24        THE COURT:  Okay.

25        MR. PRIETO:  But what I would submit to Your Honor, you

Oral Argument

1  made a very good point, and that's the danger, if not

2  consequence, of no centralization in the MDL.

3          THE COURT:  But you made that argument before a panel

4  that sometimes sits right here on the same bench and they said

5  no.

6          MR. PRIETO:  Right, and they also said, order your

7  plaintiffs and those plaintiffs' counsel that you work with,

8  order them in an organized fashion, and coordinate in an

9  appropriate form.

10          That's what we've done here.  Ironically --

11          THE COURT:  No, but that's like a sermon.  You know,

12  that's like when we tell our kids behave, what does that mean?

13          MR. PRIETO:  Well, Your Honor --

14          THE COURT:  We've got to be specific.  Don't drive,

15  don't drink and drive, don't smoke pot, get home at 12:00.

16  That's the difference.

17          "Coordinate together," you've got to be kidding me.

18  How are you going to coordinate together without the help of a

19  judge, right?  This involves lots of money.  There's even fights

20  among plaintiffs' lawyers, let alone defendants' lawyers.

21          MR. PRIETO:  Your Honor, the irony is that we are doing

22  here, we are coordinating and doing here what those lawyers --

23          THE COURT:  Oh, no, look at that.  That's not because

24  you're talking too much by the way.

25          MR. PRIETO:  I apologize.

1          THE COURT:  No, there's an alarm.  You're going to have

2    to leave by the stairs.

3          THE MARSHALS:  Not us, but --

4          THE COURT:  Not you.  Okay.

5          MR. PRIETO:  Your Honor, thank you.

6          MR. BURT:  Saved by the bell.

7          THE COURT:  Well, I was going to tell you what I

8    thought, but I don't know if I can do that with the alarm.  You

9    feel like you're in Winston Churchill's London or something,

10   right, but it's not that bad.

11         Let me tell you what I thought, and I'm going to issue

12   a written order, but before you have to walk down the stairs

13   because you can't use the elevators apparently -- Hopefully,

14   it's not someone who's popped some popcorn and got the alarm

15   going.  That would be upsetting.

16         On the Herrick case, 13-21107, Herrick versus JP Morgan

17   Chase Bank, I am going to stay that case because of Judge Cohn's

18   Pulley versus JP Morgan.  I'm going to stay that one until July

19   1st.  By then we'll know something about that.  So there will be

20   no motion practice, no discovery.  That one is stayed until July

21   1st.  It's not that long anyway, and I have already vacated the

22   scheduling order.

23         I'm going to deny the motion to dismiss, and there will

24   be written orders on it, on the RICO violation and Truth in

25   Lending claims.  I'm also going to deny the motion by Bank of

1    America to sever or transfer the cases.  I may reconsider that

2    once there's a little bit of discovery.  I will issue an order

3    on the issues relating to the Filed Rate Doctrine by June 25th.

4    If I grant the motion to dismiss and I allow an amendment, it

5    will be shortly thereafter by July 19th.  If I deny it, then it

6    will be an issue that will be done on a motion for summary

7    judgment.

8         I'm also denying the motion to dismiss of QBE, Assurant

9    and American Insurance Company.  I need to know more.  I can't

10   do it just on an affidavit.  I know the arguments that you've

11   made.  I think they're good arguments.  I need to know more, but

12   I do need to have a little bit of discovery.

13        The only problem with this issue is that, at least as

14   far as QBE, Assurant and American Insurance Company, that

15   discovery should be very limited.  As far as other issues, the

16   discovery is very big.  So what I am going to do is, I'm going

17   to stay discovery until next week, May 24.  So don't do anything

18   until then, just hold your horses, and then I will tell you how

19   discovery can proceed as to those defendants because things are

20   limited and I think we can work on that.  You can't work on

21   everything.  All right?  And I will tell you the case will

22   proceed quickly either on summary judgment -- I think that the

23   defense makes some very good arguments on this.

24        Now, I am going to grant however -- we've got to

25   leave -- as to Gallagher and the Novells, I'm going to grant the

1    stay unless you replace -- you better substitute those

2    plaintiffs, because if something has been hanging around for

3    three or four years there, I don't know why they have such a big

4    beef over here when they've taken that long.  So you either

5    substitute those plaintiffs with someone else in an Amended

6    Complaint because I'm going to grant that stay also until I hear

7    otherwise from you all as to what's happening, who are the

8    proposed plaintiffs.

9         I'll issue a written order.  I can't have you stay here

10   in case it's a real alarm, because the alarm is sounding and I

11   can't be held accountable.  You'll have to leave.  I'm the last

12   one to leave the building even with an alarm.  So the sooner you

13   start, the sooner I can leave.

14        MR. PRIETO:  Your Honor, just one clarification on the

15   stay of the Chase case, Mr. Brochin only requested that you stay

16   the wind claims, not the hazard claims, and we would like to go

17   forward with --

18        THE COURT:  I know, but I'm going stay everything until

19   July 1st on that case.

20        MR. PRIETO:  July 1st?

21        THE COURT:  I understand that it's only as to the wind

22   case.  Okay?  I understand.

23        MR. PRIETO:  Okay.

24        THE COURT:  But until July 1st so I can straighten it

25   out.  I'll issue a written order and I'll move the discovery,

1   and I will tell you, September seems ambitious.  It's going to

2   be 2013.  So do your orders.

3          Welcome to the Southern District of Florida.  Judge

4   Cohn and I welcome you all, but you won't stay here as long as

5   you think you will.  Okay?

6          MR. PRIETO:  Thank you, sir.

7          THE COURT:  Thank you.  Sorry it took so long.

8          MR. BROCHIN:  Thank you.

9          THE COURTROOM DEPUTY:  All rise.

10          (The hearing was concluded at 4:35 p.m.)

11

12                 C E R T I F I C A T E

13          I hereby certify that the foregoing is an accurate

14   transcription of proceedings in the above-entitled matter.

15

16   __06-04-13_____        _____
              DATE                GILDA PASTOR-HERNANDEZ, RPR, FPR
17                                Official United States Court Reporter
                                  Wilkie D. Ferguson Jr. U.S. Courthouse
18                                400 North Miami Avenue, Suite 13-3
                                  Miami, Florida  33128    305.523.5118
19                                gphofficialreporter@gmail.com

20

21

22

23

24

25

**A**

Aaron 2:1 8:19
Abels 13:22
able 36:9 47:5 54:3
about 6:16,16,21,23 7:12 12:21
13:1,7 14:1,4 15:1,10,14 16:1
16:15 18:10,13 25:19,21 27:3
28:25 32:23,23 35:7 36:24
39:17 43:5,20 44:3,23 48:22
50:7,12,2,5 51:19,21 54:3
56:20 59:25 61:7,8 65:15
69:12,22 71:4,18 72:16 73:25
76:13,15 77:11 78:5,6 80:6,8
80:10 81:19 83:4 84:4,22
87:16,21 89:10 91:19
above-entitled 94:14
absolutely 38:2 42:24 77:25
86:19
abstain 11:17 51:16 52:25
abstention 37:6
abuse 32:11
accepting 77:7
accountable 93:11
accurate 94:13
acknowledged 50:21
across 17:22
act 33:2 35:25 36:19,24 55:9
79:7 86:3,8 87:6,7,12,14
action 15:25 16:1,4 17:12,16,22
22:24 31:6 50:16 52:2 53:10
53:23 55:5,7,12,16 67:16,17
89:12,12,13,15,15,16
actions 16:5,10 17:24 18:21 19:9
20:19 52:24 53:10,20 81:14
84:2
activities 18:17,19
activity 86:13
actual 86:21
actually 15:17 34:4 41:14 51:7
53:3 56:6,10 81:25 87:22
Adam 2:6 8:19 13:4 82:10
adamant 71:4
add 48:7 49:6 57:6 73:22
added 33:20 60:12
adding 12:17
addition 49:20
additional 55:10
address 11:8 27:3,4 33:14,17
37:6 38:16 40:9 43:21 44:11
44:13,22 68:15 84:15 86:2
addressed 13:17,19,2 1 15:17
73:18
addressing 11:1,17 34:7 36:1
adequately 45:6,8,9
adjudicate 55:11
adjudicated 20:9,14 31:11
admission 38:4
advanced 25:18 52:12,14
advising 9:18
affects 17:22
affidavit 22:4 23:19,2 0 49:17
77:16 88:7 92:10
affidavits 24:4,17,20,2 2 25:19
26:8 79:14,15 88:12,18
affiliate 35:10 87:11
affiliates 25:2
affirmative 87:24
affirmed 47:20
afford 76:10
after 7:2,13 8:6 18:15 22:13
34:16 62:8 71:20 82:9
afternoon 13:4 37:10 55:24
57:11
again 12:15 47:15 50:3 79:25
against 14:6,15,16,1 7 19:24 20:1
20:17 23:18 35:20 65:10 72:5
age 53:2
agency 3:14 25:1 74:21
agents 25:2 53:16

ago 20:12 52:6,9 59:7 76:17
80:19
agree 18:11 28:12 40:17,18
42:12 55:19 56:19 57:24 69:5
agreed 36:15
agreement 22:15,16 64:5 65:1
ahead 13:3 21:10 22:2 44:6
51:14 57:5,15
Akerman 4:2
al 1:3,5,8,9,12,13,16,17,1 9 3:6
3:14 4:1
alarm 91:1,8,14 93:10,10,12
Alfred 1:9 2:16 6:5
alike 80:17
allegations 22:23 47:23 48:18
75:22 86:8,10,11 87:17
allege 69:7 86:13 87:14,18,22
alleged 36:16 48:5 53:15 71:23
76:20 87:4,6,7,9,12,13,17
allegedly 53:17
alleges 50:2
alleging 14:13
allow 32:3 88:22,23 92:4
allowed 84:17 88:13,18,19,21
almost 20:8 37:20 60:18 67:10
70:8
alone 90:20
already 10:3 13:13 18:6 19:9
20:9,13,1 3 55:14 56:1 63:4,21
65:8 74:2 75:6 91:21
although 50:19
Altonaga 13:8,18 50:9 68:3
Altonaga's 74:4
always 38:24 42:23 85:16
Amanda 3:1 12:8 43:17 44:19
ambitious 94:1
Amended 67:23 93:5
amendment 92:4
America 1:5 2:15 6:4,14 8:12
10:1 15:18,21,2 5 16:2 17:23
18:8 20:1,11,1 2 26:21,22
27:25 35:20 52:7 53:15 70:4
79:5 86:4 92:1
American 6:6,8,9,11,19,20
20:24 23:7,9 24:15 25:5,7,24
25:25 39:11 92:9,14
America's 52:25
among 90:20
amount 41:10 55:2 75:12
analysis 24:10
announce 6:12
another 33:6 36:19 62:4 65:16
77:2 79:10 89:11
answer 11:11 21:7 28:18 29:8
31:8 32:1 59:14 83:18
answered 7:17
answers 6:23
antidiscrimination 75:17
anti-tie-in 35:24
Anybody 85:12
anybody's 84:23
anymore 54:18
anyplace 58:2
anything 10:22 17:9 38:21 41:6
51:19 52:19,21 61:22 72:7
73:17,2 1 76:7 81:2,19 85:12
92:17
anyway 43:11 54:20 74:12 85:7
91:21
apologize 10:14 37:15 90:25
apologizes 79:24 80:3
apparently 88:7 91:13
appeal 47:17,20
Appeals 23:15
appear 10:2
appearances 2:1 6:12
application 74:13,14 75:9,24
76:2
applies 8:24 9:18 74:19,20 75:18

apply 26:1 30:21
applying 47:8
approach 20:16 76:9
appropriate 42:14 55:16 58:17
70:16 71:25 87:20 90:9
approval 13:16 65:3
approve 66:17
approved 51:1
April 60:2,3,14
area 72:6
areas 70:18
argue 25:19 37:23
arguing 50:24 65:15 84:25
argument 1:23 8:6 11:7 13:25
14:5 16:3 17:19 21:19 31:3,5
31:16 32:13 51:5 66:15 73:24
78:25 82:14 83:3,5 85:3 86:16
86:24 87:16,21 88:3 90:3
arguments 7:15 25:18,20 38:18
85:4 92:10,11,23
Arkansas 18:24 27:17 31:10,10
around 16:14,15 18:18 19:15
20:6 51:25 67:6,14 69:1 81:4
83:12 85:18 93:2
arrangements 53:14,15
Article 26:18
articulated 42:15
ASIC 22:5,11,22 24:15
asked 7:16 18:4 22:8,9 56:10
59:3 61:7 64:11 65:24 67:2
79:22 83:16,18 89:19
asking 37:19 38:3 67:7 78:6
80:25 84:24
aspects 14:3
assert 55:8 76:16
assets 15:1,2,5 45:21 47:9,24
48:2 87:18
assume 48:2
assumed 45:15 48:7
assumes 48:5
assuming 30:24 72:23
Assurant 3:5 6:6,7,9,11,19,20
20:1,23,24 21:7 22:5,11,13,16
22:16,16,16,1 7 23:6,9,24
24:13,23 25:2,11,15,23 26:15
26:17,19 39:11 80:20 88:3
92:8,14
Assurant's 24:10,14
Atlanta 4:7
attached 34:12 49:24 52:25
attachments 35:3
attack 26:12 49:16
attacking 87:25
attended 68:18
attention 10:20 35:18
attorneys 71:15
August 62:2
authority 75:9
automatically 7:10
avenue 2:12,24 3:10 4:2,11
58:17 94:18
aviation 77:18
avoid 48:17 56:24
award 75:12
away 79:12 83:9,10 84:25

**B**

B 3:22
BAC 52:7
back 23:16 28:23 31:5 32:18
33:9 41:3,14 56:7 67:23
bad 34:10 35:7 62:8 91:10
badly 38:12
Balboa 3:1 6:4,16 8:12 12:7,9,23
14:2,18,20,21,2 3 15:3,8 20:2
44:20,23 47:9,24 48:14,20,21
48:23 49:9 50:1,3,5 51:7 89:2
Balboa's 15:1

apply 26:1 30:21
Ballard 4:6
bank 1:5,8,11,15 2:15 3:18,22
6:4,8,14 7:4,6,22 8:12 9:24
10:1 15:18,21,2 5 16:2 17:23
18:8 19:24 20:1,1,11,12,17
26:21,21 27:25 29:16 30:21
33:1 35:20,24 36:5,6,7,10,16
36:17,18 52:7,2 5 53:15 55:22
55:23 57:12 58:20 79:4 81:23
84:3 86:3,3,8 87:6,7,11,12,14
91:17,25
Bankers 25:25
banks 19:25 24:1,24 80:20 81:23
84:6,7,17 87:8,24
bar 13:23
bare-bone 47:22
barred 12:25
based 13:20 21:8 28:11 30:9,14
31:2 33:23 40:24 49:3 50:20
74:25
basic 28:24 36:15
basically 13:25 28:18 70:1
basis 35:13 70:17 86:17
bat 60:7
Beach 3:24 4:3 53:7 54:17 63:14
Beals 15:21
beat 72:13
becomes 28:8
beef 93:4
before 1:24 6:12 10:13,22 13:8
16:17 34:4 40:4 59:3,5 68:3
70:22 78:15 88:10,24 89:15
90:3 91:12
begin 50:9
bchalf 8:14 9:24,25 12:7,9 17:16
23:3,6,8 36:6 37:11 43:17
58:21 59:14
behave 90:12
being 15:24 25:1,18 32:17 41:4
44:23 74:14 77:3 79:24
belabor 32:10
belief 29:22,24
believe 20:15 32:17 34:14 40:1,5
42:10,11 43:2 51:3 53:20
59:13 79:12,16 82:23 83:11
84:17 85:1 87:4 88:3,6 89:6
bell 91:6
bench 21:14 90:4
bend 28:20
best 21:4,8,12
bet 79:8
better 78:24 80:19 93:1
between 22:5,11 26:16 53:14,15
64:21
BIC 43:18,20
big 31:21 85:20 92:16 93:3
biggest 76:18,19 79:20 81:2
Biscayne 3:15,19
bit 20:22 54:12 92:2,12
blame 71:9
blowing 84:23
blunt 72:16
Bockius 3:14
borne 89:5
borrower 16:10 35:14,15 36:5,6
36:16
borrowers 33:23 34:4 35:6
75:13
Boston 2:21
both 12:11,12 40:19 44:10 51:22
53:6,10,19,2 1 63:15 87:14
bottom 75:23
bought 14:23
Boulevard 2:8 3:15,19,23
bracketed 34:5
brag 54:3
breached 33:24
breaches 36:5,16

Brian 3:18 55:24
Brickell 3:10
brief 39:3 45:20 46:13,22,24
  56:6 57:4 63:19 74:6 84:19
briefed 15:12
briefing 39:2
briefs 36:3
bright 76:24
bring 17:15 31:18 32:6 35:17
bringing 10:20 17:21 50:16 55:6
brings 70:5
Brochin 3:14 58:22,23,2 5 59:9
  59:13,20 61:7,23,25 62:8,9,12
  62:15,18 63:3,16 64:2,7,11,12
  64:14,16,18,2 3 66:11,24 67:2
  67:9,11,13,17,19,2 1 68:9
  69:12,21,25 70:5,12 72:8,11
  72:15,17,22 73:1,7,11,16,18
  78:2 93:15 94:8
broke 67:25
brought 13:8 16:1 19:20 32:16
  55:5 67:5 68:13 84:2
Broward 54:17
Buckley 3:2
building 2:16 93:12
bump 81:2
burden 56:24 73:15
burdensome 63:20 65:19
Burt 3:6,10 23:8,8,11,17,21,23
  24:4,8,12,19,2 2 25:7 26:5,9
  26:12 34:17,24 73:23 74:3,6
  74:10 75:5,7 80:18 91:6
Bushman 2:11,12
business 36:11,12
button 28:20,21

## C

C 2:19 3:18 94:12,12
calendar 62:2
California 46:19 47:2 65:14
  67:3 68:6,20 69:6,18 71:6,15
  73:12 76:21 77:8 78:3 83:14
  89:18
call 6:2,24 62:2 82:19 84:21
called 18:17 19:12 34:7 38:19
  43:22 59:10
calls 26:16 63:3 75:23
came 63:25 67:23 85:25
careful 29:3 36:23 71:25
carefully 65:21 76:1,4
Carlton 3:22
Carolina 18:13,23 27:18
carriers 74:11
carve 63:2,5,7
case 1:2,6,9,13,17 6:9,24 7:5,8
  7:10,22 8:2,7 13:8,15,19,21
  13:22 14:10 15:17,20,22,23
  17:12 18:11 19:13,24 21:1,1,2
  21:2 23:2 24:9,18 27:25 28:14
  32:9 33:20 34:18,20,21 36:10
  37:4 38:8,9 39:11,20,23 40:2
  40:3,12,14 41:22 42:5,7 43:20
  45:20,22,24 46:1,6,7,16,17,19
  46:21 47:2,3,16,18,19 49:11
  50:9,10,13,13,18,1 9 55:2,6,15
  55:22 57:1 58:12 59:4,6,6,8
  60:2,7,11,15,1 6 62:3 66:1,12
  67:4,12 68:12,19,20 69:2,18
  70:1 71:11 73:11 74:4,5,8,8
  74:11,16,23 75:20,23 76:20
  77:11 78:12 79:1,8,20,21
  81:19,22 83:14 84:22 85:7
  87:2,3,3,4,19 88:19 91:16,17
  92:21 93:10,15,19,22
cases 6:2,3,22,24 7:2,11 13:22
  17:25 19:9,16,23,25 20:8,14
  20:16,2 5 23:10 25:1 27:18,19
  27:21,23,24 29:14,16,17 30:3
  30:9,14,23 31:6,6 32:10,17

33:12 35:19 39:12 40:15
  42:16 46:5 57:2 59:12 61:14
  63:15 68:2,8,25 71:1,2 75:8
  75:13 76:13,18,25 77:18 78:1
  79:8,12 80:16,23 82:9,24 83:7
  83:9 84:7 85:9 92:1
causal 26:16
causes 50:16 55:5,7
center 3:15 70:18
centers 70:20
Central 65:14
centralization 90:2
centralized 76:15
cert 20:5 50:21,23 75:4
certain 6:15,23 8:9 14:15,16
  29:4 66:14 68:25 83:8
certainly 23:21 33:8 39:24 60:20
  73:3 79:14
Certificate 5:4
certification 31:7 60:7,13 63:11
  70:16 72:20
certified 30:24 67:18,19 72:24
  72:25 73:2 89:13,15
certify 86:6 94:13
cetera 77:19,19 81:12
chairs 6:3
challenge 53:13,14
challenged 25:1
challenges 24:16 51:23 56:23
chance 44:5
changed 62:12
charges 51:24 53:14 55:17
Chase 1:11 3:13 6:6 7:6,22
  58:20,21 61:14 65:10 67:4
  72:17 91:17 93:15
CHERYL 1:3
CHIEF 1:24
child 79:23 80:1
Chris 37:18
Christopher 4:5 37:11
Chudasama 78:12
Churchill's 91:9
Circuit 36:2 45:22,2,5 46:6,7,16
  46:21 47:3,11,14,16,18,19
  74:16 86:18
cite 15:18
cited 44:24 45:20,23 46:9,22
  57:2 88:25
Citi 37:11
Citibank 1:19 6:10 7:3 37:5,9,9
  37:19 56:2
CitiMortgage 4:1 37:19
CityPlace 3:23
claim 14:17 28:11 31:10,11
  33:19,21 34:8 35:13 36:19,19
  66:25 74:14 86:3,3,17,25 87:5
  87:6,7,12,15
claimants 31:20 59:6 70:6,17
claims 12:24 14:11,23 16:17
  18:2,12 19:13 20:9,10,14
  22:19 23:18 27:17 31:18,19
  32:6,7 33:22 36:2 51:6 53:10
  53:12 58:25 59:1,2,1 1 63:2,6
  66:3 67:5 73:7 75:1,19,21,23
  86:2,6,7,8,9,9 91:25 93:16,16
clarification 93:14
clarified 75:4,5
clarify 50:7
Clasby 2:12
class 16:1 17:12,16,1 6 18:20
  19:18,19 20:5,19,2 0 30:16,24
  31:6,7,21,23 50:21,23 53:23
  60:6,13 61:3 63:11 67:16,17
  70:13,14,15 72:20,23,24
  73:13 75:4 81:13 89:12,12,13
  89:14,15,16,16
classes 30:17,24 31:5 70:13
classic 55:3
clear 17:25 33:2 66:9 74:16

75:16 87:12
cleared 35:21
clearly 86:11 87:6
clear-cut 42:4,7
clerk 10:17
client 58:14 60:24
clients 19:11 60:22,22,2 5 71:10
  71:11
CO 3:1
coast 89:23
Cohn 59:5 60:8 61:17 62:13,25
  64:19 81:20 94:4
Cohn's 65:4 91:17
Cole 74:16
colleague 49:8
colleagues 65:12
Colorado 15:14,16 16:3 17:24
  54:9
come 7:23 43:7 47:10 65:21
  81:20
comfortable 56:17
coming 34:10
commend 36:3
comment 68:17
comments 73:25 89:9
commercial 87:2
commission 30:1 35:10
commissions 25:1 28:11,14,16
  28:18 29:1,16,21,24,24 50:24
  50:25 53:16 87:10
Companies 20:25
company 6:5,6,8,9,11,6 8:13
  12:23 21:18 22:20,20,21
  23:25 25:3,5,7,12,23 33:2
  35:25 36:19 44:12,20,21,24
  48:15,15,23 49:9 50:1,2,3,5
  51:7 80:22 87:25 92:9,14
comparable 62:9
Complaint 15:7 19:2 28:13 33:3
  33:20 35:19 40:4 42:20,25
  49:25 50:2 56:24 59:1 67:14
  67:24 86:4 87:13 93:6
Complaints 25:8 31:2 63:8
complete 13:23
completely 25:9 74:12
complexity 70:5
complicated 41:23
comply 18:18 62:4
computer 41:12 64:9
computers 46:15
conceded 50:23
concern 42:15 73:18
concerned 68:25
concerning 88:2
concluded 94:10
conduct 26:17 74:18 87:2
Conference 40:10
confirm 63:24
conflicts 68:11
conjunction 51:4
connection 26:16
consent 26:1
consequence 89:21 90:2
consider 26:3,5,7,8,1 1 49:17
  60:21 88:11
consistent 32:14,16 86:17
consolidate 19:17 80:21
consolidated 67:13,14,24,25
conspiracy 86:12
contain 86:22
contains 59:1
contents 5:1 56:11
continuation 48:13
contract 24:1,2,4 30:20 32:23
  36:17
contracts 30:20 33:24
contrary 22:17 24:20
control 22:21,21 71:19 74:18
Convention 77:19

Cooke 68:4
coordinate 18:16,19 19:9 32:14
  90:8,17,18
coordinating 90:22
copy 10:5,16
Coral 2:9
cornered 41:25
corporate 63:19 78:15 82:12
corporation 25:13
corporations 25:13
correct 7:7 12:4 19:6 24:19
  26:12 39:14,16 52:5,10 57:18
  71:1 85:5 89:14
cost 14:3 35:9
counsel 7:14 25:22 50:23 71:1
  76:9 90:7
count 35:23,24 36:22 72:4
counterclaim 55:8
counterclaims 55:11
country 16:14,16 17:23 18:18,21
  19:15 20:7 67:6,1,5 69:1 77:23
  79:17 81:4 83:13
counts 33:1,1 35:20 36:24 74:14
County 54:17
couple 20:17 41:1 58:1,5 63:23
  64:1 78:9 85:25 88:2
course 8:8 21:19 25:20,22 33:11
  56:19 67:17 75:12,15 77:10
court 1:1 4:10 6:2 8:16,18,21,25
  9:2,5,9,11,14,21,2 4 10:3,4,7
  10:10,15,18,2 1 11:1,3,8,9,12
  11:19,22,24 12:3,6,10,12,14
  12:17 13:3,10,13,2 5 14:7,10
  14:13,18,2 5 15:5,10,14,19,20
  15:24 16:3,5,6,7,12,15,20,21
  16:23 17:1,6,11,13,18,19 18:1
  18:2,9,22 19:1,4,7,16 20:21
  21:6,10,13,17 22:2,7 23:3,6
  23:10,12,15,19,2 2 24:6,13,11
  24:17,20 25:5,16 26:3,7,10,18
  26:20,25 27:1,8,11,13,23 28:3
  28:6,9,16,19,23 29:2,6,10,12
  29:18,21 30:8,12,23 31:1,15
  31:20 32:3,8,22 33:5,10,13,16
  34:2,7,9,11,11,16,2 0 35:2,6
  35:12 36:3,19 37:2,4,8,14,17
  37:20,24,2 5 38:5,10,12,16,19
  38:23,25 39:13,15,19,22 40:2
  40:9,13 41:1,6,11,18,24
  42:12,19,22 43:4,9,16,22,24
  44:1,6,10,14,17,17,2 5 45:2,4
  45:8,12,17,22,2 5 46:4,7,10,14
  46:17,19,21,2 3 47:1,2,6,10,13
  47:16,21,2 5 48:7,20 49:5,12
  49:17,19 50:1 51:9,11,14,17
  51:19,25 52:1,4,6,9,11,14,19
  52:21 53:2,5,8,11,12,18,22
  54:2,3,8,11,13,2 4 55:4,13,14
  55:15,18,21 56:1,9,13,16 57:1
  57:5,7,9,13,15,15,17,17,20
  58:1,5,8,10,13,18,20,2 3 59:8
  59:11,13,14 60:3,5,16,17,24
  61:1,3,5,9,16,18,21,2 4 62:7
  62:10,14,16,19,22,2 4 63:5,13
  63:21 64:1,4,4,6,8,13,15,17
  64:19,19,22,2 4 65:1,2,6,11,20
  66:1,7,13,18,2 3 67:1,8,10,12
  67:16,18,20 68:7,10,20,22
  69:10,11,16,2 4 70:2,8,11,22
  70:24 71:8,13,21 72:3,10,12
  72:13,16,19,2 3 73:5,8,10,14
  73:17,20 74:1,2,4,8 75:3,6,11
  76:1,6 77:4,6 78:7,9,12,20
  79:25 80:3,4,7,12 81:2,7,22,25
  82:1,7 83:21 84:1,4,9,12
  85:12,15,20,23 86:6 87:19
  89:11,11,13,18,22,2 4 90:3,11
  90:14,23 91:1,4,7 93:18,21,24
  94:7,17

Courthouse 4:10 94:17
courtroom 1:3 35:20 76:12 94:9
courts 16:14 18:21 19:14,15
  20:6 47:8
Court's 26:13 36:21 38:11 40:24
  41:6 42:18 74:21
create 50:15
criteria 48:16
culture 72:6
customers 17:17
cut 62:1

**D**

D 4:10 94:17
Dade 54:17
damage 82:13
damages 75:12,12 76:20 79:4,20
  82:20
danger 90:1
date 41:16 65:3 78:21 81:22
  83:9 84:15,20 94:16
David 3:22 57:11
day 20:15 60:15 71:17 78:15
days 60:14 64:25,25 79:3 82:10
  84:16
DC 2:24 3:4,7
de 2:8 48:11
deadline 64:25
deadlines 40:11
deal 7:11,22 34:10 35:7,22 61:7
  66:11 77:7 81:11,12
deals 6:24
deceive 35:16
December 41:19
Deceptive 55:9
decide 21:6,10,20 55:4,16 75:11
decided 17:15,23 31:6 56:25
  70:2 71:11 76:3
decides 61:11
decision 34:6,7 50:10,21 51:3
  74:21
decisions 35:25 36:3 50:12
declaration 53:1
declarations 24:4
deem 81:5
defend 32:7,7
defendant 1:8,12 7:1,14 19:21
  37:4 39:13 49:10 73:20 84:7
  87:1
defendants 1:5,16,20 6:21,25
  7:20 8:12 12:9 14:15 24:7
  42:10 43:18 55:14,25 56:20
  60:9,12,14 76:23 79:2 80:9
  81:17 85:25 90:20 92:19
defendant's 57:24
defending 27:13
defense 88:12,17 92:23
defenses 87:24
defer 9:15
deference 54:13
define 30:16
definitely 16:4
defraud 35:16 86:20,23
delays 18:4
demand 20:19
denied 13:23 31:7 62:14 67:22
  77:24 83:1 85:2
deny 50:19 79:6,16 91:23,25
  92:5
denying 50:21 75:3 92:8
depending 70:3
depends 71:17,13 12:15 42:21
depose 22:9
deposition 63:20 78:15,18 82:13
  88:22
depositions 66:10
DEPUTY 94:9
described 34:9 35:6
describes 25:22

Description 5:11
deserve 36:23
designed 25:13
desire 31:18
detailed 25:17
determinations 74:22
determining 74:20 88:9
developed 89:5
DFS 25:21
difference 22:5 30:1 56:5 90:16
differences 28:9,24 30:20,21
different 14:7,11,14,21,2 3 18:14
  18:21 19:14,15 20:6,6 25:9
  27:10,14,2,2 28:6 29:14,15
  30:4,4,7,19,23,2 3 31:2 42:19
  43:1,8 55:5 63:6,7 72:6 75:16
  78:13 80:6,20
differential 54:10
dinner 12:18
direct 22:20,21,2 4 83:18
direction 43:8
directly 15:8,17
disagree 24:6 38:21 40:11 44:3
discovery 7:19 8:10 20:4,1 1 22:8
  29:8,10,12 34:16 39:8 41:22
  41:24 42:3,17,19,23,24,25
  43:7,9 52:17 53:16,18,19 56:4
  56:21,22,24 60:11 62:1 63:19
  63:24 65:9,24 66:2,10,14,21
  66:21 77:17,20 78:8 79:3,4
  81:10,14,1 8 82:10,17,18,25
  83:6 84:16,18,21 85:8 88:23
  89:5 91:20 92:2,12,15,16,17
  92:19 93:25
discretion 41:16 81:1
discussed 81:9
discussion 43:9 57:4
discussions 43:7
disk 79:6
dismiss 7:19 11:15 13:18,20,24
  21:21 23:14,2,2 24:11 32:19
  32:20 33:6,14 34:11,13,15,19
  34:23 35:1,3 36:19 38:17 39:5
  39:15 40:25 42:18 45:4 49:13
  50:20 56:3,5,22,2 5 60:15
  61:10 67:22 76:3 77:14,16,24
  78:22 79:14,17 82:14 84:19
  84:25 85:2 87:23 88:1 89:8
  91:23 92:4,8
dismissal 74:25
dismissed 25:15 36:2 48:21 68:4
  88:4
dismissing 34:8 42:5
disposed 87:23 89:8
dispute 35:5
disputed 24:23 45:1,2,3,5 89:6,7
  89:7
disrespect 79:22
distinguished 80:18
district 1:1,1,24 15:17,22 24:9
  31:7,12,19 32:6 34:7 45:23
  46:5,17,18 47:2 59:4 61:19
  65:13,13,14,1 4 67:3 68:3,6,14
  69:7 70:23 71:3 81:8 87:19
  94:3
diverse 70:3,18
divide 9:3 80:15
divided 8:17,20
dividing 30:9
division 1:2 18:1
dockets 52:24
doctrine 12:25 13:6,17,21,2 3
  15:15,16 16:3 17:24 21:19
  50:8,20,2 2 51:2,5 54:9 73:24
  74:5,8,13,15,19,2 0 75:9,17,18
  75:25 76:2 92:3
documents 20:13 35:5 54:22
  66:9
doing 7:8 11:3 15:9 20:5 35:15

41:19 60:22 66:6 69:2 71:21
  90:21,22
done 8:6 17:8,9 20:5,18 24:17,21
  39:2 53:18 56:14 60:11 71:1
  78:9,10,19 83:19 89:11 90:10
  92:6
double-teamed 21:11,14
doubt 47:20,21
down 28:20 37:23 42:16,25 68:1
  84:19 85:17 86:4,5,7 91:12
dozen 27:9
drink 90:15
drive 90:14,15
drop 69:5
due 46:24 55:2 65:19,20,22
Dupont 2:16
during 71:17 85:25

**E**

E 2:16 4:1 94:12,12
each 8:2 11:24 14:17 19:21,23
  19:24 36:22 52:24
ear 84:23
earlier 10:2,16 53:3 76:3
early 42:2
earned 87:11
easier 35:22 37:24 86:6
East 3:7
Eastern 65:13
easy 28:17
Edenfield 24:8 25:10,20 75:20
effect 83:1
efficient 35:22 80:16
effort 48:17
either 31:2 92:22 93:4
elements 36:25
elevators 91:13
Eleventh 45:22,2,5 46:6,7,15,21
  47:3,10,14,16,18,1 9 86:18
email 56:11
end 7:20 8:9 39:10,18 65:6 66:19
  77:2
Enfante 45:24
enforced 78:7
engage 25:3
Englander 2:19 10:1,25 11:2,6
  11:11,13 26:23,23 27:2,2,10
  27:12,15,2 5 28:5,7,10,17,22
  28:24 29:3,7,11,13,19,22
  30:11,13,2 5 31:4,17 32:1,5,9
  32:25 33:8,11,14,17 34:3,14
  34:18,21 35:1,4 37:3,6 38:18
  42:15 78:3
Englander's 12:4
enough 9:9 15:2,3 45:19,21
  47:24 48:2 56:15 81:17
enriched 22:23
enrichment 22:19
entered 61:25 62:3 74:24
enterprise 86:12
entirely 34:22 74:25
entity 48:14
error 7:7
Esau 3:22 57:11,11,14,16,19,23
  58:4,7,9,11,16,19
especially 8:9 20:11
ESQ 2:1,2,2,6,7,11,11,15,19,23
  3:1,2,6,9,14,18,2 2 4:1,5
essential 85:5
essentially 40:23 47:23
et 1:3,5,8,9,12,13,16,1 7 1:9 3:6
  3:14 4:1 77:19,19 81:12
even 17:8 20:19 31:21 40:4,18
  41:12 43:4 53:23 63:13 83:20
  87:24 89:15 90:19 93:12
event 56:17
eventually 13:9
ever 39:22 80:19

every 8:24 36:22 39:13 72:6
  76:24 77:12 78:12 79:17 87:1
everybody 59:21,22 71:19
everyone 28:12 70:12,14
everything 9:10,18,2 2 15:3,6
  17:8 45:18 56:1 64:17 71:18
  87:13 92:21 93:18
evidence 5:10 22:17 23:1
exact 16:2 19:13,13,1 4 27:18
  72:17
exactly 14:17 15:23 16:21 19:2
  25:17 30:25 34:8 35:4 80:17
  82:12
example 28:7 33:25 34:3 55:3
  73:1
examples 39:25
except 20:9 54:20
exceptions 48:1 79:18 87:22
Exchange 2:20
excluded 23:2
excuse 45:14 77:5,6 87:8
executed 64:20
exhibit 34:12
Exhibits 5:9,10
exists 48:14,15
expansive 42:23
expect 41:22
expense 56:24
explain 23:24
explains 25:17
explicitly 35:11,14
expressly 26:1 45:14,15 48:4
extension 27:4
extensive 16:1 60:15
extent 35:19 89:2
eyes 31:22
E-s-a-u 57:13

**F**

F 94:12
faced 21:24
facing 72:17
fact 6:20 16:5 20:17 22:6 49:24
  50:22 55:8 56:7 60:11 71:17
  71:20 74:24 86:18 89:4,5
facto 48:11
facts 14:25 15:23 24:23 30:15,16
  36:16
factual 26:12 49:16 74:14 87:23
factually 87:14
fair 9:9 18:5 77:8 88:12,17
fairly 41:23
fairness 84:15
faith 42:23 43:7,9 46:14 79:6,7
  81:19
false 86:19,22
familiar 60:1
far 18:11 22:2,9 41:13 56:19
  59:12 80:5 82:14 92:14,15
Fargo 1:15 3:22 6:7 7:5 57:9,12
  57:12 79:11
FARROKH 3:9
fashion 90:8
fast 40:20 54:3 60:19 65:16
  70:24,25
faster 61:24
Fax 2:5,10,14,18,2,2 3:8,12,17,21
  3:25 4:4,8
fear 69:3
Federal 30:5 69:6 72:1 86:2,6
FEDERICO 1:24
fee 11:20
feel 55:11 91:9
fees 71:15
fellows 14:19
Ferguson 4:10 94:17
few 21:23 50:7 79:17
Fields 3:22
fighting 6:3 28:3

**fights** 90:19
**file** 10:7,17 20:4 56:8 64:4,14
  65:1 71:11 72:4 77:16 79:13
  79:15 81:1
**filed** 10:2,22 11:20 12:1,5,25
  13:6,15,17,20,2 2 18:3,12
  21:19 27:18 32:11,15 38:5,16
  39:3,10 40:4 49:3 50:7,10,13
  50:13,17,20,2 2 51:1,5 52:3,7
  53:3,12 55:15 56:6,18 59:6
  60:2,6,9,14,1 6 64:4,14 67:4,9
  67:11,22,23,2 4 68:2,3 70:2
  71:11 73:24 74:4,8,13,19,20
  75:18,2 5 78:17 79:21 83:20
  83:24 92:3
**filing** 56:6
**financial** 3:15 22:14
**find** 18:7 29:6 31:17,20,24 44:2
  46:6,2 5 47:2,3,5 64:9 81:14
  81:17 84:10
**finding** 7:21 75:11 76:13
**fine** 58:10 77:15 83:6
**finish** 20:3
**firm** 54:1 59:10
**firms** 18:17 19:12
**first** 6:14,24 9:19 12:20 16:3
  17:19 21:23 22:13 26:24
  27:16 44:20 45:25 47:13 48:4
  50:9 51:4,22 55:15 70:2 74:24
  86:2
**first-filed** 69:25
**five** 6:2,3 7:11 8:2 9:1,2,3,4
  19:24,25 20:16 27:7 30:9
  31:22 42:3 48:24 49:10 50:5
  63:3 65:9,15 75:16 80:16
  81:23 82:17 84:6 85:14
**Fladell** 1:13 6:7 7:4 21:2
**Flagler** 2:4,16
**flood** 29:23,25 30:3,5 48:25
  63:11
**Floor** 3:19 4:3
**Florida** 1:1,4 2:4,9,13,17 3:11
  3:16,20,24 4:3,11 19:1,5,10
  19:11 20:18 28:1 31:12,19
  32:6 45:23 46:5,19 49:3 55:9
  58:2,5,7,7 59:5,6 61:20 68:2,3
  68:5,14 69:7 70:7,15,19,23
  71:3 76:19 77:12 78:2 79:19
  81:3,21 94:3,18
**focus** 74:19
**focused** 20:16
**follow** 78:12
**following** 6:1 88:9
**forced** 34:5 35:8 40:17 77:24
  87:8,9
**foreclosure** 15:25 16:2,7,10,18
  17:4,6,18,24 18:4 51:7 52:2
  52:24 53:20,23 54:6,6 55:1,7
  55:12
**foreclosures** 54:16
**foregoing** 94:13
**forgot** 73:21 80:3
**forgotten** 44:1,6
**form** 33:23,25 34:4 86:17 90:9
**Fort** 63:14,14,16 89:19
**forward** 77:12 83:12,25 84:16
  85:2 93:17
**found** 16:5 24:12 46:10,16,16,18
  46:19,19,23 47:1,2
**founders** 59:23
**four** 8:1 19:15,25 27:10,13 28:25
  42:3 48:1 53:22 54:14,25
  80:20 82:17 93:3
**Fourth** 36:1
**four-factor** 47:7
**FPR** 4:9 94:16
**Francisco** 72:14
**Frank** 3:6 23:8 34:23
**frankly** 25:25

**fraud** 35:13
**fraudulent** 48:17
**friend** 78:2,8
**friends** 40:19 65:12
**from** 7:1 13:14 20:15 22:4 23:2
  25:14 29:6 35:16 36:1,8 38:11
  38:15 42:17,17 51:3,6 55:6,10
  66:22 67:5,14 69:10 70:6,7,17
  71:17 73:12 80:9 86:3 88:18
  88:21,24 89:11,17 93:7
**front** 32:11 79:9 82:24
**Frontino** 3:18 55:24,25 56:2,10
  56:14,17 57:2,6,8
**full** 24:9 46:14
**fundamental** 28:11,15 31:9
  33:21
**fundamentally** 27:16,21 29:15
  30:3
**further** 43:14 48:10 84:19

---

**G**
**Gables** 2:9
**Gallagher** 14:1 16:8,17 17:13
  18:2 28:1 50:4 51:16 52:2
  53:10 55:8 83:19 92:25
**gears** 20:21
**general** 7:18 32:20 39:8 48:1
**gentleman** 22:9
**geographically** 70:3
**Georgia** 4:7 24:9 77:15
**gets** 66:1 76:21 87:1
**getting** 59:23 65:21 82:19 85:13
**Gilda** 4:9 85:16 94:16
**gist** 83:4
**give** 10:11 19:7 28:7,9 66:15
  79:15 82:15 84:18
**given** 22:9 54:24
**giving** 22:4
**glad** 54:18
**go** 7:15 13:3 22:2 26:24,2 5 32:18
  35:8 36:17,21 41:3,14 44:6
  46:4 51:14 57:5,15 69:4 71:3
  73:2 77:12 79:12 80:15 81:4
  82:16 83:9,10,25 84:15 85:2
  93:16
**goes** 9:10 22:19 31:12 36:8
  47:17 86:14
**going** 6:13,14,15,15,1 8 7:24 8:22
  8:23 9:15,21,22 10:7,23 11:5
  11:8,10,14 12:10,25 18:5 20:4
  20:8 21:6,15 22:4 23:17 26:21
  27:3,4 28:23 30:16,17,18
  31:21 36:14 37:21,21 40:14
  40:21 42:1,7 44:9,11 54:4,11
  54:12,14 55:22 56:9 57:10
  59:14 61:5,21 63:3,11,23
  66:15 67:8 68:10,12,15,17,23
  69:15,18 70:1,16 71:24 72:9
  72:11 73:2 77:1 81:6,10 82:19
  82:21 84:19,20 85:9,20 88:12
  88:11,22,23 90:18 91:1,7,11
  91:15,17,18,23,2 5 92:16,16,24
  92:25 93:6,18 94:1
**gone** 29:8 61:15 68:18
**Gonzales** 88:25
**good** 13:4 34:6 37:10 43:7,9
  55:24 57:11 66:16 77:7 78:2
  79:6,7 90:1 92:11,23
**Goodness** 65:11
**Goodwin** 2:19,23
**governed** 30:5
**governing** 56:22
**gphofficialreporter@gmail.com**
  4:12 94:19
**grab** 59:16
**graduating** 79:23 80:1
**grant** 11:22 38:7 45:4 47:17
  92:4,24,2 5 93:6
**granted** 10:18 12:5 38:6,7 67:22

82:1
**granting** 33:5
**GRAVANTE** 2:3
**gravity** 70:19
**great** 54:4 81:7,11
**group** 3:1 28:10 37:11 63:11,12
  63:12,13 68:16 69:6
**grouping** 68:13
**guarantee** 61:21
**guess** 36:12 59:23
**guessing** 83:23
**guilty** 8:4
**Gustafson** 34:17,18,21
**Guy** 4:1 37:10,16
**guys** 70:11

---

**H**
**hac** 10:2 38:4 69:8
**half** 27:8
**Hall** 1:3 6:4,14 8:11 14:1 18:23
  31:9 38:8 43:20 49:11,24
**Halliday** 3:2 12:8 44:9,11 48:22
  49:6,7,14,20 50:12 51:10
**handle** 9:7
**handled** 81:13
**hanging** 93:2
**happen** 23:17 40:21 83:11
**happened** 47:4 67:21
**happening** 16:9 18:20 54:20
  93:7
**happens** 54:13 83:7
**happy** 27:1 66:16
**hard** 72:13
**Harke** 2:11,12
**hate** 41:19 72:16
**having** 31:2 33:24
**hazard** 28:18,24,2 5 29:5,16,16
  30:3,6 49:1,3 59:1 63:6,12
  66:21,23,24 67:4,25 68:1,3
  70:18,19 71:6 76:19 81:22
  93:16
**hazards** 73:3
**hear** 7:1 37:14,17 65:14 73:23
  85:3,3 93:6
**heard** 37:17 38:18 39:9 55:18
  75:6 77:13,13 86:3
**hearing** 13:15 18:16 19:21,22
  22:13 39:10,18 50:24 65:9
  71:12 76:9,17 79:24 80:2
  88:24 94:10
**hearings** 78:22
**held** 6:1 93:11
**help** 44:17 90:18
**helpful** 44:2
**her** 11:1 31:10,10 44:17 49:25
  74:8
**Herrick** 1:9 6:5 7:5,8,22 21:2
  58:20,25 91:16,16
**highlighted** 34:6
**him** 13:10 24:13 37:17,23 69:9
  75:1 81:9
**history** 32:10
**hold** 40:20 64:13 69:16 70:11,11
  92:18
**holding** 21:18 25:3,12,23 33:2
  35:25 36:18 86:3,8 87:6,7,12
  87:14
**home** 19:23 52:7 90:15
**Honor** 8:15,23 9:18,25 10:14,19
  10:25 11:11,14,18,21,23 12:5
  12:11 13:2,4 14:5,9,14 15:4
  15:12 16:10,19,24 17:5,10
  18:7,15,25 19:6,8 21:4,9,25
  22:12,25 23:8,17,23 24:5,10
  25:16 26:1,5,23 27:2,4,5,10
  27:12,15,19 28:2,8,17 29:7,13
  29:22 30:2,11,25 31:4,19 32:1
  32:7,18,19 33:2,4,11,19,25
  34:3 35:4,11,17,23 36:20 37:3

37:13 38:3,7,13,15 39:1,9,21
  40:1,6 41:14,21 42:9,21 43:12
  43:17 44:4,22 45:5,21 46:2,8,11
  46:18 47:5,12,15,2 0 49:7,14
  51:13,15 52:23,24 54:5 55:1
  55:24 57:11,23 58:22 60:1
  61:13 62:20,23 63:11,16,16,17
  64:12 65:8,18 66:5,8 70:21
  73:18,23 74:6,10 75:8 76:18
  77:5,11,11,22,2 5 78:1,5,20,23
  79:10 80:8 81:1 82:5,23 83:6
  83:12 84:2,14,23 85:1,5,13,24
  87:16,21 88:10 89:9,17,25
  90:13,21 91:5 93:14
**Honorable** 1:24 88:8,25
**hope** 52:14 76:10
**hopefully** 8:3 91:13
**horses** 92:18
**hours** 84:25
**House** 59:22
**HOWARD** 2:11
**HSBC** 1:8 3:18 6:8 7:4 55:22,25
**hundreds** 17:22
**hurriedly** 7:8
**hurt** 28:23
**hypothetical** 82:21

---

**I**
**idea** 78:24
**identical** 53:11 75:21
**Identification** 5:10
**identified** 49:25 59:5
**identifying** 35:14
**III** 2:3 26:18
**Illinois** 49:25 65:14
**imagine** 72:2
**imminent** 35:7
**impact** 74:21
**implicated** 50:22 51:2
**impliedly** 45:15 48:4,7
**important** 84:24
**importantly** 24:15 52:17 55:2
**impractical** 63:2
**improper** 53:17
**improvident** 82:4 85:6
**improvidently** 82:1
**impulsive** 85:6
**inadvertent** 85:6
**Inc** 3:5,14 4:1 6:11,20 23:9,25
  24:13 25:15 26:15,18,19
**inception** 68:19,21
**incidents** 72:1
**include** 21:1
**inconsistency** 78:4
**incorrect** 64:2 73:25
**Indeed** 68:2
**independent** 48:22
**indicated** 39:17
**indicates** 36:25 49:23
**indirect** 25:3,9
**individual** 18:20 30:15,17 31:11
  32:15 49:21
**individuals** 19:4
**inform** 74:1
**information** 18:6 49:20 82:13
  86:19,22 88:11,16,20
**initially** 32:15 50:19
**injuries** 15:11 26:17
**instances** 19:15 39:25
**instead** 20:5 30:8 73:5
**institution** 35:10
**insurance** 3:1,1,13 6:4,5,6,8,9
  6:11,16,20,20 8:13,13 12:23
  15:9 20:25 23:25,25 24:16,23
  24:25 25:4,5,7 28:24,25 29:5
  29:23 30:5,6,10 33:24 34:5
  35:8 36:1,6,8,11,12,13,14,17
  36:18 44:12,20,20,23 45:11
  48:14,23,25,2 5 49:1,3,9,23

50:1,1,3,5,6 51:7,8,23 53:13
53:16 55:17 57:12 75:10
77:25 80:22 87:8,10,25 88:5
92:9,14
insure 12:23 48:24
insurer 14:20 19:25 20:17 48:23
49:21 50:1,3 88:4
insurers 53:15
intent 9:19 35:15 59:22
intention 61:6
intentionally 42:1
interest 76:18 79:20 81:3
interested 7:21
interests 80:4
intermediary 22:21
interpreter 8:4
intervention 50:16
invited 71:16
involve 8:7 50:13 51:22 75:1,15
involved 15:18 50:14 53:24 54:1
81:15
involvement 15:11
involves 90:19
involving 74:11 87:2
Ira 1:13 6:7
Ironically 90:10
irony 90:21
issue 13:6,7,9,17 21:23,25 23:25
27:5 31:1 32:23 37:7 40:8
48:25,25 49:1,2,2,3,15 50:10
50:25 51:24 55:3 75:1,24 76:4
80:6 84:14,14,15 88:6,10
89:10 91:11 92:2,6,13 93:9,25
issued 7:9 15:8 81:25
issues 7:11,18 8:9 17:1,2 28:4,5
30:7 32:20,20 33:15 38:15
39:7 42:4 43:11 50:15 53:11
54:6 55:16 56:3 57:25 69:14
84:10 85:25 87:23 88:2 89:2,4
92:3,15
it'd 70:17

**J**

J 2:7,23 4:5
Javier 1:6 6:8
Jeez 47:21
Jefferson 3:6
Jersey 15:17,22
JHABVALA 3:9
Joel 59:9
John 2:3,19 10:1 26:23 27:2
join 40:19
joined 68:5
joining 55:10
Jorden 3:10
JP 1:11 6:5 7:5 58:20,21 59:25
67:4,25 91:16,18
Jr 4:10 94:17
judge 1:24 12:2 13:8,8,18,19,22
19:22 21:24 22:1,3 24:8 25:10
25:19 34:12 37:10 40:2,20
50:9,19 51:4 58:14 59:5 60:8
60:18 61:11,16,17 62:13,25
64:19 65:4,21 67:24 68:3,4
69:9 71:7 72:1 74:4,24 75:20
76:3,8,10,16 77:1,2,4,6,8,15
77:15 78:23 79:10,17 80:22
81:8,9,19 82:5 83:10 84:13
88:6,8,8,9 90:19 91:17 94:3
judges 19:23 20:6 35:2 54:18
65:23 69:6 77:23
judgment 21:20,23 23:1 52:21
60:20 92:7,22
judicial 50:16
July 91:18,20 92:5 93:19,20,24
June 65:2,7 66:18,19 67:9 92:3
jurisdiction 23:24 26:13,14,19
49:16 77:20,21
jurisdictions 48:13

jury 75:11
just 8:4,15,16 14:22 17:5 19:24
20:1 21:18,25 24:8 25:21
26:25 30:1,19 31:1,2 35:18
36:15 39:19 42:23 43:25 44:1
44:4,22 45:10 49:9,13 54:9,11
54:12,16 56:10,13,20 58:16
60:12 62:7 63:1 69:8 74:6,17
75:7,18,20 79:2 81:8 82:21
83:23 84:18 86:2,17,25 88:17
92:10,18 93:14
justice 85:9

**K**

Katherine 2:23 3:2 10:1 12:8
keep 8:5 12:17 58:10 70:12
81:22 84:18
Kehoe 78:23
kept 69:10
key 34:6 75:9,24
kidding 90:17
kids 90:12
kind 11:7 40:17,19 41:25 82:25
kinds 82:22
King 13:22
know 6:13 7:20 8:16 9:5,7,12
10:3,18,19 12:21 16:23 17:13
18:1,3,10 20:16,24 21:6 22:6
22:18,20 24:3 29:6,7,11 32:9
34:24 40:13 41:12,20 42:22
43:10,19,20 46:8,9 47:12
49:14 51:3,19 54:11 56:10
69:22,24 71:8 72:8,13 74:23
79:4 80:6 81:12,18,19,21,23
82:1,12 83:2,22 85:16 87:1
89:20 90:11 91:8,19 92:9,10
92:11 93:3,18
knowledge 52:20,23
Knox 68:4
Kozyak 2:7
Kunzelmann 13:21 50:19 74:23

**L**

L 3:2
lacks 26:19
Lakeview 4:2
LANCE 2:11
language 30:20 34:6
large 19:11
larger 17:21
largest 19:24
last 7:5,18 13:15 19:21,21 22:13
24:8 31:6 48:16 65:9 70:2
71:12 83:2 84:18 93:11
late 12:18 85:13,15
later 22:7 50:20 60:14,15
Lauderdale 63:14,15,16 89:19
Lavan 3:18
law 18:17 36:2,25 45:20 54:1
56:21 86:7,18,18 87:19
lawyer 6:25 31:23 71:24,25
76:10 78:17 80:19 82:6
lawyers 18:5 19:14 37:25 60:18
68:7 69:13 71:14 76:24 90:20
90:20,22
learn 64:17
least 16:6 22:22 87:3 88:13,15
92:13
leave 8:6,9 33:6 71:7 85:16 91:2
92:25 93:11,12,13
LeBron 21:13
lectern 26:25 28:19 38:1
left 9:16 41:16 68:18 71:6
legal 17:1 30:7 53:11 55:3
legally 87:14
legitimate 72:5
lender 24:2,24 36:1 51:23 53:13
55:17
lending 35:10 36:24 91:25

lengthy 25:16
Leon 2:8
let 6:2,12 7:7 8:1,11,15 10:21
12:22 20:21 23:24 37:19,23
43:14 44:9 69:15 71:17,18
82:16 85:8 86:2 90:20 91:11
letter 33:25 35:7,11,13,16 72:1
86:16,19
letters 33:23 34:4,8,9 49:22 69:7
69:9,11
let's 17:6 22:10 63:2 71:5,6 83:7
Lewis 3:14
Lexington 50:2
liabilities 48:17 87:18
liability 14:6,22 15:7,13 45:7
48:3,19 78:1 87:16 89:4
liable 15:3
licensed 25:2
like 12:18 18:1,3,10,19 31:21
33:3,8,10 34:1 37:20 39:9,19
41:24 45:25 52:21 54:15 56:2
59:21,21 60:21 66:1,9 69:2
70:8 71:19 73:12,23 76:9
77:21 88:20 89:22 90:11,12
91:9 93:16
likely 30:1
likes 57:17
limbo 69:20,22
limit 42:24
limited 92:15,20
line 5:11,11 50:14 84:20
lines 74:11
link 76:25
list 10:11,12,12
Listen 65:21
literally 67:4
litigate 19:13,17
litigated 13:7
Litigation 67:5 68:1
little 20:21 51:21 54:12 62:13
92:2,12
lives 31:9
LLP 2:12,15,19,23 3:2,10,18 4:2
4:6
Loan 52:8
located 19:3
London 91:9
long 8:21,25 10:23 11:9 12:14
16:13 17:4 41:19 42:1,7 51:25
54:19 69:19 79:1,3 83:19,25
85:19 86:20 91:21 93:4 94:4,7
long-term 87:2
look 18:22 23:19 41:3,7,15 76:1
76:4 83:11 86:10 87:17 90:23
looking 30:16 56:12
looks 12:18 31:21
Lopez 1:6 6:8 7:4,21 11:1 55:22
lot 40:3 42:25 56:2 73:8 81:19
lots 90:19
Louisiana 18:12,22 27:16 58:8
58:11 78:4
love 80:18
LPI 59:1 75:2,21
lucky 16:12 40:2
Lugo 14:1 18:14 29:17 31:13
50:5
Lujan 26:16
lump 27:20

**M**

M 2:6,11 3:1,14
made 7:15 19:20,23 24:9 25:24
33:9,22 39:25 50:8 73:24
74:14,16 77:3 78:2 81:11
86:15 88:3 90:1,3 92:11
mailing 86:21
majority 19:11
make 9:19 16:8 19:12 23:13
25:19 27:11 30:12,13 33:3

35:21 37:24 40:19 43:6,25
44:5 50:12 54:19 59:25 63:9
74:6 79:8 83:25
makes 19:16 37:24 54:14 58:14
63:6 92:23
making 12:18 60:20
manageable 20:2
Mandel 2:15,15,1 5 9:25,25 10:5
10:9,14,16,1 9 11:6,21,23 12:1
12:4 34:25
manner 80:16
many 27:21 28:8,14 30:19 48:13
54:10 70:17,17
Marc 1:13 6:7
March 75:20 83:20
Marked 5:10
MARSHALS 91:3
Massachusetts 2:21
massive 17:12
material 86:23
matter 8:7 23:24 26:13,14,19
36:2 65:2 77:17,20,21 94:14
matters 8:8,20
Matthew 1:17 2:2 6:10,19
may 1:5 11:11 18:8 19:18 20:19
35:9 37:6 42:16,21 43:6 47:5
52:3,4 62:6,6 63:13,14,17
64:21,25 78:23 85:13 88:16
92:1,17
maybe 11:15 16:6 60:17 62:16
66:15,18 72:25 81:11,16,16
83:3 87:24
MDL 18:15,18 20:12 69:5 71:2
71:20 76:15,16 79:5 80:15
90:2
mean 30:3 32:9 41:7 45:19 46:12
46:12,15 48:10 53:24 54:10
54:13 65:16,23 66:11,12,14
71:25 72:8,16 75:13 87:17
89:12,15 90:12
meaning 25:11
means 46:23 55:18 65:21,22
70:2
mediation 61:14 68:16,18 69:5
71:17
meet 40:17 48:16
member 31:23 80:18
members 61:3
memorandum 64:3,7,14,20
74:23
mentioned 19:5 25:8 50:18 74:2
74:23
mentioning 39:19
mere 25:12 48:12
Meredith 59:10
merger 48:11
merits 38:17 39:5
mess 70:8
Miami 1:2,4 2:4,13,17 3:11,16
3:20 4:11,11 94:18,18
microphone 59:16,20 85:21
middle 28:21 66:18
Middlebrooks 13:20 50:19 51:4
69:9 74:24
might 42:1,5,7 58:10 65:23
million 20:13 79:5
millions 20:10
mind 70:12
minds 39:7 40:8 43:13
mine 8:24 9:4,10,18
minutes 9:1,2,3,4 11:15 12:16
12:17 85:14
mischaracterization 36:15
misrepresentation 33:22
misrepresentations 86:15,20,24
Miss 10:10
misspoke 64:12,18
misstate 74:12
Monday 13:16
money 22:19 42:6 58:15 81:17

90:19
**month** 24:8 62:2 65:17
**months** 20:3,4,12 61:15,22
63:24 64:1 82:17
**Montreal** 77:19
**more** 7:21 12:16 30:9 32:20 33:3
35:9,21,21 45:10,13 48:9,22
55:2,14 70:16,17,17 73:8
76:16 89:9 92:9,11
**Moreno** 1:24 71:7 76:8 77:1
**Morgan** 1:13 3:14 6:6 7:6,22
58:20,21 59:25 67:4,25 91:16
91:18
**morning** 39:4
**mortgage** 16:1 55:2
**Moskowitz** 2:6 8:19 9:15 13:2,4
13:5,12,14 14:5,9,11,14,20
15:4,7,12,16,2 1 16:10,14,19
16:21,24 17:5,10,12,15,21
18:7,15,25 19:2,6,8 21:4,8,12
21:16,22 22:3,8 23:5 45:17
50:8,18 59:16 60:1,4,6,20,25
61:3,4,6,13,17,1 9 62:20,23
63:1,10,17,22 64:10 65:8,18
65:24 66:5,8,14,2 0 68:12,21
68:23 69:13 70:10,12,25
71:10,16,23 73:24 74:25 78:8
79:6,21 81:5
**most** 20:14 24:14 28:9,15 33:21
68:23 79:20
**motion** 7:23 10:2 11:8,14,17,20
12:21 13:18,20,24 20:4 21:21
23:14,22 24:11 26:10 32:19
32:20 33:5,14 34:11,13,14,19
34:23 35:1,2 38:5,17 39:3,5,8
39:10,15,25 40:24 45:4 47:17
49:12,15 50:20 51:16 52:16
52:25 56:3,3,5,19,22,25 57:2
60:6,15 76:3 77:14,15,21
78:18,22 79:14 83:3,5 84:19
84:25 87:23 88:1,24 89:8
91:20,23,25 92:4,6,8
**motions** 7:18,19 9:6 11:15 20:25
42:18 67:22 72:4,5 77:24
79:16 82:14 83:1 85:1
**move** 7:2 54:4 60:12 63:10 70:24
70:25 93:25
**moved** 39:22 58:11
**moving** 40:20 65:16
**much** 16:5 33:3 73:14,1 5 78:25
82:14 87:22 90:24
**multidistrict** 67:12

**N**

**name** 44:18,19 49:23 88:8
**named** 48:24 67:6
**names** 7:25 8:2,18 19:4
**Narine** 59:10
**national** 70:13,14,15,1 7 73:13
**nationwide** 19:18 89:16
**NE** 2:12
**NEARY** 2:7
**necessarily** 36:21 55:19 58:16
70:19 88:17
**necessary** 20:19 55:11
**need** 19:19 20:20 21:13 38:12
62:10 63:23 76:12 79:4 82:10
82:12,12,1 8 86:21 87:14 92:9
92:11,12
**needed** 8:2 63:19
**needs** 86:23
**negotiated** 68:24
**negotiations** 40:4
**Nelva** 88:25
**nervous** 37:25
**never** 42:22 43:10 47:10 77:13
78:7 82:5 89:11
**new** 2:24 15:17,22 18:12,23
22:14 25:21,24 27:16 49:1

50:10 61:14 65:13,13 68:16
71:17 72:3 80:2,23
**next** 41:4,7,11,2 0 43:15 46:25
47:5 64:25 92:17
**nice** 81:6
**Nina** 2:15 9:25
**nine** 20:12 61:15,22
**none** 19:4 50:5 81:10
**nonparty** 14:2
**non-Balboa** 44:12
**North** 4:11 18:12,23 27:18 94:18
**Northern** 65:13 67:3 68:6
**note** 53:9 70:6
**noted** 50:23
**nothing** 22:10 25:2 41:18 54:15
54:20 55:6,10 57:23 60:10
61:15 68:18 83:15,19,20 84:7
86:7
**notice** 49:22 60:16
**Novells** 12:24,24 16:8,17 17:14
18:2 28:2 29:19 51:16 53:2,3
83:18 92:25
**nowhere** 68:24
**number** 1:2 6:9 36:22 38:17
81:13
**numerous** 46:20
**NW** 2:24 3:3
**N.A** 1:5,8,11,15,19
**N.W** 3:6

**O**

**object** 61:5 66:2 77:2
**objecting** 81:4 83:12
**obligation** 48:5
**obligations** 45:15 48:8
**obviously** 7:11 33:21 72:24 73:3
**occurred** 83:15
**occurs** 35:9
**October** 53:4
**off** 7:25 8:1 40:24 57:4 60:7 62:1
76:8 79:24 80:2 83:17
**offense** 65:23
**offer** 81:17
**office** 56:7
**Official** 4:10 94:17
**Oh** 9:14 11:2 12:6,17 21:10 38:5
41:6 42:12 44:7,10 46:14 47:1
78:9 81:7 90:23
**okay** 8:2 9:11,23,24 11:9,9,12
12:6,18 13:25 18:9,10 20:21
21:13,14,17 23:3,12 24:6
26:20,25 28:7 29:18 32:8
34:18 37:24 38:13 40:7 43:10
43:16,23 45:8,12 47:6,21 49:5
49:19 51:9 52:11 53:8,24
54:11 55:18,18,19,20 57:7
58:18,23 59:11,22 60:5 61:1
62:19 64:22 66:13,23,24 67:1
72:6 73:20 89:24 91:4 93:22
93:23 94:5
**Okeechobee** 3:23
**omission** 86:19
**omissions** 86:14,21,22,23
**once** 6:23 15:5 56:18 72:20 92:2
**one** 11:24 12:1 14:22 19:24,25
20:15,17,1 7 25:7 28:15 30:1
34:1,3 35:25 36:4,7,18 39:8
44:15 46:19 47:13 48:4,12,16
49:8 51:5 56:23 58:8,14 59:1
59:16,19 60:24 63:19 66:24
67:2,9 71:6,17,24,2 5 72:10,20
73:11 75:13 76:24 77:9 79:2
81:23 83:16 84:7 86:14 89:10
91:18,20 93:12,16
**ones** 19:1 28:16 29:2 46:20
**only** 12:1 25:13 26:1 28:1 31:22
36:4,7,9,1 8 39:7 40:8 49:1,2
51:6,17 56:5 57:6 61:23 66:5
67:2 71:5 73:11 75:10,15

79:12 81:23 92:13 93:15,21
**open** 41:12
**operations** 25:4
**opinion** 25:16 78:17
**opportunity** 73:21 76:10,23
88:15
**oral** 1:23 64:15 78:25 82:14 83:5
**order** 6:13 7:3,3,9,10,2 4 8:1
10:5 12:22 18:16,19 26:1 44:2
50:22 61:25 62:1,3,4,5,7,16
62:17 63:18 64:4 65:5 69:17
73:19 74:25 75:3 80:22 81:25
90:6,8 91:12,22 92:2 93:9,25
**orders** 40:14 91:24 94:2
**Oregon** 82:20
**organized** 90:8
**original** 49:24,25
**originally** 27:17 32:10
**Orseck** 2:3
**other** 6:22,24 7:2 8:4,12 14:3
19:12 22:11 25:13 32:5 39:7
39:12,20 40:8 42:10 54:5
59:16 65:23 66:3 68:9,13
73:20 75:14,14 76:6 79:15,17
80:10 81:16 84:4,10 88:2,16
88:19 92:15
**others** 31:25
**otherwise** 21:11 28:23 93:7
**ought** 78:7 79:2 81:23,24
**out** 7:21 14:6,17 18:7 29:6 30:14
33:2,23 35:21 36:8 43:7 49:9
54:13 61:12 63:2,5,7 66:16
67:24 69:6,13 71:5 72:13
73:12 76:17 77:2,4 78:14,24
81:2,7,14,20 86:12,13 89:5
93:16
**outside** 20:18
**over** 11:16 13:9 16:9 22:21,22
36:20,20 60:23 69:20,21,22
70:6 72:19,20 73:12,19 76:20
77:6 86:14 93:4
**overall** 84:15
**overarching** 32:20
**overly** 17:2
**own** 25:13 35:8
**owned** 24:14
**ownership** 25:14

**P**

**Pablo** 10:11
**pace** 40:22,23
**page** 5:2,11,11 49:22,25
**pages** 20:11 79:5
**paid** 12:2 28:15 29:1,24,24 30:1
35:10
**Palm** 3:24 4:3 53:6 54:17 63:14
**panel** 90:3
**papers** 13:16 14:6,16 15:13,19
16:24 21:24 27:20 56:18
68:16 69:23 70:22 71:2
**parallel** 16:25 17:25
**Pardon** 10:15
**pare** 42:25 86:4,5
**pared** 33:8 42:16
**parent** 22:20,20
**paring** 86:7
**part** 33:21 49:15,22 50:21 51:1
67:22,23 71:5 72:6,12
**participate** 43:10
**particular** 7:1,17 8:7 29:9 30:21
30:22 39:3 53:9,14
**particularly** 56:23
**parties** 14:2 18:16 35:22 40:10
40:11 43:7 51:17 55:16
**party** 21:18 84:17 89:3
**pass** 10:5 34:1
**paste** 56:11
**PASTOR-HERNANDEZ** 4:9
94:16

**patience** 36:21
**pattern** 86:13
**pause** 19:7
**pay** 11:20,24 24:25
**paying** 75:16
**peace** 78:23
**Peachtree** 4:6
**pending** 7:19 16:22 18:2,21
51:17 53:6,1 1 56:23 59:2,3,4
67:5 73:7,8
**people** 17:22 29:6 30:18 31:22
68:9 69:4 76:19 77:12 79:7,19
81:21 88:16,21
**percent** 61:22 76:20,21,22,22
82:20
**perfectly** 57:21 72:5
**perhaps** 36:20
**person** 43:15
**persuaded** 60:17
**Peter** 2:2 8:19
**Petersen** 49:18
**pick** 80:15
**picked** 17:14
**picking** 77:14 80:9,13
**Place** 2:20
**placed** 24:2,25 34:5 36:1 51:23
53:13 55:17 77:24
**placement** 14:3 35:9 87:9
**places** 32:15 63:15
**placing** 87:8
**plain** 47:11
**plaintiff** 1:7 6:15,17,18,21,23
7:13 14:17 19:3 31:9,13,13,13
31:14 49:24 50:4 59:15 76:6
76:13 80:25 88:15
**plaintiffs** 1:4,10,14,1 8 2:1 7:14
8:14 12:21 14:12,16 15:24
18:17 20:18 24:6 26:17 28:1,1
28:10,11,14,2 5 29:14,5 30:15
30:17,18 31:8,16,17,18 32:5
36:9 42:24 43:19 44:12 48:24
49:2,11,21 51:7 55:4 59:8,9
60:2,17 67:6,7,14 68:5,7,13
69:1,13 70:15 71:1 74:7,12
78:3,4,6 80:14 84:1,5,9,10
88:13 89:10 90:7,7,20 93:2,5
93:8
**plaintiff's** 50:23
**play** 51:6
**plays** 28:12
**plea** 8:4
**plead** 45:8,9,10
**pleading** 60:10
**pleadings** 52:17 67:23
**please** 83:6
**pled** 45:6 48:18
**plenty** 66:3
**Podhurst** 2:1,3 8:15,17,19,19,23
9:1,4,6,10,12,17,2 3 68:15
69:15 76:7,8 77:5,10 78:11,14
80:1,5,8,14 81:8 82:3,8 83:22
84:2,6,11,13
**point** 7:17 16:4 47:22 56:20,21
58:17 62:20 70:20 77:10
83:17 85:5 90:1
**pointed** 49:9 76:17
**points** 50:7
**policies** 24:1,24,25 88:5
**policyholders** 75:14
**Ponce** 2:8
**popcorn** 91:14
**Popkin** 1:17 6:10,19 7:3 21:1
37:4
**popped** 91:14
**population** 70:20
**position** 57:24
**possibility** 73:4
**possible** 26:15
**possibly** 18:8 20:10 82:6

pot 90:15
powers 76:16
practical 17:2,3 62:20 63:5 76:9 76:11
practice 29:15 30:21 52:17 77:14 91:20
practices 16:2 55:9
preclude 16:4
predate 15:11
predecessor 45:16 48:5,13,14,18 87:19
predicting 83:9
preempt 59:11
prefaced 49:14
prefer 73:8 84:12
prejudice 85:2 88:4
preliminary 13:16 65:3
prepared 85:3
present 43:12 88:18
presentation 86:1
presented 88:6,7
presenting 11:7
presidential 54:25
pretty 27:6 36:23 38:23
prevent 51:6 55:10
prevented 55:6
preventing 80:8
previously 12:5 13:21
Prieto 2:2 8:20 21:5 22:3 85:13 85:19,22,23,2 4 89:14,20,23,25 90:6,13,21,2 5 91:5 93:14,20 93:23 94:6
pro 10:2 38:4 69:8
probably 9:14,1 5 36:20 39:24 40:3,10,16,2 1 42:10 43:22 81:25 82:2
problem 32:4 41:25 61:13 89:19 92:13
problems 17:19 82:22
procedurally 52:12,14
procedures 74:21
proceed 6:13 35:19 66:21 68:12 92:19,22
proceeding 52:18 54:7 55:7 63:18
proceedings 1:23 6:1 16:7,18 51:18,20 53:25 54:2 94:14
process 43:6 50:15 78:21
Procter 2:19,23
procures 36:6,8,17,17
procuring 36:12,14
produce 39:24 79:5
produced 20:11,13 54:22 60:11
product 68:1 87:7,9,10
production 54:20
products 24:16 25:12
profit 25:14
programs 75:14,15
pronounce 57:20
proper 33:24 49:10 55:3 89:3
properly 23:2
properties 19:3 58:1,5
property 18:23 31:10
proposal 66:22
proposed 17:16 93:8
propounded 54:21
propriety 51:23 53:13
prove 87:5
provide 24:2,24
provided 36:5 88:12
providing 36:11,13
province 82:15
public 25:3 26:6 64:6 65:2
Pulley 59:5,6,24,2 5 60:2,2,24 91:18
purchase 15:2,5 45:17
purchased 45:11 47:9,23 87:18
purchasing 15:1 45:20 48:2
purported 26:17

purposes 62:21 73:3
pursue 65:4
pursuing 58:17
put 22:22 38:8 46:25 75:22 79:24 80:2,16
putative 89:14
P-u-l-l-e-y 59:24
P.A 2:3,7 3:14,22
p.m 6:1 94:10

Q

QBE 3:1 6:5,17 8:13 12:7,9 14:20,22 15:8,10,10 20:2 43:18,20 44:13,20,20,23 45:11,11 47:9,23 48:19 89:4,6 92:8,14
QBE's 15:11
quash 78:18
Quattlebaum 4:1 37:10,11,16 37:16,23 38:2
question 21:7,9 32:2 38:4,9,13 42:13 44:5 75:7,18 83:18 88:13,15,21
questions 6:16,17,19,21,2 3 7:14 7:16 9:7,15,17,2 1 11:7 12:15 12:20 20:23 27:3,6 31:9,12 39:4 43:14,19 44:12,22 83:17
quick 62:13 72:8 82:2
quicker 72:10
quickly 33:17 37:7 40:14 56:14 69:1 82:9 92:22
quite 38:22
quote 24:13 74:17 75:21 88:10

R

R 94:12
race 62:24 63:1 70:9 89:21,21,22
racketeering 86:13
Raines 3:1 12:8,8,11,13,15 43:17,17,23,2 5 44:4,9,11,16 44:19,19 45:1,3,6,9,13,19,23 46:2,5,8,11,18,22,2 4 47:4,7 47:12,15,19,2 2 48:1,9,21 49:8
raise 9:8 28:19
raised 13:23 16:2 32:21 38:17 88:20
raising 87:25
Ramos 88:8,9,25
rate 12:25 13:6,17,20,2 3 21:19 50:8,10,13,20,2 2 51:5 73:24 74:4,8,13,19,20,2 2 75:11,16 75:18,2 5 92:3
rates 49:4 50:13,14,1 7 51:1 75:2 75:10
rather 7:25 74:19
ratio 31:23
rationale 76:2
rattle 8:1
rattling 7:25
Re 67:4,25
read 9:22 25:17 51:4 56:13
reads 80:22
ready 17:7,8 52:15 79:7
real 22:10 27:20 93:10
reality 81:10
really 11:13 22:17 43:2 65:22 73:15 83:1,2 86:7
reason 27:15 41:9,21 42:9 58:13 61:10 71:4,13 82:23 83:24 86:5
reasonable 20:15 65:24 75:11
reasons 21:23 22:11 48:22
rebuttal 7:16
recall 41:4,17
receive 35:7 49:22
received 5:10 35:5
recent 15:17
recently 21:24
recess 8:5

recognized 51:15
reconsider 92:1
record 22:22 26:6 32:14,14,16 57:4 64:6 65:2
redressability 26:15
refile 33:6
refused 62:15
regard 39:4 59:2
regarding 6:17,19 20:23 21:7 38:4 44:12 52:17 53:16 88:16 89:2
Regardless 75:22
regular 53:23
regulators 75:10
regulatory 30:4 50:15
reiterate 49:9
reject 60:19
rejects 25:20
relates 89:4
relating 55:16 92:3
relationship 22:11 24:10,10
relatively 83:8
relax 70:11
relied 34:21
relief 75:8,13,23
religion 81:17
remember 16:21 17:5 21:14
rep 20:20 63:20
repeat 38:20,25
replace 93:1
reply 39:3 46:13,24 56:6,9 84:19
report 40:10,16 41:4,15 56:4
REPORTED 4:9
reporter 4:10 27:1 37:25 44:17 57:15,17 94:17
Reporter's 5:4
represent 37:18 44:18,20
representations 75:1
representative 75:5
representatives 17:16 19:19 66:10 89:17
represented 6:25 32:17 59:9 64:19 80:4,5
representing 29:3 30:18,19
represents 90:9
request 8:10 22:25 43:1 69:5 79:19 82:5
requested 88:23 93:15
requests 42:24 54:20 66:15
require 40:16
required 62:1
reservations 12:18
reside 20:18
residents 19:12
resides 19:3
resolve 17:18 31:1 66:19 68:10
resolves 16:7
respect 27:16 29:23,25,2 5 30:6 49:2 51:16 65:19,20,22 76:24
respectful 46:4
respectfully 26:13 77:22 78:20 79:16 85:8
respond 20:23 23:12 44:5 85:24
response 25:18 89:1
responses 18:4 53:20,22 54:22 54:24
responsible 14:3 15:6,10
responsive 60:10
rest 39:5 78:23
restricted 40:5
result 51:2 63:17
reversal 23:17
reverses 23:16
review 36:23
RICO 20:10 33:1,19,20,2 1 34:8 35:23 86:2,8,10,11,12,17,24 87:3,3,4,5 91:24
ridiculous 60:10
right 6:2 8:11 11:22 12:19 18:13

18:24 19:5 20:24 26:4 31:5,11 31:22,24,2 5 37:8,13 43:5 44:16 46:22,24 53:25 56:16 57:9,13,14,19 58:3,6,9,9,10 59:16 60:7,7 61:6 68:8 71:14 72:21,22 73:17 77:12 79:15 80:14,25 82:7 84:13 90:4,6,19 91:10 92:21
ripe 17:7,7
rise 94:9
River 15:15,16 54:9
ROBERT 2:7 3:14
Roberts 24:9,16 75:20,22
rocket 79:13 80:24
rotten 17:8
routinely 20:18
RPR 4:9 94:16
rule 21:23 23:14 32:12 39:15 40:10 41:1,4 48:2 49:12 69:25
ruled 35:2 74:9
rules 78:6
ruling 40:24 42:18
rulings 7:19
run 71:18 77:2

S

S 2:1,15 3:19
safe 22:10
sales 25:24
salient 28:9
same 6:18,25 7:3 13:7,9 14:5 15:23,25 16:2 19:13,13,14 21:19,24 27:18 28:4,5 31:12 34:8,8 36:23 37:1,25 38:10 50:14,25 53:2 56:3 70:1 72:18 80:21 88:6,7,9 89:18 90:4
San 72:14
Sandler 3:2
satisfaction 43:2
satisfied 36:25 38:22 39:2 48:8
satisfy 48:10
Saved 91:6
saves 58:14
saw 40:9
saying 22:18 34:10 35:7 47:8,23 60:10 61:9,10,10 76:9 78:14 79:10 81:13
says 22:16 45:17,22 82:1 86:18 87:2
schedule 40:11 62:4 65:4
scheduling 7:9,10 40:13,16 56:4 62:1,3,5,7,1 7 73:19 91:22
scheme 30:4 86:20,22
science 79:13 80:24
Scola 13:9 79:10
scope 74:12
scores 77:23
seats 6:3
second 2:12 22:18 38:9 50:18 51:3 76:21
Security 20:24 23:7,9 24:15 25:5 25:7,25 39:11 52:15
see 10:11,21 12:22 17:14 22:10 28:21 33:8 35:12 37:24 41:25 41:25 43:9 58:16 59:18 61:11 62:11 65:18,25 66:6 80:23 81:11 83:7 89:19
seek 53:16 65:3 70:18
seeking 19:18 70:14,15
seeks 70:13
seem 66:9 73:14
seems 37:20 42:5 47:7 54:15 63:6 70:15 89:22 94:1
seen 10:3,21 27:19 42:22,23 89:11
sees 37:25
self-serving 88:14
self-triggers 75:24
sell 24:15,23 25:11

Senate 59:21
send 13:10 19:22 27:23 58:2
65:12 71:6 78:2,14
sense 16:8 19:13,16,20,2 3 23:13
25:19 27:11 30:12,13 54:14
54:19 58:14 59:25 63:7,9
sensible 33:9
sent 33:23 34:4
Senterfitt 4:2
separate 20:16 84:24
separated 38:8
separately 11:24 12:2 36:11
September 78:21 79:1 81:22
82:9 94:1
series 35:25
seriously 42:5
sermon 90:11
served 52:18 53:19,20 85:10
service 36:4,18
serviced 14:2
servicer's 75:13
services 22:14 24:25 36:13
Servicing 52:8
set 7:9 14:6,17 40:18,18 41:2
41:11,13 52:19 66:9 75:10
79:1,2,11,21 81:24 82:8,24
83:7 85:6,7,9 86:12,12
sets 49:10
settle 13:15 63:22 68:25 72:10
73:5 80:9 81:15,18
settled 22:14 40:3 60:16 62:2
63:21,23 66:1 73:2 79:11
settlement 22:15 25:21,22 26:3,7
59:3 60:19,21 61:2 64:5 65:1
65:4 66:2,16,16 72:8 73:2
76:14 77:1 80:11
settlements 68:24 81:5 82:20
83:12
seven 20:6,6 48:24 49:10 65:15
sever 92:1
several 33:1 76:17 77:13
shared 49:21
shift 20:21
Shinners 2:23 10:1,9 11:6,17
12:3 26:24 27:3 37:6 51:11,13
51:15,21 52:2,5,7,10,12,16,20
52:23 53:3,6,9,19 54:1,5,22
55:1,15,20
shocked 41:8
Shores 2:13
short 8:23 42:3
shortly 92:5
show 27:6 35:18 45:13 78:16
shows 23:1
side 88:19
sides 40:19
signed 64:3
similar 17:17 53:12
similarly 50:4
simplified 42:17
simplify 42:20
simply 26:15,18 81:13 85:24
since 7:25 8:9 39:19 44:14 47:16
65:9 83:19
sincerely 82:23
sir 85:22 94:6
sit 37:23
sitcom 37:20
site 15:22
sits 90:4
sitting 54:16
situation 14:7
six 31:22 63:3 65:15
slightly 11:16
smart 41:18 60:18
smoke 84:23 90:15
Social 52:15
Soileau 14:2 18:14 31:13 50:4
some 19:15 20:10 27:19 33:17

39:24 43:19 55:5 63:19 65:24
67:6 73:24,25 76:2 79:4 81:14
82:12,13 83:16 84:16 88:18
88:20 91:14 92:23
somebody 42:4 56:10 77:18
somehow 45:14 63:7 86:16
someone 36:8 74:2 91:14 93:5
something 7:7,17 37:20 41:13
44:7 49:6 51:12 54:12 73:22
91:9,19 93:2
sometime 41:5
sometimes 7:8,9 17:2 24:6 40:18
76:9 90:4
sooner 93:12,13
sorry 11:1 21:25 27:2 33:5 37:14
37:18 46:2 50:11 57:16 58:4
64:12,16,18 94:7
sort 25:3
sorts 67:5
sought 75:8 78:24
sounding 93:10
South 3:15
Southern 1:1 24:9 31:12,19 32:6
45:23 46:5 59:4 61:19 65:12
68:2,14 69:7 70:23 71:3 94:3
Spahr 4:6
speak 26:21 55:23 57:10
specific 9:14,17 30:5 36:25 39:4
83:17 84:13,14 90:14
specifically 13:18,19 15:18
25:22 35:18 36:1
specifics 68:17
spelling 57:18
spend 42:6
spin 75:22
stage 34:13,19 87:4
stairs 91:2,12
standing 24:13 26:18 49:16 60:9
standpoint 38:11,15 42:17
stand-up 59:18
start 8:11 17:23 32:25 37:19
38:3 44:14 65:9 82:19 93:13
started 42:2 56:21 76:8
starting 20:14
state 2:20 15:24 16:7 17:19,24
18:2 22:14 51:17,19,25 53:11
53:24 54:1,13 55:4,14,15
70:13 74:10 86:6,11,14
statement 9:19 78:1
states 1:1,24 4:10 18:14 25:23
27:9,10,14 89:17 94:17
statutes 30:5
statutory 33:1
stay 7:18,23 8:8,10 16:6 39:8,13
39:20 41:24 42:14 48:20
54:12,15,19 56:4,19 59:3
61:22 66:11,18,20 77:11
78:21 82:25 83:6 91:17,18
92:17 93:1,6,9,15,15,18 94:9
stayed 61:14 62:3 78:8 82:18
85:8 91:20
staying 56:22
steeped 27:6
still 27:23 28:3 48:14,15 62:10
stood 25:21
straighten 93:24
strand 75:17
stranger 47:4
strategy 71:5,8,10,13
streamlined 35:21
Street 2:4,16,20 3:3,6 4:6
strict 40:15 62:5
stronger 14:13
Stroock 3:18,18
structure 36:10
subclasses 19:18,19 20:20 31:2
63:7
subject 23:24 26:13,14,19 50:14
77:17,20,21

submit 40:10 87:21 89:25
submitted 41:15 49:17
subsequently 15:8
subsidiaries 24:14 26:2
subsidiary 25:9
substantially 42:16 53:12
substantive 86:11
substitute 31:15,17,20 93:1,5
subvert 75:9
successful 56:25
successor 14:21,22 15:7,13 20:2
44:13 45:3,7,14,15 48:3,4,12
48:19 87:16 89:3
successor-in-interest 44:23
suddenly 81:11,16
sue 24:13
sued 14:20 15:24 21:17 23:2
87:1
sufficient 48:18
sufficiently 48:6
suggest 18:16 26:14 36:10,13
41:15 62:18 77:25 78:1
suggested 30:14 40:24 63:18
suggesting 30:8
suit 24:16
Suite 2:4,8,16 3:3,7,11,15,23 4:7
4:11 94:18
suits 32:15
summary 21:20,22 23:1 52:21
92:6,22
sun 85:17
supports 51:5
supposedly 63:24
Supreme 82:1
sure 11:13 29:7 34:2 35:21
37:16 42:12 43:25 44:5,19
46:2,14 66:21 77:15 81:20
84:11
surely 31:24
surplus 50:14 74:11
suspect 12:16 42:10 83:22
sweetheart 76:14,25 81:5 82:19
84:21
sympathize 54:17
S-h-i-n-n-e-r-s 11:19

| | T | |
| --- | --- | --- |
T 94:12,12
table 5:1 21:25
take 11:14,18 16:11,13 32:19
35:8 39:9 41:19 42:1,7 65:23
76:9 84:25 85:19 88:22
taken 22:24 30:14 93:4
talk 8:22 10:8,24 13:1 39:17
44:3
talked 25:21
talking 10:23 11:4,5 12:10 18:13
32:23 43:4 69:12 83:4 84:4
90:24
talks 15:1
tall 59:19
taller 28:20
tell 6:12 8:18 12:21 14:18 28:6
39:1 44:17 48:22 51:21,22
59:25 61:7,7 64:23 79:5,22
83:16 90:12 91:7,11 92:18,21
94:1
telling 22:5
tendency 17:2 27:20
Tenth 74:16
term 54:25
terms 25:25 61:8
test 47:7,8
testimony 79:15 88:18
tests 48:10
Texas 88:7,8
thank 11:23 23:3 26:20 37:2,3
43:16 49:5,7 51:9,10 55:21
58:9 58:18,19 76:5,6 85:11

91:5 94:6,7,8
their 17:18 18:3,4,16 20:25
28:13 31:21 32:6 33:24 34:5
42:24 49:22,23 55:11,11
70:15 71:2,5,10
theme 28:12
themselves 27:20
thing 30:6 36:7 41:18 51:22 54:8
57:6 66:5 70:12 71:6 81:9
83:16 89:18
things 7:8 8:1 35:11,21 41:19
43:12 47:4 49:8 54:10 57:20
69:16 71:22,23 73:25 77:13
78:18 83:25 92:19
think 7:17 8:3,8,21 10:22,23
11:9 12:14 13:11,14 17:10
18:20 19:16 20:2,3 21:22 27:5
27:19 28:11 30:13 33:2 34:9
36:23 38:24 39:5,9 41:4,6,14
42:8,16,19,2 5 43:24 44:2
46:11 48:9,9 54:5 58:13 66:4
67:6 68:4 71:24 72:17 73:25
78:23 79:2,7 80:4 82:3 83:8
83:17 84:22,22 88:11,12,14
88:17 92:11,20,22 94:5
thinking 42:4
third 14:2 48:12
Thomas 3:16
though 54:6 58:2 67:12 70:8,9
77:4 89:22
thought 19:20,23 71:21 83:1,2
84:4 91:8,11
thousands 17:22 54:16
three 8:1,17,21 9:3 13:22 18:12
19:14 20:3,4,8 28:25 29:20
30:9 34:4 38:1 5 52:6,9 53:22
54:14 56:3 59:1,2 60:12 66:6
69:3 82:11,16 93:3
Throckmorton 2:7
through 8:3 13:13,14 24:17 29:8
35:3 36:21 40:3 72:11
throughout 18:21 22:15 28:12
tied 87:7,10
tie-in 36:4,7,10,18 87:9
tight 65:4
TILA 86:9
till 21:22
time 6:18 8:3 10:20 15:25 21:11
36:20 42:6 54:19 72:4 85:15
times 78:9
today 10:2,16 12:1 39:8 40:9
43:13 46:15 56:7 77:13 78:8
83:24
together 11:25 19:17 27:21
37:21 38:8 40:15 68:14 71:19
80:16,21 83:5 90:17,18
told 12:23 21:17 64:18,23 69:4
80:19
tomorrow 59:7
Torturas 12:24,25 18:14 27:17
29:19 31:14
totally 43:1
Tower 3:23
traceability 26:16
track 42:8
Trade 55:9
transaction 48:11,16
transcript 65:11 88:24
transcription 94:14
transfer 11:14 19:16 27:4,5,8
31:4 33:12 58:11 69:20,21,22
73:9 83:2,3,6 85:9 92:1
transferred 67:3
transferring 18:11 89:10
trial 7:9 41:2,16 52:19 78:21
79:1,3,1 2 81:24 82:6,25 83:7
83:8 84:15,20 85:7,9
trials 24:7
tried 19:8 69:14 79:9

trigger 82:2
Tropin 2:7 79:22 80:1,6
true 22:6
Truth 36:24 91:24
try 14:16 18:7,19 21:8,12 36:9
36:12 46:6 63:24 79:8 83:6
trying 29:14 32:13 44:1 68:25
72:12
turtles 89:22,23
two 6:25 8:1,12 13:7 14:21,23
15:24 17:7,13 22:11,13 31:6
36:13 37:25 39:7 51:6 58:7,25
59:5 60:14 67:8,10,20 68:2,22
68:23 69:19 72:1 80:19 83:15
86:14 89:9
type 30:10
types 14:21,23

**U**

uncertainties 23:15
under 35:24 36:16 49:15,16 55:2
63:18,19 65:4 69:22,25 87:19
underbrush 33:3
underlying 74:18 76:1 86:20
understand 17:11 93:21,22
understanding 64:3,20 66:8
underwriter 25:24
underwriters 25:8
underwriter's 75:14
undisputed 25:4 44:25 89:7
unearned 50:24
unethical 69:8 71:21
unfair 42:6 55:9
unfortunately 56:14 57:3
Union 50:1
uniqueness 7:21
United 1:1,24 4:10 94:17
unjust 22:19
unjustly 22:23
unless 7:16 69:5 93:1
unlike 70:18
unstayed 60:8
until 8:9 16:7 17:9 22:7,25 39:15
56:24 59:24 61:11 65:6 66:18
78:7 79:12 84:18 91:18,20
92:17,18 93:6,18,24
upsetting 91:15
urge 25:16 76:1
USA 1:8 3:18
use 85:20 91:13
usually 31:23 40:19 54:13 81:14
85:16
U.S 94:17

**V**

vacate 62:10,16
vacated 62:7 91:21
vacating 7:10 62:16
valid 69:1 86:8,8,9,24 87:19
various 8:20 9:6 20:25 40:11
67:14 89:16,17
venue 55:16
verified 69:2
versus 6:4,5,7,8,10,14,1 9 7:3,4,5
7:5,22 8:11 15:21 58:20 59:25
79:11 91:16,18
very 8:23 16:1 17:24 20:2,15
25:17 30:7 31:21 36:24 37:7
42:4 65:4 74:6 76:11,19,24
79:17 80:16 88:21 90:1 92:15
92:16,23
vetted 72:9,11
vice 10:2 38:4 69:8
Vidrine 14:1 18:13 31:13 50:4
view 59:12 78:20 82:13,13 85:7
violation 75:17 86:11,12 87:7
91:24
voluntarily 68:5
vs 1:4,7,10,14,18

V-i-d-r-i-n-e 18:13

**W**

Wachovia 3:15
wait 16:6 21:20,22 22:7,10,25
23:13 54:11 59:24 61:9,11
62:22,24 69:19
waited 65:8
waiting 56:7 65:6
walk 91:12
want 7:11,20 8:16,18 9:12 12:20
12:21,22 15:14 18:18 23:14
27:13 29:10,12 32:8,19,22
33:7,11,16 36:21 37:9 39:20
41:2,11 44:3,7,7,8 51:11,22
54:10 55:13,14 57:22 58:2,23
69:19 70:6,22,23 71:14,25
72:23,24 78:25 79:8,13,23
80:2,9,15 81:4 82:14 83:2,5
83:14,16 85:3,16,24 86:4,5
88:2
wanted 35:17 38:3,14 39:1,17
43:11,20,2 5 44:5,15,22 49:6
50:7 54:8 57:6 59:23 62:10
wants 11:18 39:13 73:22 85:1,12
Warsaw 77:19
Washington 2:24 3:4,7
wasn't 45:11 62:8 71:18 74:10
83:3
watch 81:7
way 6:14,22 7:13 26:25 28:19
31:24 33:6 36:9 66:20 69:2
71:1 78:16 79:10,22 80:10
81:16 90:24
ways 27:21
weaker 14:10,13,15
weakest 76:13,25
week 46:25 47:5 92:17
weeks 22:13 41:1 63:23 65:9,15
65:15,15 76:17 80:19
Weinberger 34:7,20,21,2 2 35:6
35:12
WEINSHALL 2:2
welcome 8:6,8 23:5 57:8 94:3,4
well 6:22 8:12,21 9:21 10:21
14:18 24:8,22 25:22 31:4 32:4
32:25 34:18 38:23 39:11,19
42:1,7,9 44:4,14 45:6,9 46:23
47:4 49:14 53:21 55:1 58:10
61:21 62:12,13,18 67:21
69:21 71:8 72:3,15 73:14 75:3
78:11 80:4 81:25 82:3 83:23
84:12 86:4 87:3 89:7,23 90:13
91:7
Wells 1:15 3:22 6:7 7:5 57:9,12
57:12 79:11
went 47:13 68:24
were 6:1 13:23 14:2,1 5 15:24
18:3,12,17 19:12 24:20 28:15
29:1,23,24 30:24 32:10,13
35:5 42:3,4 43:12 50:24 60:1
60:17 61:14 63:18 67:21,22
67:23 68:3,4 71:23,24 82:3
83:4,24 84:4 85:5 86:15
weren't 20:14 24:22
west 2:4 3:24 4:3 89:23
Westlaw 15:22
we'll 7:2,4,4,15,2 2 8:2,3,4,5 32:7
32:7 83:10 91:19
we're 6:13 18:13 19:18 20:4
23:16 39:2 45:3 54:4 62:4
63:2 65:3,16 66:16 67:7 68:12
68:17 71:4 73:2 80:25 82:19
82:21 83:24 84:20 85:3
we've 13:13,14 18:22 22:8,9,22
30:14 39:2 44:24 45:20,23
59:3 60:16,22 61:6 63:3 64:3
64:10 65:8 66:5,6,21 67:2
68:13 69:2,10,14 80:16 82:10

87:4,6,9,12,1 7 90:10,14 92:24
whatsoever 28:15
while 6:3 56:22
whole 22:15 56:21 86:16 89:10
wholly 24:14
Wilkie 4:10 94:17
Williams 13:8,15,1 9 50:9 69:2
71:2 79:11
willing 65:25
Willis 4:5 37:12,13,18,1 8 38:3,7
38:11,13,22,2 4 39:1,14,16,21
39:24 40:5,8,2 3 41:3,9,14,21
42:9,14,2 1 43:3,6,11
win 83:25
wind 29:25 48:25 59:1,2,12
60:22,25 63:2,6,11,1 3 66:9,10
66:10,12,2 0 70:18 71:4,5 73:1
81:9 93:16,21
Winston 91:9
wire 86:21
wiser 61:11
wish 37:5 76:6
wishes 38:16 40:9 73:20
witnesses 42:4 88:14,19
WL5415174 15:23
work 63:3 66:3,1 5 69:14 71:16
71:19 73:14 90:7 92:20,20
works 78:16
worried 16:15
worry 7:12
worth 43:4
wouldn't 31:23 71:14 78:17
wound 35:15
wow 12:17 53:8,23
write 69:8,9 88:5
writes 69:11
writing 72:1
written 69:6 91:12,2 4 93:9,25
wrong 21:18 65:6 77:22,24
80:12,12
wrongful 87:2

**Y**

Yeah 18:9 34:25 66:5 69:24 75:3
75:7
year 41:4,7,11,2 0 59:7 60:3,4
years 13:7 16:11,11,1 1 17:7 20:8
52:6,9 53:22 54:14,25 66:6
67:8,10,20 68:22,23 69:3,19
77:14 82:11 83:15 86:14 93:3
yells 59:22
yesterday 60:12
yield 59:18,20
yields 59:21
Yogev 68:4
York 2:24 18:12,23 22:14 25:21
25:24 27:17 49:1 61:14 65:13
65:13 68:17 71:17 72:3 80:2
80:23
young 78:8 81:6

**$**

$75 11:20 38:12

**0**

02109 2:21

**1**

1 76:21,22 82:20
1st 60:2,3 91:19,21 93:19,20,24
10 11:15 12:16,1 7 33:1 64:21,25
76:21
10-K 25:19
10-4527 15:22
100 61:22
1000 4:7
1025 3:6
12(b)(1) 23:23 26:10 49:15

77:16
12-22700-Civil 6:4
12-22700-CIV-MORENO 1:2
12:00 90:15
1200 2:16 3:23
1250 3:3
13 64:25
13-count 35:18
13-21104 1:6 6:22 21:2 55:22
13-21104-Civil 6:10
13-21107 1:9 6:22 21:3 91:16
13-21107-Civil 6:5
13-1 1:3 4:11 94:18
13-60721 1:13 6:22 21:2 57:9
13-60721-Civil 6:7
13-60722 1:17 21:1 37:4
14 67:6 73:11
14th 65:3
16 1:5 40:10 41:4
169 2:16
19th 92:5

**2**

2 20:13 79:5
2:45 6:1
20 7:25
200 3:15,19
20001 2:24
20007 3:7
20037 3:4
2009 53:4,5
2010 52:3,4
2011 15:23 67:9
2012 83:20
2013 1:5 94:2
202.306.4000 2:25
202.349.8035 3:4
202.965.8100 3:3
202.965.8104 3:8
22-page 22:15 80:22
222 4:2
24 92:17
24th 3:3
25 2:4
25th 92:3
2525 2:8

**3**

3rd 60:14
30 77:18
30th 62:6 64:25
30309 4:7
305.347.6845 3:12
305.358.2382 2:5
305.358.2800 2:5
305.372.1800 2:9
305.372.3508 2:10
305.372.9928 3:12
305.374.7771 2:17
305.374.7776 2:18
305.414.3456 3:16
305.415.3001 3:17
305.523.5118 4:11 94:18
305.536.8222 2:13
305.536.8229 2:14
305.789.9302 3:21
305.789.9900 3:20
31st 3:19 62:6
33128 4:11 94:18
33130 2:4
33131 2:17 3:11,16,20
33134 2:9
33138 2:13
33401 3:24 4:3
35 76:20

**4**

4th 4:3

**4:20** 85:15
**4:35** 94:10
**400** 3:7 4:11 78:22 94:18
**41** 32:12

─────────── **5** ───────────

**50** 75:15 77:13
**500** 3:11
**525** 3:23
**53** 2:20
**5300** 3:15
**561.659.6313** 4:4
**561.659.7070** 3:24
**561.659.7368** 3:25
**561.671.3678** 4:4

─────────── **6** ───────────

**617.523.1231** 2:22
**617.570.1000** 2:21
**678.420.9301** 4:8
**678.420.9436** 4:8

─────────── **7** ───────────

**7:30** 85:18
**700** 3:3
**777** 3:10

─────────── **8** ───────────

**8:00** 85:18
**800** 2:4
**82** 18:20

─────────── **9** ───────────

**90** 79:3 82:10 84:16
**900** 2:8
**901** 2:24
**94** 5:4
**9699** 2:12
**999** 4:6